UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No.: 23-cv-60532-MD

Eureka Cole
     Plaintiff(s),

vs.

Carnival Corporation
     Defendant(s).

_____/

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S CARNIVAL CORPORATION'S  MOTION FOR SUMMARY JUDGMENT SOUTHERN DISTRICT OF FLORIDA LOCAL RULE 56.1

COMES NOW, the Plaintiff Eureka Cole and files the following Statement of Material Facts in opposition to Defendant Carnival Corporation's Motion for Summary Judgment:

| Response to Defendant's Statement of Material Fact | Citation |
|---|---|
| 1) Plaintiff does not dispute. | |
| 2) Plaintiff does not dispute. | |
| 3) Plaintiff does not dispute. | |
| 4) Plaintiff does not dispute. | |
| 5) Plaintiff does not dispute. | |
| 6) Plaintiff does not dispute. | |
| 7) DISPUTED. Plaintiff was struck multiple times by a container when high winds lifted up 2 container lids at a time causing them to strike her shoulder. | **Exhibit 1 -** Dep. Lucien Cole at 9:4-12:6; |
| 8) DISPUTED. Plaintiff's husband recalled that the winds were very high, and a Carnival employee was present in the vicinity prior to the incident, and observed the winds and had notice that the containers | **Exhibit 1** Dep. Lucien Cole at 27:8-23; 28:15-29:9; 30:13; 9:4-12:6; |

| | |
|---|---|
| were unsecured. Also, the incident happened when the Carnival employee was present.  Plaintiff was struck multiple times when high winds lifted up 2 lids at a time causing them to strike her shoulder. | |
| 9)  DISPUTED. Carnival's onboard physician observed and diagnosed Ms. Cole with a contusion to her upper back. After Ms. Cole disembarked the hospital emergency diagnosed her with a contusion and an abrasion in the area she was struck. | **Exhibit 2** Dep. Juan Esteban Vanegas Gonzalez, M.D. at 21:4-7.<br><br>**Exhibit 4** See FL Westside Hospital Records. |
| 10)  Plaintiff does not dispute. | |
| 11) DISPUTED. Plaintiff reported that she was on the Lido Deck and she was hit by a plastic container, on the left trapezius area. Plaintiff also stated to the doctor, it was windy, and the wind blew it up and the container hit the left shoulder. Carnival's onboard physician observed and diagnosed Ms. Cole with a contusion to her upper back. | **Exhibit 2** Dep. Juan Esteban Vanegas Gonzalez, M.D. 18:13-20; 21:4-7. |
| 12) DISPUTED. Carnival's onboard physician observed and diagnosed Ms. Cole with a contusion to her upper back.  Ms. Cole was told to ice down the affected area four times a day for 20 minutes. Carnival's physician then prescribed ibuprofen and advised Ms. Cole to follow up with a physician once she disembarked from the ship. | **Exhibit 2** Dep. Juan Esteban Vanegas Gonzalez, M.D. at 21:4-7; 20:24-21:3. 20:1-17. |
| 13)  DISPUTED. Carnival's onboard physician testified that he could not conclusively diagnose Ms. Cole's injuries or rule out other injuries without further diagnostic testing such as a CT Scan or MRI. | **Exhibit 2** Dep. Juan Esteban Vanegas Gonzalez, M.D. at 27:7-21 |
| 14) DISPUTED. Carnival's onboard physician observed and diagnosed Ms. Cole with a contusion to her upper back. | **Exhibit 2** Dep. Juan Esteban Vanegas Gonzalez, M.D. at 21:4-7. |
| 15) Plaintiff does not dispute. | |
| 16) DISPUTED. Vikram Thapa testified he did not know | **Exhibit 3** Dep. Vikram Thapa at 30:24- |

| | |
|---|---|
| if he weighed the same container lid as the ones which struck Ms. Cole and does not recall when he weighed it. Mr. Thapa also stated he did not know the whereabouts of the lid which he elected to weigh. | 32:1; 34:21-35:9. |
| 17) Plaintiff does not dispute. | |
| 18) Plaintiff does not dispute. | |
| 19) DISPUTED. The Florida Westside Hospital Records indicate that Plaintiff was diagnosed with a contusion of the left back wall of the thorax. On examination a scratch in the injured area was observed. She was referred for follow up care with a primary care physician. | **Exhibit 4** See FL Westside Hospital Records. |
| 20) DISPUTED. The Florida Westside Hospital Records indicate that Plaintiff was diagnosed with a contusion of the left back wall of the Thorax. On examination a scratch in the injured area was observed. She was referred for follow up care with a primary care physician. | **Exhibit 4** See FL Westside Hospital Records. |
| 21) DISPUTED. On July 27, 2022, Plaintiff presented for an initial evaluation performed by Dr. Eliza Burdier DNP, APRN, on the same date Plaintiff also underwent an MRI of her Left Shoulder. | **Exhibit 5** See CitiMed APRN Initial Evaluation Note and **Exhibit 6** 7/27/22 MRI Report. |
| 22) DISPUTED. Plaintiff's Left Shoulder MRI was read and reviewed by board-certified radiologist Robert D. Martinez, M.D. on July 28, 2022, Dr. Martinez's findings included the following: *Evaluation of the glenoid labrum demonstrates irregularity and tearing of the anterior labrum which extends from the 3 to 6 o'clock position.* *IMPRESSION:* *1. Small focus of mild undersurface partial tearing of the supraspinatus tendon.* *2. Anterior and inferior labral tear.* | See **Exhibit 6** 7/27/22 MRI Report. See **Exhibit 7** Dr. Wilkerson Orthopedic Surgeon Consultation Note. See **Exhibit 8** Dep. John Wilkerson, M.D. at 19:22-21:15. |

| | |
|---|---|
| 3. *Mild subacromial and subdeltoid bursitis.*<br>4. *Acromioclavicular joint hypertrophy and inflammation with an os acromiale present.*<br>5. *Subarticular edema within the inferior aspect of the glenoid with moderate subjacent partial-thickness chondral loss.*<br><br><br>Plaintiff had been receiving conservative treatment since the date of the accident and was only referred to Dr. Wilkerson for a surgical consultation after she had "failed conservative treatment with medication and physical therapy." | |
| 23) DISPUTED. Plaintiff underwent the following surgical procedures on September 15, 2022.<br><br>1. Left shoulder arthroscopy with arthroscopic rotator cuff tendon repair,<br>2. Left shoulder arthroscopy with arthroscopic glenoid labral repair,<br>3. Left shoulder arthroscopy with arthroscopic debridement glenohumeraljoint,<br>4. Left shoulder arthroscopy with arthroscopic synovectomy,<br>5. Left shoulder arthroscopy with arthroscopic subacromial decompression, | See **Exhibit 9** Dr. Wilkerson Operative Note. |
| 24) DISPUTED. Patient was placed at maximum medical improvement with a permanent impairment rating of 8% to the left shoulder. | See **Exhibit 10** Dr. Wilkerson Jan. 6, 2023 Orthopedic Follow-up Note. |
| 25) DISPUTED. There were numerous prior incidents of which Carnival was aware which were sufficiently similar enough to Plaintiff's incident to provide Carnival with constructive notice of the dangerous condition which caused Plaintiff's injury.<br><br>Defendant Carnival in its Answers to Interrogatories and the deposition testimony of its Corporate | See **Exhibit 11** Defendant's Answer to Plaintiff's Interrogatory No. 10.<br><br>See **Exhibit 12** Dep. of Carnival Corp. Rep. 47:2-10; 49:1-53:12; 56:7-57:12. |

| | |
|---|---|
| Representative confirmed numerous prior similar incidents such as Plaintiff's which occurred when unsecured items fell and injured passengers in dining areas of the ship and in the presence of waiters. As follows:<br><br>1) Oct. 4, 2019 - Guest was eating on Deck 9 Aft Rosie Restaurant when a piece of metal frame fell on his head, causing laceration injury.<br><br>2) Nov. 10, 2019 - Guest claimed that while he was seated on the couch on deck 3 forward port side lobby, a metal piece of a vacuum cleaner extension fell from above and hit the shin of his left leg, causing injury to his shin.<br><br>3) Dec. 16, 2019 - Guest claimed that while she was having dinner in Posh Dining Room, a waiter dropped one of the brown plastic covers on the carpeted floor and it bounced back and hit her right ankle, causing her pain.<br><br>4) Nov. 12, 2021 - Guest was seated at table for lunch at Old Fashioned BBQ, when a metal plate allegedly fell from the ceiling and hit her on the right side of her head and shoulder, resulting in contusion to her right shoulder.<br><br>5) July 15, 2022 - Guest claims she was sitting at her table waiting for dinner when a server who was carrying a tray of plates accidentally dropped plate onto her head. Guest was treated for a superficial laceration on thescalp. | |
| 26) DISPUTED. For the reasons stated in paragraphs 25 and 29. | |

| **Additional Material Facts Alleged by Plaintiff** | |
|---|---|
| 27) According to Carnival employees, Plaintiff Eureka Cole, and her husband Lucien Cole who were present at the time of the incident, there had been very high winds blowing across the deck of the ship at the time Plaintiff was injured.  The winds were strong enough where it was difficult for a person to walk on the ship's deck. | **Exhibit 13**  Dep. Shruti Bhatia at 31:19-24. **Exhibit 14** – Dep. Eureka Cole at 46:20-47:5. **Exhibit 1** – Dep. Lucien Cole at 9:4-10:6 |
| 28) According to Carnival employees who were present at the time of the incident; prior to the subject incident the Lido Deck where the Plaintiff was injured had been subject to high winds while passengers were dining. | **Exhibit 13** Dep. Shruti Bhatia at 47:3-14. |
| 29) Carnival was on notice that high winds across the Lido Deck could pose a hazard to its guests and had trained its employees to post warning signs, secure items, and/or close the Lido Deck in the event of high winds and inclement weather. | **Exhibit 13** Dep. Shruti Bhatia at 18:1-25; 20:6-10; 21:1-19; 42:21-43:4; 44:5-45:9; 65:1-12. **Exhibit 12** Dep. of Carnival Corp. Rep. at 79:5-81:9. |
| 30) Carnival had actual notice of the dangerous condition, or in the alternative created the dangerous condition itself when its employees placed unsecured containers on the Lido Deck during high winds as its employee was present and engaged in stacking and unstacking the containers prior to and subsequent to the subject incident, when he failed to secure them and they struck the Plaintiff. | **Exhibit 1** - Dep. Lucien Cole at 27:3-30:23. **Exhibit 14** -  Dep. Eureka Cole at 46:20-47:5; 105:9-108:11 |
| 31) Carnival does not dispute and has stipulated under oath that the employee who was observed stacking the containers that struck and injured Plaintiff Eureka Cole, was an employee of Carnival acting in the course and scope of their employment. | **Exhibit 12** Dep. Carnival Corp. Rep. at 70:10-72:24. |
| 32) Carnival failed to provide any warnings to the Plaintiff as to the potential for high winds which | **Exhibit 1** Dep. Lucien Cole at 29:16-20. |

| | |
|---|---|
| could cause items to become airborne on the Lido Deck. | **Exhibit 12** Dep. of Carnival Corp. Rep. at 43:4-13. |
| 33) Carnival's security officer Vikram Thapa also testified that each department on the ship was responsible for securing items in the event of windy conditions onboard the ship. | **Exhibit 3** Dep. Vikram Thapa at 22:23 – 23:10. |

CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2024, a true copy of the foregoing was served by CM/ECF E-service on all counsel or parties of record on the service list:

GrayRobinson, P.A.
Ashley Genoese
Michael J. Drahos
W. Cooper Jarnagin
515 North Flagler Drive, Ste. 650
West Palm Beach, Florida 33401
Tel: (561) 268-5727
Fax: (561) 268-5747
michael.drahos@gray-robinson.com
cooper.jarnagin@gray-robinson.com
ashley.genoese@gray-robinson.com
Lilia.Parker@gray-robinson.com

By:

FLORIDA LEGAL, LLC
Attorneys for Plaintiff
150 SE 2nd Avenue, Suite 1001
Miami, FL 33131
(t) (305) 901-2209
(f) (786) 870-4030

/s/ Raymond R. Dieppa
Raymond R. Dieppa, Esq.
Florida Bar No. 27690
E-Mail: ray.dieppa@floridalegal.law