UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-60532-DAMIAN/Strauss

EUREKA COLE,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

## DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant, CARNIVAL CORPORATION, by and through undersigned counsel, and pursuant to this Court's Orders [ECF Nos. 19 and 70], hereby files its Proposed Findings of Fact and Conclusions of Law as follows[1]:

### I.    PROCEDURAL BACKGROUND

1.    This is a maritime personal injury action wherein Plaintiff, Eureka Cole, claims to have sustained an injury to her left shoulder after a plastic container lid struck her while she was sitting on the outer lido deck of the Carnival *Conquest* on July 24, 2022. ECF No. 15.

2.    Plaintiff filed her First Amended Complaint on March 23, 2023. ECF No. 5. Therein, Plaintiff alleged a crewmember "negligently dropped a container

---

[1] Carnival reserves the right to amend these Proposed Findings of Fact and Conclusions of Law based on the Court's ruling on the pending Motion for Summary Judgment [ECF No. 72], and based on evidence admitted at trial.

while walking across the ship's lido deck." *Id.* at ¶ 16. Carnival filed a motion to dismiss, which the Court granted. ECF Nos. 6 and 14.

3. On May 10, 2023, Plaintiff filed the operative Second Amended Complaint against Carnival under two counts. *Id.*

4. Within Count I, Plaintiff alleges a theory of direct negligence against Carnival as the shipowner. She claims Carnival breached a duty to warn and maintain the vessel because it "allowed or directed to be placed a large unsecured, heavy storage container containing dishes on a platform or table in the vicinity of the Plaintiff while the ship was underway on the ship's outdoor lido deck, in a manner which was dangerous and would result in foreseeable harm to the Plaintiff. Subsequently, as a direct and foreseeable result of the dangerous condition created by [Carnival], the ship's movement and winds on the open deck caused these containers to fall and cause injury to Plaintiff when it struck her shoulder." *Id.* at ¶¶ 20 -21.

5. Within Count II, she alleges vicarious liability against Carnival for the acts of its crewmembers for (1) placing unsecured containers in the vicinity of passengers in significant winds; (2) failing to follow Carnival's rules for safe and proper securing of containers on the ship's lido deck; and (3) failing to remedy the dangerous condition of unsecured containers in the ship's lido deck. *Id.* at ¶¶ 28 -30.

6. On May 24, 2023, Carnival filed its Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint. ECF No. 18. Carnival later withdrew certain affirmative defenses. ECF No. 62.

## II.     APPLICABLE LEGAL PRINCIPLES

### a.  General Maritime Law

Claims arising from alleged tort actions aboard ships sailing in navigable waters are governed by general maritime law. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989).

That a passenger becomes injured does not give rise to a presumption that an unreasonable danger existed. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006). Rather, there must be some failure to exercise due care before liability can be imposed, as it is well established that Carnival is not liable to passengers as an insurer. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984) ("A carrier by sea, however, is not liable to passengers as an insurer, but only for its negligence.").

A cruise ship operator owes it passengers "the duty of exercising reasonable care under the circumstances of each case." *Torres v. Carnival Corp.*, 635 F. App'x. 595, 600-01 (11th Cir. 2015) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)).

To establish negligence, Plaintiff has the burden to prove: (1) Carnival had a duty to protect Plaintiff from a particular hazard; (2) Carnival breached that duty; (3) Carnival's breach actually and proximately caused Plaintiff's injury; and (4) Plaintiff suffered actual harm. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

b. Notice

Plaintiff must prove Carnival knew or should have known there was a non-obvious risk-creating condition to her. *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020). Under this standard, plaintiffs must show, "as a prerequisite to imposing liability, that the carrier ... had actual or constructive notice of the risk-creating condition, at least where ... the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322; *see also Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015) ("[T]he maritime standard of reasonable care usually requires that the cruise ship operator have actual or constructive knowledge of the risk-creating condition."); *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020) ("[A] cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it.").

Without evidence of notice, Plaintiff cannot prove Carnival owed her a duty. *Sutton v. Royal Caribbean Cruises Ltd.*, 774 Fed.Appx 508, 511 (11th Cir. 2019) (affirming summary judgment where plaintiff identified no prior incidents, accident reports, passenger reviews or complaints, or any other documents evidencing any actual or potential safety issues involving lighting machine); *Cohen v. Carnival Corp.*, 945 F.Supp.2d. 1351, 1355 (S.D. Fla. 2013) (finding no evidence of notice where plaintiff cannot offer "any accident reports, passenger comment reviews or forms, or reports from safety inspections.")

Plaintiffs can show constructive notice in two ways. "First, a plaintiff can establish constructive notice by showing that a 'defective condition existed for a sufficient period of time to invite corrective measures.' Second, a plaintiff can show evidence of 'substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Tesoriero*, 965 F.3d at 1178–79 (quoting *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019)).

"Knowledge that the condition exists is not sufficient, the defendant must also know that the condition is dangerous." *Malley v. Royal Caribbean Cruises, Ltd.*, 713 Fed.Appx. 905, 908 (11th Cir. 2017) (citing *Chaparro*, 693 F.3d at 1337).

c. Notice is Required and Plaintiff Cannot Claim Carnival "Created" the <u>Dangerous Condition.</u>

The Eleventh Circuit unambiguously "rejected the possibility that [a cruise] operator could be liable in the absence of actual or constructive notice." *See Pizzino v. NCL (Bahamas) Ltd.*, 709 F. App'x 563, 567 (11th Cir. 2017) (discussing *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1357 (11th Cir. 1990)). The Eleventh Circuit's *Yusko v. NCL (Bahamas), Ltd.* opinion soon followed which re-affirmed the notice requirement under a direct liability theory where a passenger seeks to hold a shipowner liable for maintaining a dangerous premises. 4 F.4th 1164, 1170 (11th Cir. 2021).

d. <u>Open and Obvious</u>

Carnival had a duty to warn only of conditions that are not open and obvious to passengers. *Carroll*, 955 F.3d at 1267 ("The open and obvious nature of a dangerous

condition negates liability for failure to warn."). This is because, as a matter of law, Carnival can rely on its passengers to use their ordinary senses to protect themselves. *See Luby v. Carnival Cruise Lines, Inc.,* 633 F. Supp. 40, 42 (S.D. Fla. 1986) ("[D]efendant is entitled to expect, as a matter of law, that plaintiff would perceive that which would be obvious to her upon the ordinary uses of her senses.").

The absence of a duty to warn does not preclude a negligence maintenance claim. The Eleventh Circuit has adopted the Restatement (Third) of Torts, providing that the "open and obvious nature of a dangerous condition [i]s a factor to be considered in a comparative fault analysis – not as a bar to liability for negligently maintaining a premises." *Carroll*, 955 F.3d at 1268. As *Carroll* explained, a cruise ship operator "may still be liable for maintaining a dangerous condition even if the danger was obvious." *Id.* at 1267. However, whether a dangerous condition is open and obvious can mitigate – or even eliminate – damages when evaluating a plaintiff's comparative fault. *See id.* at 1268-69.

e. Vicarious Liability

Under a theory of vicarious liability, the duty and conduct of a Defendant shipowner, are not relevant. *Smith v. Carnival Corp. & PLC*, No. 22-CV-22853, 2022 WL 16791783, at *4 (S.D. Fla. Nov. 8, 2022) (citing *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169 (11th Cir. 2021) ("[T]he scope of a shipowner's duty has nothing to do with vicarious liability which is not based on the shipowner's conduct.")). Under the theory of vicarious liability "an otherwise non-faulty employer [can] be held liable for the negligent acts of [an] employee acting within the scope of employment."

*Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022) (internal quotation marks omitted). To prove negligence, "a plaintiff must show that (1) the tortfeasor had a duty to protect the plaintiff from a particular injury, (2) the tortfeasor breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Yusko*, 4 F.4th at 1167-1168.

    f.  <u>Proximate Cause</u>

A plaintiff must prove the defendant's breach of duty proximately caused the claimed injuries. *Lipkin v. Norwegian Cruise Line, Ltd.*, 93 F. Supp. 3d 1311, 1324 (S.D. Fla. 2015) is instructive. The *Lipkin* plaintiff alleged failure to warn, but did not offer evidence supporting that, "had the [cruise line] adequately discharged its duty to warn of the dangers of wheelchairs on walkways, Plaintiff would not have stepped onto the walkway behind the unknown elderly woman pushing the wheelchair." Without evidence to support that the cruise line's actions or omission were an actual and proximate cause of the plaintiff's injuries, a negligence claim cannot survive.

*Lucas v. Royal Caribbean Cruises, Ltd.*, No. 19-20914-CIV-Scola, 2020 3507634 (S.D. Fla. June 1, 2020) also addressed the proximate cause issue. The plaintiff was injured after colliding with a backward skater on an ice rink. She alleged the cruise line was negligent for failing to warn of the dangers associated with backward skating and failing to prevent the skater from traveling backward.

Following a bench trial, the court found there was no duty to warn or prevent backward skating because the dangers are open and obvious. But assuming *arguendo*

there was a duty to warn, intervene, or admonish backward skating, "no credible evidence was presented to show that, had [the cruise line's] staff previously warned the backwards skater, he would not have resumed skating backwards, regardless, after being admonished not to." *Id.* at *13; *see also* Order Denying Motion for New Trial, 2020 WL 5215407 (S.D. Fla. Sept. 1, 2020) ("[E]ven if there should have been such a policy [to prevent backwards skating], Lucas provided no facts to support her conclusory theory that warning the male skater not to skate backward would have stopped him from thereafter skating backward for the rest of the skate session…Without the [backward] skater's testimony, it is nearly impossible for Lucas to show proximate cause.").

> g. Medical Causation

Non-readily observable injuries require medical testimony to prove causation. *Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332, 1338 (11th Cir. 2023); *Morhardt v. Carnival Corp.*, 304 F. Supp. 3d 1290, 1298 (S.D. Fla. Dec. 4, 2017) ("[The plaintiff's] failure to timely disclose a medical expert who can provide medical causation testimony to establish proximate cause is fatal to his claim…. Expert testimony is required to establish causation for conditions not readily observable or susceptible to evaluation by lay persons."); *Rivera v. Royal Caribbean Cruises, Ltd.*, 2016 WL 7176644, at *3 (S.D. Fla. Dec. 8, 2016) ("Establishing medical causation requires the testimony of an expert."); *Drury v. Cardiac Pacemakers, Inc.*, 2003 WL 23319650, at *3 (M.D. Fla. June 3, 2003) ("In a negligence case, in order to establish causation, expert testimony is necessary."); *Scott v. United States*, 127 F. Supp. 422,

424 (N.D. Fla. 1955) ("[I]t has been consistently held that whether there was a causal connection between an accident ... [and a sustained injury] ... is a question with respect to which only medical experts with training, skill, and experience could ... express an intelligent opinion.").

###### h. Failure to Mitigate Damages

Failure to mitigate damages is a valid defense in admiralty cases. *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1286 (11th Cir. 2000); *Jennings v. Carnival Corp.*, No. 22-CV-20205, 2022 WL 1913249, at \*3 (S.D. Fla. May 17, 2022), *report and recommendation adopted,* No. 1:22-CV-20205, 2022 WL 1908949 (S.D. Fla. June 3, 2022) (same).

###### i. Reasonable Past Medical Expenses

The appropriate measure of past medical expense damages in a maritime tort cause is the amount determined to be reasonable by the jury "upon its consideration of all relevant evidence, including the amount billed, the amount paid, and any expert testimony and other relevant evidence the party may offer." *Higgs v. Costa Crociere, S.p.A.*, 969 F.3d 1295, 1317 (11th Cir. 2020).

## III.  PROPOSED FINDINGS OF FACT

1.      Ms. Eureka Cole ("Plaintiff") was a fare-paying passenger who boarded the Carnival *Conquest* vessel in Miami, Florida for a vacation cruise on July 22, 2022. ECF No. 71-1 (Plaintiff Depo.) at 30:9 - 12.

2.      On July 24, 2022, Plaintiff reboarded the *Conquest* at around 3 p.m. after spending the day at a port stop in Nassau, Bahamas. *Id.* at 39:13 – 40:3.

3. After reboarding the ship, Plaintiff went to Lido Deck 9 on the *Conquest* with her husband. *Id.* at 40:2 - 5.

4. Plaintiff and her traveling companions then sat in a corner on outer Lido Deck 9 while waiting for other members of their party to join once they returned to the ship. *Id.* at 41:10 – 42:2.

5. About three hours later, between 5:30 p.m. and 6:30 p.m., Plaintiff picked up chicken and salad to eat, and joined her husband to sit at a table on Lido Deck 9. *Id.* at 44:4 – 45:22; *see also* ECF No. 71-2 (Photo Depicting Seating Area of Incident) [Exhibit 3 to Plaintiff's Deposition].

6. Positioned behind Plaintiff's table was a permanently affixed service cart used by crewmembers for storage of dining supplies. ECF No. 71-3 (S. Bhatia Depo.) at 51:3 – 52:20; *see also* ECF No. 71-4 (Corp. Rep. Depo.) at 42:20 – 43:3; 71-2 (Service Cart Depicted).

7. Carnival's onboard dining operation does not maintain policies and procedures regarding securing its dining supplies. ECF No. 71-4 at 60:22 – 61:13, 63:16 – 65:2.

8. Carnival had never previously had an issue before with the subject plastic container lids striking any passengers. *Id.* at 47:20 – 48:1.

9. There have been no prior incidents involving items hitting guests in the Lido Deck area onboard the *Conquest* in the five-year period preceding Plaintiff's incident. *See* ECF No. 71-16 (Defendant's Answers to Interrogatories) at pg. 11, no. 10.

10. Carnival also performed a search of prior incidents involving guests who were injured by "unsecured cargo items" in all dining areas on *Conquest*-class vessels for the three-year period preceding Plaintiff's incident, and none involve the subject plastic container lids. *See* ECF No. 71-17 (Defendant's Supplemental Answers to Interrogatories) at pgs. 10 -11, No. 10.

11. About a minute or two after sitting down, as she began eating, Plaintiff felt a hit to her back left shoulder. ECF No. 71-1 at 45:23- 46:2; 48:22 – 25.

12. Plaintiff's husband, who was sitting across from her at the table, claims he observed the wind pick up two plastic container lids stacked on top of each other that struck Plaintiff's left shoulder, and then another plastic container lid struck her a separate time. ECF No. 71-5 (L. Cole Depo.) at 8:20 – 9:22; 11:24 – 12:6; ECF No. 71-6 (Photo Depicting Seating Area of Incident) [Exhibit 1 to L. Cole Deposition]; ECF No. 71-7 (Photo Depicting Plastic Container Lid) [Exhibit 2 to L. Cole Deposition].

13. Plaintiff did not have any cut or wound to her left shoulder following the incident. ECF No. 71-1 at 63:11 – 13.

14. Following the incident, Plaintiff was escorted by Assistant Maitre'd Shruti Bhatia to the ship's medical center. ECF No. 71-3 at 37:3 - 10.

15. There, Plaintiff reported left shoulder pain. *See* ECF No. 71-8 (Shipboard Medical Records).

16. A physical examination was performed that revealed no redness, no swelling, no wound, no abrasion, and Plaintiff had full range of motion in both shoulders. *Id.* at pgs. 1 and 3.

17.    Plaintiff underwent an x-ray of her left shoulder that showed no signs of dislocation or fracture. *Id.* at pg. 3.

18.    Plaintiff was diagnosed with a muscle strain by shipboard physician Dr. Juan Caesar Vanegas Gonzalez and was provided with ibuprofen. *Id.* at pg. 4.

19.    Upon leaving the medical center, Plaintiff was escorted by Security Officer Vikram Thapa back to Lido Deck 9, where she pointed out the plastic lid that had struck her. ECF No. 71-1 at 67:7 – 68:1.

20.    Mr. Thapa obtained the plastic lid and weighed it using a scale within the security office, and it weighed approximately 87 grams (3.07 ounces/less than one pound). ECF No. 71-9 (V. Thapa Depo.) at 29:14 – 30:2. Mr. Thapa documented this with a photograph. *Id.* at 36:11 – 37:7; *see also* ECF No. 71-10 (Photo taken by V. Thapa) [Exhibit 1 to V. Thapa Depo.].

21.    Plaintiff disembarked the ship as scheduled the following day in Miami, Florida, on July 25, 2022. ECF No. 71-1 at 70:15 – 17.

22.    The same day, Plaintiff presented to Florida Westside Hospital in Plantation, Florida. *See* ECF No. 71-11 (Medical Record Dated July 25, 2022).

23.    There, Plaintiff complained of pain in her left upper back. *Id.* at pg. 2. No swelling, bruising, or ecchymosis was noted on examination. *Id.* Plaintiff did not have any complaints of numbness or weakness in the left shoulder. *Id.*

24.    The examination was noted to be unremarkable and benign, and Plaintiff was discharged the same day with ibuprofen. *Id.* at pg. 6.

25. A few days later, Plaintiff presented to a CitiMed facility and underwent an MRI of her left shoulder. ECF No. 71-1 at 78:12 – 17; *see also* ECF No. 71-12 (Composite of Medical Records from CitiMed dated July 27, August 3, and August 10, 2022).

26. Plaintiff had her initial appointment with orthopedic surgeon Dr. John P. Wilkerson on August 12, 2022. *See* ECF No. 71-13 (Medical Record Dated August 12, 2022). Dr. Wilkerson's review of an MRI scan showed a glenoid labrum tear and rotator cuff tear. *Id.* at pg. 2. Dr. Wilkerson recommended surgery that day and Plaintiff elected to proceed. *Id.*

27. Plaintiff thereafter underwent a left shoulder arthroscopy with Dr. Wilkerson on September 15, 2022. *See* ECF No. 71-14 (Operative Note Dated September 15, 2022).

28. Plaintiff was discharged from Dr. Wilkerson's care and placed at maximum medical improvement for her left shoulder on January 6, 2023. *See* ECF No. 71-15 (Medical Record Dated January 6, 2023).

29. Dr. Wilkerson opines that Plaintiff does not need any future medical treatment.

30. Dr. Wilkerson does not have any knowledge regarding how Plaintiff's medical bills were calculated in this case.

31. Plaintiff is not making a claim for lost wages.

32. Carnival presented expert testimony from biomechanical engineer Dr. Amy Courtney.

33. Dr. Courtney earned a bachelor's degree in engineering mechanics from Michigan State University and a Master of Science degree in Engineering Sciences from Harvard University. She earned a Ph.D. in Medical Engineering and Medical Physics from a joint program with Harvard University and the Massachusetts Institute of Technology. This degree program included specialized medical training at Harvard Medical School, including coursework and clinic training. She also held an appointment as an Assistant Professor teaching physics at the United States Military Academy at West Point.

34. Dr. Courtney reviewed testimony, Plaintiff's medical records, photographs, and other case materials. She also obtained measurements of an exemplar of the subject container lid from the *Conquest* cruise ship.

35. Dr. Courtney opines the subject incident did not involve a biomechanical mechanism consistent with an acute rotator cuff injury. Additionally, the rotator cuff pathology identified by Plaintiff's treating medical providers is not consistent with an acute rotator cuff injury; rather the purported findings are consistent with a biomechanical mechanism of repetitive loading over time combined with age-related degeneration.

36. Carnival presented expert testimony from orthopedic surgeon Dr. Joseph Chalal.

37. Dr. Chalal is board certified in orthopedic surgery and specializes in sports medicine, and arthroscopic knee and shoulder surgery.

38. Dr. Chalal performed a medical examination of Plaintiff on September 19, 2023.

39. Dr. Chalal reviewed Plaintiff's medical records and diagnostic imaging of Plaintiff's left shoulder.

40. Dr. Chalal opined that the findings within the July 27, 2022 left shoulder MRI were degenerative in nature, predated Plaintiff's claimed incident, and therefore were unrelated to Plaintiff's incident.

41. Dr. Chalal opined it is not within medical probability that these MRI findings were causally related to Plaintiff's claimed incident.

42. Dr. Chalal reviewed the operative report and intraoperative photographs pertaining to Plaintiff's left shoulder arthroscopy.

43. Dr. Chalal opined it is not within medical probability that the intraoperative findings were causally related to Plaintiff's claimed incident. Rather, it is within medical probability that they were degenerative in nature, predated the incident, and were unrelated to the incident.

44. Dr. Chalal reviewed Plaintiff's past medical expenses related to her left shoulder arthroscopy with Dr. Wilkerson.

45. Dr. Chalal opined that the charges submitted by CitiMed and Miami Surgical Center were excessive, unreasonable, and not customary.

## IV. PROPOSED CONCLUSIONS OF LAW

46. Claims arising from alleged tort actions aboard ships sailing in navigable waters are governed by general maritime law. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989).

47. A cruise ship operator owes it passengers "the duty of exercising reasonable care under the circumstances of each case." *Torres v. Carnival Corp.*, 635 F. App'x. 595, 600-01 (11th Cir. 2015) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)).

48. That a passenger becomes injured does not give rise to a presumption that an unreasonable danger existed. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006). Rather, there must be some failure to exercise due care before liability can be imposed, as it is well established that Carnival is not liable to passengers as an insurer. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984) ("A carrier by sea, however, is not liable to passengers as an insurer, but only for its negligence.").

49. To establish negligence, Plaintiff has the burden to prove: (1) Carnival had a duty to protect Plaintiff from a particular hazard; (2) Carnival breached that duty; (3) Carnival's breach actually and proximately caused Plaintiff's injury; and (4) Plaintiff suffered actual harm. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

50. To establish Carnival owed her a duty directly as the shipowner in Count I, Plaintiff must prove Carnival knew or should have known there was a non-

obvious risk-creating condition to her. *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020).

51.     Under this standard, plaintiffs must show, "as a prerequisite to imposing liability, that the carrier ... had actual or constructive notice of the risk-creating condition, at least where ... the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322; *see also Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015) ("[T]he maritime standard of reasonable care usually requires that the cruise ship operator have actual or constructive knowledge of the risk-creating condition."); Tesoriero v. Carnival Corp., 965 F.3d 1170, 1178 (11th Cir. 2020) ("[A] cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it.").

52.     "Knowledge that the condition exists is not sufficient, the defendant must also know that the condition is dangerous." *Malley v. Royal Caribbean Cruises, Ltd.*, 713 Fed.Appx. 905, 908 (11th Cir. 2017) (citing *Chaparro*, 693 F.3d at 1337).

53.     With regards to Count I, Plaintiff has not produced any evidence that Carnival was on notice that the plastic container lid that struck her posed a risk-creating condition.

54.     Thus, Plaintiff has failed to establish Carnival owed her a duty with regards to her claims against Carnival directly as the shipowner in Count I.

55.     Additionally, to the extent Plaintiff blames windy conditions for her incident, such conditions are open and obvious to a reasonable person. Thus, Carnival

owed no duty to warn her of conditions she would perceive upon the ordinary use of her senses. *Carroll*, 955 F.3d at 1267 ("The open and obvious nature of a dangerous condition negates liability for failure to warn.").

56.     With regards to Count II, under a theory of vicarious liability, the duty and conduct of a Defendant shipowner, are not relevant. *Smith v. Carnival Corp. & PLC*, No. 22-CV-22853, 2022 WL 16791783, at *4 (S.D. Fla. Nov. 8, 2022) (citing *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169 (11th Cir. 2021) ("[T]he scope of a shipowner's duty has nothing to do with vicarious liability which is not based on the shipowner's conduct.")).

57.     Under the theory of vicarious liability "an otherwise non-faulty employer [can] be held liable for the negligent acts of [an] employee acting within the scope of employment." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022) (internal quotation marks omitted). To prove negligence, "a plaintiff must show that (1) the tortfeasor had a duty to protect the plaintiff from a particular injury, (2) the tortfeasor breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Yusko*, at 1167-1168.

58.     There is no evidence that the storage of plastic containers lids in the lido deck area ever presented a safety concern.

59.     There is no evidence, through industry standards or expert testimony, that the placement of plastic containers lids on the service station was improper.

60.     There is no evidence that the placement of plastic container lids by a crewmember on the service station violated any Carnival policy or procedure.

61.     The Court therefore finds no evidence that a crewmember breached a duty to Plaintiff by placing the containers on the lido deck and Count II fails.

62.     Plaintiff's injury was not caused, directly or indirectly, by any negligence of Carnival or its crewmembers.

63.     Carnival is entitled to final judgment in its favor on all counts asserted by Plaintiff.

**DONE and ORDERED** in Chambers in Miami, Florida, this _____ day of _____, 2024.

_____
MELISSA DAMIAN
UNITED STATES DISTRICT JUDGE

Respectfully submitted,

GrayRobinson, P.A.
515 North Flagler Drive, Ste. 650
West Palm Beach, Florida 33401
Tel: (561) 268-5727
Fax: (561) 268-5747

By: */s/ Cooper Jarnagin*
Michael J. Drahos
Florida Bar No. 0617059
michael.drahos@gray-robinson.com
W. Cooper Jarnagin
Florida Bar No. 117767
cooper.jarnagin@gray-robinson.com
Ashley Genoese
Florida Bar No. 1019357
ashley.genoese@gray-robinson.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

*/s/ Cooper Jarnagin*

**SERVICE LIST**
**CASE NO. 23-cv-60532-MD**

Raymond Renato Dieppa
FLORIDA LEGAL
12550 Biscayne Blvd., Suite 209
North Miami, FL 33181
Telephone: (305) 901-2209
Facsimile: (786) 870-4030
*ray.dieppa@floridalegal.law*

*Attorney for Plaintiff*