UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-60532-CIV-DAMIAN

**EUREKA COLE**,

    Plaintiff,

v.

**CARNIVAL CORPORATION**,

    Defendant.
_____/

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 72]

**THIS CAUSE** is before the Court on Defendant, Carnival Corporation's, Motion for Summary Judgment, filed on March 7, 2024 [ECF No. 72 (the "Motion")].

THE COURT has reviewed the Motion, the Response and Reply thereto [ECF Nos. 75 and 76], the documents submitted in support of the parties' filings, and the pertinent portions of the record and is otherwise fully advised. The Court also heard argument on the Motion from the parties, through counsel, at a Status Conference held on May 2, 2024. For the reasons set forth below, the Motion is denied.

### I.    BACKGROUND

In this maritime negligence action, Plaintiff, Eureka Cole, seeks damages for injuries she sustained as a commercial passenger while aboard Carnival's cruise ship, the *Conquest*. *See generally* Second Amended Complaint ("SAC") [ECF No. 15].

### A.   *The Alleged Incident And Injury*

Plaintiff alleges she was injured on July 24, 2022, when strong winds lifted two or three plastic container lids and struck her in the back left shoulder while she was seated on the ship's outer lido deck. *Id.* at ¶¶ 20–21. Prior to the incident, Plaintiff's husband, Lucien Cole, observed a Carnival crew member stacking and unstacking the subject plastic containers in a

cart or workstation directly behind where Plaintiff was seated. *See* Lucien Cole's Deposition [ECF No. 74-1 at 27:3–23]; [ECF No. 71-6 (photo of seating area)]. According to Mr. Cole, the plastic containers and lids were stacked up high at the time of the incident. [ECF No. 74-1 at 27:3–5]. Mr. Cole further testified that it was "really windy" on the lido deck and the Carnival crew member "was right there" when the wind suddenly picked up the lids that struck Plaintiff's back. *Id.* at 9:6–11; 29:1–9. Plaintiff testified that after she was struck, she observed at least three plastic lids on the ground. *See* Plaintiff's Deposition [ECF No. 71-1 at 49:18–24].

After the incident, Plaintiff was taken to the ship's infirmary where the ship's physician diagnosed Plaintiff with a contusion to her upper back, prescribed ibuprofen, and advised Plaintiff to follow up with a physician for further evaluation of her shoulder. [ECF No. 74-2 at 20:1–17; 21:4–8]. The following day, on July 25, 2022, Plaintiff disembarked the ship as scheduled in Miami, Florida. [ECF No. 71-1 at 70:15–17]. Due to continued pain in her left upper back and shoulder area, Plaintiff sought further medical treatment, including a left shoulder arthroscopy surgery. *Id.* at 79:14–22; [ECF No. 71-14 (medical records)].

### B. *Procedural History*

On March 20, 2023, Plaintiff filed a Complaint against Carnival. [ECF No. 1]. After her original Complaint and Amended Complaint were dismissed, Plaintiff filed her Second Amended Complaint, the operative complaint, on May 10, 2023. [ECF No. 15]. In Count I of the Second Amended Complaint, Plaintiff alleges Carnival was negligent because it "allowed or directed to be placed a large unsecured, heavy storage container containing dishes on a platform or table in the vicinity of Plaintiff while the ship was underway on the ship's outdoor lido deck, in a manner in which was dangerous and would result in foreseeable harm

to the Plaintiff." SAC at ¶¶ 20–21. As a result of the allegedly dangerous condition created by Carnival, Plaintiff alleges "the ship's movement and winds on the open deck caused these containers to fall and cause injury to Plaintiff when it struck her shoulder." *Id.*

In Count Two, Plaintiff asserts a claim of vicarious liability against Carnival for the acts of its employees, crew members, workers, and restaurant staff for allegedly (1) placing unsecured containers in the vicinity of passengers on the lido deck while the ship was in movement under strong winds; (2) failing to follow Carnival's rules, regulations, and protocol for the safe and proper securing of the plastic containers on the ship's lido deck; and (3) failing to remedy the dangerous condition of unsecured containers on the ship's lido deck. *Id.* at ¶¶ 28–30. Plaintiff alleges she sustained permanent and continuing injuries, including pain and suffering, mental anguish, disfigurement, disability, medical expenses, loss of earnings, and loss of enjoyment of life. *Id.* ¶ 7–8.

In the Motion now before the Court, Carnival seeks summary judgment as to both of Plaintiff's claims. [ECF No. 72]. The Motion is fully briefed and ripe for review, and this case is set for a bench trial during the Court's two-week trial calendar beginning on May 20, 2024. *See* ECF No. 83.

## II.   LEGAL STANDARD

### A. *Summary Judgment*

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In reviewing a motion for summary judgment, the Court is "required to view the evidence

and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007)). Importantly, "at the summary judgment stage the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter," but only "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

The Eleventh Circuit has indicated that a more relaxed summary judgment standard applies to non-jury cases. *See Coats & Clark, Inc. v. Gary*, 755 F.2d 1506, 1509–10 (11th Cir. 1985) (citing *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123–24 (5th Cir. 1978)). In a non-jury setting where "there are 'no issues of witness credibility,' the Court may make factual determinations and draw inferences at the summary judgment stage based on the affidavits, depositions and other evidence in the record, because '[a] trial on the merits would reveal no additional data' nor 'aid the determination.'" *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1251 (11th Cir. 2016) (quoting *Nunez*, 572 F.2d at 1123–24). In bench trials, the judge serves as the sole factfinder and weighs the evidence, evaluates the credibility

4

of witnesses, and decides questions of fact and issues of law. *See Childrey v. Bennett*, 997 F.2d 830, 834 (11th Cir. 1993) (holding that "it is the exclusive province of the judge in non-jury trials to assess the credibility of witnesses and to assign weight to their testimony").

### B. *General Maritime Law*

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters," and courts "rely on general principles of negligence law" in analyzing those actions. *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)). General principles of negligence law, as applied in the maritime context, recognize a claim based on a shipowner's direct liability for its own negligence or a claim based on a shipowner's vicarious liability for another's negligence.

The elements of a negligence claim based on a shipowner's direct liability for its own negligence are well settled: "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014) (quoting *Chaparro*, 693 F.3d at 1336).

"With respect to the duty element in a maritime context, 'a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.'" *Guevara*, 920 F.3d at 720 (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)). "This standard 'requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of [a] risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not

clearly linked to nautical adventure.'" *Id.* (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)); *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984) (explaining that a shipowner "is not liable to passengers as an insurer, but only for its negligence"). Thus, a shipowner's actual or constructive knowledge of the hazardous condition arises as part of the duty element in a claim seeking to hold the shipowner directly liable for its own negligence. "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Therefore, a cruise ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 797 (11th Cir. 2019). "The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Miller v. NCL (Bahamas) Ltd.*, No. 15-cv-22254, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) (Ungaro, J.).

In contrast, a shipowner's duty to a plaintiff is not relevant to a claim based on vicarious liability. *See Smith v. Carnival Corp. & PLC*, No. 22-CV-22853, 2022 WL 16791783, at *4 (S.D. Fla. Nov. 8, 2022) (citing *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169 (11th Cir. 2021) ("[T]he scope of a shipowner's duty has nothing to do with vicarious liability which is not based on the shipowner's conduct.")). Under the principle of vicarious liability, "an otherwise non-faulty employer [can] be held liable for the negligent acts of [an] employee acting within the scope of employment." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022) (internal quotation marks omitted). In other words, liability for the agent's negligence is legally imputed to the non-negligent principal. *See Meyer v. Holley*, 537 U.S. 280,

285–86 (2003) ("The principal is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of." (quoting *New Orleans, M. & C.R. Co. v. Hanning*, 82 U.S. 649, 657 (1872))). Further, "the notice requirement does not . . . apply to maritime negligence claims proceeding under a theory of vicarious liability." *Yusko*, 4 F.4th at 1167.

### III.   DISCUSSION

Carnival argues it is entitled to summary judgment on both counts in Plaintiff's Second Amended Complaint for two reasons: (1) there is no record evidence that Carnival knew or should have known that the plastic containers' placement on the service station posed a risk-creating condition to passengers; and (2) there is no evidence of a negligent act by a crew member.

The Court first considers whether Plaintiff has met her burden of presenting evidence sufficient to create a genuine issue of material fact as to whether Carnival had actual or constructive notice of the alleged dangerous condition.

#### A. *Whether Carnival Had Actual Or Constructive Notice Of The Dangerous Condition.*

##### 1. Actual Notice

Actual notice exists when the defendant knows about the dangerous condition. *See Keefe*, 867 F.2d at 1322; *Guevara*, 920 F.3d at 720. Carnival argues that it had no actual notice of the hazard—*i.e.*, the placement of the plastic containers on the workstation on the ship's exterior area during windy conditions. Mot. at 4–5.

In her Response, Plaintiff argues that evidence of Carnival's corrective actions and safety procedures for securing items in the event of high winds establish Carnival's actual notice of the dangerous condition. Resp. at 3–4. Specifically, Plaintiff relies on the testimony

7

of Shruti Bhatia, a Carnival employee who oversaw the dining area on the date of Plaintiff's incident. Bhatia testified that Carnival was aware that crew members were required to and had been trained to secure items in the outer dining area on the lido deck in the event of high winds. *See* Bhatia's Deposition [ECF No. 74-13 at 18:1–25; 20:6–10; 21:1–19; 43:1–4; 65:1–12]. Relying on *Anders v. Carnival Corporation*, 2023 WL 4252426 (S.D. Fla. June 29, 2023), and *Carroll v. Carnival Corporation*, 955 F. 3d 1260 (11th Cir. 2020), Plaintiff contends Bhatia's testimony concerning corrective measures taken by Carnival to address potential hazards created by windy conditions is sufficient to establish Carnival's actual notice.

Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition. *Carroll*, 955 F.3d at 1265; *see also Bunch v. Carnival Corp.*, 825 F. App'x 713, 718 (11th Cir. 2020). In *Carroll*, the plaintiff tripped over a lounge chair while crossing a cruise deck. *See Carroll*, 955 F.3d at 1263. Testimony showed the cruise line had taken certain steps to reposition lounge chairs — on the same deck where the plaintiff tripped — to maintain a clear walkway. *See id.* at 1266. The court concluded that "a reasonable jury could view th[e] testimony as evidence that [the defendant] ha[d] taken corrective measures — *i.e.*, adopt[ed] a policy of keeping the chairs in-line and/or in the upright position and instruct[ed] employees to ensure that they are not blocking the walkway — due to a known danger[.]" *Id.* (alterations added). Similarly, in *Anders*, the plaintiff alleged that a crew member who was stationed at the top of a slide to prevent the type of accident suffered by the plaintiff was sufficient evidence of corrective measures to establish actual notice of the dangerous condition. *Anders*, 2023 WL 4252426, at *6.

Here, Bhatia's testimony does establish that Carnival has taken corrective measures to prevent the type of injury suffered by Plaintiff. Moreover, there is an issue of fact regarding

how windy the conditions were on the lido deck on the date of Plaintiff's incident – that is, whether it was windy enough that the corrective measures should have been invoked. (Compare Plaintiff's testimony that it was "very windy" [ECF No. 71-1 at 46:20–25; 47:1–5] and Mr. Cole's testimony that it was "really windy" on the lido deck [ECF No. 71-5 at 9:6–11] with Bhatia's testimony that "things were not really . . . flying here and there, and the ship was not going from left to right." [ECF No. 74-13 at 46:17–19]). And there is a related question of fact regarding whether Carnival violated its own safety procedures when crew members did not take corrective action to properly secure the plastic containers during the windy conditions present on the lido deck on the date of Plaintiff's incident. Bhatia testified that in "general situations," the side carts used to store the plastic containers are left unattended and in "windy" conditions or "extreme weather," the carts are "supposed to be secured" and the crew members in charge of dining operations would "take care of that." [ECF No. 74-13 at 51:7–14].

As in *Anders* and *Carroll*, Bhatia's testimony establishes that Carnival has taken corrective measures—*i.e.*, instructing and training employees to secure items in the event of windy conditions on the outer lido deck—to protect passengers from a known danger. This, combined with the issue of whether the conditions were windy enough that those measures should have been heeded is sufficient to withstand summary judgment on the issue of Carnival's actual notice.

### 2. Constructive Notice

Constructive notice exists when "the shipowner ought to have known of the peril to its passengers, the hazard having been present for a period of time so lengthy as to invite corrective measures." *Keefe*, 867 F.2d at 1322; *Guevara*, 920 F.3d at 720. A plaintiff can

9

establish constructive notice by alleging "substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Holland*, 50 F.4th at 1095 (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1988)).

Carnival argues there is no evidence that the plastic containers or the lids that allegedly struck Plaintiff were ever previously a safety concern or that they ever injured a passenger before—whether in normal weather conditions or windy conditions. Mot. at 5. Carnival further asserts there have been no prior incidents involving items hitting guests on the lido deck area onboard the *Conquest* for the five-year period preceding Plaintiff's incident. *Id.*

### a. *Length of Time Dangerous Condition Existed*

Plaintiff contends there is sufficient evidence demonstrating Carnival had constructive notice based on the length of time the alleged dangerous condition existed. Resp. at 7–9. Plaintiff relies on the testimony of Bhatia and Plaintiff's husband regarding the presence of windy conditions for some time prior to Plaintiff's incident and prior to the nearby Carnival employee stacking the containers that caused Plaintiff's injury as evidence that the dangerous condition existed for a sufficient period of time to invite corrective measures. Resp. at 7.

The amount of time the windy conditions existed on the exterior deck prior to Plaintiff's incident is relevant to establish whether Carnival had constructive notice of the hazard – that is, whether the conditions were going on long enough that Carnival should have known about the risks created by those conditions. In her deposition, Plaintiff testified that it was "very windy" during the two or three hours that she was out on the lido deck and that she had to "walk forward to not fall." [ECF No. 71-1 at 46:20–25; 47:1–5; 56:18–22]. Similarly, Plaintiff's husband testified in his deposition that it was "really windy" all day and

10

"you had to lean forward to move around." [ECF No. 71-5 at 9:6–11; 27:14–16]. Bhatia, the managing crew member who was on duty on the date of the incident, testified there was a change in the weather on the lido deck and it became "quite windy" around the time of Plaintiff's incident. [ECF No. 71-3 at 31:19–24; 32:6–15].

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that this testimony is sufficient to create a genuine dispute as to the material issue of whether the windy conditions existed for a sufficient period of time that Carnival should have been aware that the wind would have enough force to cause unsecured items, like the plastic containers at issue in this case, to strike Plaintiff. Therefore, summary judgment is unavailable.

    *b. Prior Incidents*

Although the Court has already determined that there are sufficient factual disputes regarding whether Carnival had constructive notice to preclude summary judgment, the Court addresses Plaintiff's alternative basis for attempting to establish constructive notice. Plaintiff contends the following prior incidents are sufficiently similar to place Carnival on notice that Plaintiff's incident was foreseeable:

> <u>Oct. 4, 2019</u> - Guest was eating on Deck 9 Aft Rosie Restaurant when a piece of metal frame fell on his head, causing laceration injury.
>
> <u>Nov. 10, 2019</u> - Guest claimed that while he was seated on the couch on deck 3 forward port side lobby, a metal piece of a vacuum cleaner extension fell from above and hit the shin of his left leg, causing injury to his shin.
>
> <u>Dec. 16, 2019</u> - Guest claimed that while she was having dinner in Posh Dining Room, a waiter dropped one of the brown plastic covers on the carpeted floor and it bounced back and hit her right ankle, causing her pain.
>
> <u>Nov. 12, 2021</u> - Guest was seated at table for lunch at Old Fashioned BBQ, when a metal plate allegedly fell from the ceiling and hit her on

11

> the right side of her head and shoulder, resulting in contusion to her right shoulder.
>
> July 15, 2022 - Guest claims she was sitting at her table waiting for dinner when a server who was carrying a tray of plates accidentally dropped plate onto her head. Guest was treated for a superficial laceration on the scalp.

Resp. at 8–9. According to Plaintiff, these prior incidents are sufficiently similar to Plaintiff's incident in this case because they each involved unsecured items on the ship suddenly striking passengers while eating in dining areas or employees negligently causing items to fall and strike passengers. *Id.* at 9.

Because of the potential for undue prejudice, the Eleventh Circuit has determined that evidence of prior incidents is permitted only under the "substantial similarity" doctrine. *See Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 (11th Cir. 1997). "Evidence of similar occurrences may be offered to show a defendant's notice of a particular defect or danger, the magnitude of the defect or danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, the strength of a product, the standard of care, and causation." *Hessen for Use & Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 650 (11th Cir. 1990). The Eleventh Circuit has set forth a three-prong test to determine if evidence of a prior incident is admissible: (1) the incidents must not be too remote in time; (2) the conditions must be substantially similar; and (3) there must be no prejudice or confusion of the issues that substantially outweighs the probative value of the evidence. *See Weeks v. Remington Arms Co.*, 733 F.2d 1485, 1491 (11th Cir. 1984). "The 'substantial similarity' doctrine does not require identical circumstances and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015). Ultimately, the proponent of the

evidence bears the burden of demonstrating substantial similarity. *See id.* (citing *Heath*, 126 F.3d at 1397 n.12).

Applying the Eleventh Circuit's standard for substantial similarity, the Court finds that the prior incidents identified above are not substantially similar to Plaintiff's incident. As Carnival correctly argues, none of the prior incidents meet the Eleventh Circuit's "substantially similar" test because (1) none concerns the subject plastic container lids; (2) two of the prior incidents involved a crew member dropping an item onto a passenger; and (3) none of the prior incidents involve the circumstances in which Plaintiff was allegedly injured, that is, windy conditions picking up an unsecured item on an exterior deck.

Therefore, the alleged prior incidents relied upon by Plaintiff do not establish constructive notice and, further, because they fail the substantial similarity test, they are inadmissible as evidence of Carnival's constructive notice.

### 3. Creation of Dangerous Condition

The Court also rejects Plaintiff's alternative argument that she does not need to prove notice because there is evidence in the record—through her husband's testimony regarding a Carnival employee stacking the plastic containers that caused Plaintiff's injury—that Carnival created the dangerous condition. Resp. at 5–6 (citing *Long v. Celebrity Cruises, Inc.*, 982 F. Supp. 2d 1313 (S.D. Fla. 2013), and *Bach-Tuyet Chau v. NCL (Bahamas) Ltd.*, 2017 WL 2901204 (S.D. Fla. Apr. 25, 2017)).

In other words, Plaintiff contends that evidence of notice should not be required if the owner of the cruise ship created the dangerous condition. However, as Carnival correctly points out in its Reply, the cases relied upon by Plaintiff in support of her contention were decided before the Eleventh Circuit "rejected the possibility that [a cruise ship] operator could

be liable in the absence of actual or constructive notice." *Pizzino v. NCL (Bahamas) Ltd.*, 709 F. App'x 563, 566–67 (11th Cir. 2017) (finding trial court did not err in failing to give jury instruction that notice is not required when the defendant cruise ship operator created the dangerous condition) (citing *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358–59 (11th Cir. 1990)).

There is ample Eleventh Circuit authority reinforcing the rule that notice *is* required in a direct negligence claim. *See Carroll*, 955 F.3d at 1264–65 n.2; *Amy v. Carnival Corp.*, 2020 WL 3240897, at *4 (11th Cir. June 16, 2020); *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 797 (11th Cir. 2019) (internal citation omitted) (expressly rejecting argument that plaintiff could prevail without showing carrier's actual or constructive notice of the risk-creating condition and holding that "the carrier's mere creation or maintenance of a defect alone is not enough to establish liability unless a jury could infer actual or constructive notice"). Therefore, Plaintiff's contention that she need not prove notice where a cruise ship operator allegedly creates the dangerous condition is not supported by the current state of the law in the Eleventh Circuit.

### B. Genuine Issues of Material Fact Preclude Summary Judgment On Plaintiff's Vicarious Liability Claim.

In Count II, Plaintiff asserts a claim for vicarious liability against Carnival for the acts of its crew members for allegedly (1) placing unsecured containers in the vicinity of passengers in significant winds; (2) failing to follow Carnival's rules for safe and proper securing of containers on the ship's lido deck; and (3) failing to remedy the dangerous condition of unsecured containers on the ship's lido deck. SAC ¶ 28. The crux of Plaintiff's vicarious liability claim is that "Carnival was negligent for allowing its employees to place large Lexan dining containers in the dining area of the ship's Lido deck while the ship was experiencing

14

high winds and failing to properly secure these containers resulting in Plaintiff's injury." Resp. at 2.

Carnival argues it is entitled to summary judgment because there is no record evidence that any Carnival crew member violated any Carnival procedure, or any other industry standard or procedure related to storage of dining equipment, by stacking the plastic containers in the manner Plaintiff's husband claimed he observed. Mot. at 6–7.

Plaintiff again relies on Bhatia's testimony regarding safety procedures requiring crew members to secure items on the ship in the event of windy conditions to demonstrate negligence on the part of Carnival's employee. Resp. at 10. Plaintiff further contends there is sufficient evidence, through Plaintiff's husband's testimony, that a Carnival employee created the hazard by stacking the subject plastic containers too high in the vicinity of passengers and leaving the containers unsecured on the workstation directly behind Plaintiff during windy conditions on the ship's lido deck. *Id.* at 10–11. According to Plaintiff, such conduct establishes a failure to exercise reasonable care and a violation of Carnival's safety procedures for securing items during windy conditions to prevent injury to passengers on the ship's exterior deck. *Id.* at 11.

Relying on *Hunter v. Carnival Corporation*, 609 F. Supp. 3d 1305 (S.D. Fla. 2022), and *Coletti v. Carnival Corporation*, 2024 WL 580355 (S.D. Fla. Feb. 13, 2024), Plaintiff contends there is sufficient evidence demonstrating it was foreseeable that the Carnival employee's failure to exercise reasonable care or to follow safety procedures under windy conditions on the ship's exterior deck would result in injury to Plaintiff. Resp. at 10–11.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there is sufficient evidence to create genuine issues of material fact regarding whether the crew

member responsible for the placement of the containers on the service cart[1] exercised reasonable care in placing the containers in a stacked position near Plaintiff under the allegedly windy conditions present on the date of the incident.

Therefore, Carnival's Motion for Summary Judgment on Plaintiff's vicarious liability claim also fails.

## IV. CONCLUSION

For the reasons set forth above, and based on the evidence in the record, the Court finds that Plaintiff has sustained her burden of presenting evidence sufficient to create genuine issues of material fact regarding both her direct negligence and vicarious liability claims. These questions of fact are best left for resolution following a bench trial and considering all the evidence and arguments presented by the parties in support of their respective positions.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [**ECF No. 72**] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 17th day of May, 2024.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc: Counsel of record

---

[1] It is undisputed that a Carnival crew member was responsible for the placement of the plastic containers on the cart on the date of Plaintiff's incident. *See* ECF No. 77 at ¶ 31.