UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 0:23-cv-60532-MD

EUREKA COLE,                                    Fort Lauderdale, Florida

                    Plaintiff,                  February 2, 2024

            vs.                                 10:00 AM - 11:01 AM

CARNIVAL CORPORATION,

                    Defendant.                  Pages 1 to 39
_____

                          DISCOVERY HEARING
                 BEFORE THE HONORABLE JARED M. STRAUSS
                   UNITED STATES MAGISTRATE JUDGE

APPEARANCES:


FOR THE PLAINTIFF:              Raymond Renato Dieppa, Esquire
                                Florida Legal
                                150 Southeast 2nd Avenue
                                Suite 1001
                                Miami, Florida 33131

FOR THE DEFENDANT:              Ashley Nicole Genovese, Esquire
                                GrayRobinson
                                515 N. Flagler Drive
                                Suite 650
                                West Palm, Florida 33401

STENOGRAPHICALLY TRANSCRIBED BY:

                        PATRICIA BAILEY-ENTIN, FPR, RPR
                        Official Court Reporter
                        United States District Court
                        U.S. Federal Courthouse
                        299 East Broward Boulevard
                        Fort Lauderdale, Florida 33301

(Call to the Order of the Court.)

THE COURT:  Calling the case of Eureka Cole v. Carnival Corporation, Case Number 23-cv-60532.

Could I please have appearances from both parties, starting with the plaintiff.

MR. DIEPPA:  Good morning, Your Honor.  Raymond Dieppa here for the plaintiff, Eureka Cole.

THE COURT:  Good morning, Mr. Dieppa.

MS. GENOVESE: Ashley Genovese here for the defendant, Carnival Corporation.

THE COURT:  Good morning, Ms. Genovese.

We're here for a discovery hearing regarding a dispute over the plaintiff's disclosed expert Michael Andrew Liberti. I gather from -- I reviewed the joint discovery status report the parties filed as well as the expert report of Mr. Liberti and the defendant's experts of Dr. Chalal -- did I pronounce that correctly, Ms. Genovese?

MS. GENOVESE:  Yes, Chalal.

THE COURT:  Chalal.

MS. GENOVESE:  I believe so.

THE COURT:  Dr. Chalal and Dr. Amy Courtney.  And as I understand it, Ms. Genovese, what relief is the defendant seeking at this point?

MS. GENOVESE:  The defendant is seeking to strike the rebuttal opinion on the report of the expert as we believe it's

an improper rebuttal and it should have been an initial expert.

THE COURT:  Okay.  So there's an ore tenus motion to strike Mr. Liberti as an expert witness.  He was disclosed -- and I'll explore this with you, Mr. Dieppa.  He was disclosed at the time for -- within the time for disclosing rebuttal experts, and the defendant is moving to strike him as an improper rebuttal expert or otherwise untimely disclosed rebuttal expert.

So, Mr. Dieppa, let me start with you.  Can you clarify for me is Mr. Liberti being offered as a rebuttal expert, or is he being offered as an affirmative expert by the plaintiff?

MR. DIEPPA:  Your Honor, Mr. Liberti -- and you've had the opportunity of reviewing his report -- is solely being offered as a rebuttal expert.

THE COURT:  Hold on one second.  Can you make sure to speak in your microphone.

MR. DIEPPA:  Oh, yes.

THE COURT:  Our only record here is our digital recorder; so I want to make sure that we have a record.

MR. DIEPPA:  No problem, Your Honor.

Mr. Liberti -- he's being offered as rebuttal expert.  His report is brief, and his report touches on the same subject as the -- as both Dr. Chalal, who he largely was retained to rebut.  As you can see, Dr. Chalal's opinions were disclosed very -- relatively early in the case, in November, and his

opinions were that there was no causation.

Subsequently -- and there was a biomechanic that was disclosed, Ms. Courtney, who's already been considered by this Court at the last hearing, talking about, basically, the same issue.

Mr. Liberti's opinion -- and this is very important, under the Papason (phonetic) case we cited, it seeks to defeat and/or rebut those opinions because the sole topic that Mr. Liberti is testifying on is that, in contradiction to Dr. Chalal's opinion -- and also in contradiction to Ms. Courtney's opinion, but mostly in contradiction to Dr. Chalal's opinion -- there was causation of this incident and there would be causation under the circumstances.

Now, this is not a surprise to defense counsel at all because this has always been the issue in the case.  And they also had received from us about four or five non-retained expert Rule 26(c) reports from the treating physicians in addition to the surgeon, Dr. Wilkerson, who are also testifying as to causation in this topic.

So in terms of the subject matter and in terms of what the report is intended to achieve, it is well within the soap of rebuttal.  I think the Papason case talks about this where it was a products liability case, and it was two experts basically arguing different sides of the coin.

Obviously, Your Honor, we cited the large body of case

law talking about -- and as Your Honor well knows -- the striking of an expert in the Eleventh Circuit is an extreme remedy.

And the other side moving to strike the expert -- they are required to demonstrate severe prejudice and willful disregard for the rules and/or the Court's scheduling orders or some other intentional purpose.

THE COURT:  Well, hold on.  Because I think -- I want to make it clear:  I think there are two different tracks of analysis, and I think you're conflating the two.

MR. DIEPPA:  The first one --

THE COURT:  Hold on.  Hold on.

Either he's a rebuttal expert, which is all you're saying is he's solely a rebuttal expert, which I take to mean he's not been offered in the case in chief and he's solely there to rebut the defendant's experts.

If that's the case, then he's timely disclosed, and then the question for the Court is is he actually a rebuttal expert?  Is he actually rebutting anything, or is he an affirmative expert masquerading as a rebuttal expert.

If you're telling me that actually he's an affirmative expert, then we're in the "Well, he was disclosed late," then we go to the, you know, substantial justification or harmlessness analysis under Rule 37.

MR. DIEPPA:  Correct.

THE COURT:  That's not what you're telling me.  You're telling me that he's solely being offered as a rebuttal expert and would only testify in a rebuttal case, not a case in chief.

MR. DIEPPA:  Your Honor, that is correct.  And that's why he was disclosed in the manner in which he was.  In his report, specifically refers to Dr. Chalal's report because at the time, Mr. Liberti was retained and prepared his report.  That's what I was intending to rebut, and that's the only reason why he would be offered.

In this case, Your Honor, by way of background, Ms. Cole was treated by the ship's own physician, Dr. Vanegas Gonzalez, who said her injuries were causally related at the time.  Likewise, her treating physicians and the hospital records also indicate that the injury to her shoulder was causally related.

So Mr. Liberti just touches on that.  You know, and the case law is clear that the expert doesn't have to be the same specialty, and he just talks about how biomechanically, in addition to medically, which both are -- both of that testimony is permitted as to causation, how this injury could have occurred.

THE COURT:  How does the non-expert treating physicians that you referred to -- what is their explanation for causation?  What is the theory of causation that they are testifying to?

MR. DIEPPA:  It's not really a theory, Your Honor. It's this object struck her.  She had pain in the location of the area.  She had complaints.  She got off the ship after going to the ship's doctor, went into the ER.  She was again diagnosed with a bruising, pain and strain in that area.  She had a subsequent MRI, and in this case, I would point out that there's no record that's been identified by the defense that shows this is preexisting, and her complaints were completely consistent with a blow to the shoulder resulting in a tear of the ligament.

So from the treating physician's prospective -- and Dr. Chalal said the reverse but he said it as an orthopedic surgeon -- that is, you know, our main causation theory, but I did think it would be proper in rebuttal to what Dr. Chalal said, to also have a biomechanical expert.

And, Your Honor, if you look at the areas of the reports that I've highlighted in the exhibits, specifically Dr. Chalal and Dr. Courtney's report -- and specifically, Dr. Courtney's report, it can't be denied that it's the same subject matter, just opposing viewpoints --

THE COURT:  So.

MR. DIEPPA:  -- which is --

THE COURT:  I'm sorry.

MR. DIEPPA:  -- which is the nature of rebuttal.

THE COURT:  So a couple things.  First of all, as to --

explain to me how Mr. Liberti's report rebuts Dr. Chalal and Dr. Courtney. Because I will tell you that in reviewing his report, while -- I see no reference to Dr. Courtney whatsoever. There is no mention of her analysis or pointing out what's wrong about her analysis or taking or criticizing her analysis. In fact, it doesn't even indicate that Mr. Liberti reviewed Dr. Courtney's expert report at all.

It does -- was Dr. Chalal's report in the items reviewed, but again, otherwise doesn't mention Dr. Chalal, doesn't say this is what Dr. Chalal missed or didn't consider or anything like that.

So explain to me how Mr. Liberti is addressing or rebutting those experts when he's not taking -- where he's not directly addressing what either of those experts did or said.

MR. DIEPPA: Your Honor, I mean, I would differ on that point only that he is addressing the only issue in this case which is the injury to the shoulder. And it's the same issue for everyone.

So -- and we don't dispute, and as I said initially, this was a report directed at -- a rebuttal report directed at Dr. Chalal's opinion, and that's why Dr. Chalal is referenced.

And Dr. Chalal, according to his report, would come into trial and give the opinion that this injury in the manner in which it happened would not have been causally related. He says it about three or four different times in his report.

Our intended rebuttal through Mr. Liberti is that after reviewing Dr. Chalal's report, this is how this injury would have been caused.  And that's the extent of the rebuttal because it seeks to defeat Dr. Chalal's opinion, which is really the standard, and it's the same subject matter which is the injury to the shoulder.

In fact, if you look at the documents reviewed by Mr. Liberti, they're essentially almost the same documents reviewed by Dr. Chalal, that defense has hired another biomechanic.  You know, it's not really an issue that concerned us with Mr. Liberti's report.  Mr. Liberti was intended to rebut Dr. Chalal as it states there.

THE COURT:  Let me go back to what you were saying before about the -- I guess, the treating physicians talking about causation because, I think, this is part of what -- part of the issue that defendant seem to raise, and maybe Ms. Genovese can address it further.

But from your explanation earlier, you were talking about the treating doctors.  We'll talk about the way the object striking Ms. Cole; that she had pain in that area and this injury in is that area.  That seems to suggest that their theory was her injury was caused by the object striking her shoulder.

MR. DIEPPA:  As far as -- when I say "treating physicians," bear in mind, Your Honor, that that includes the

employee of Carnival Cruise Lines, Dr. Vanegas Gonzalez, who first treated her and has been deposed.

So, yes, across the board, Dr. Vanegas Gonzalez is the only one that has been deposed, but across the board, from my understanding, is their testimony has been disclosed insofar as causation as well based on the -- all the factors.

THE COURT:  Right.  But the causation being the object struck her in the shoulder, that's where she had pain.  The injury is caused by the thing striking her shoulder.

MR. DIEPPA:  Well, not just -- that's where she had pain.  That's where she had an injury.  That's where she was diagnosed with an injury.  That's where she had further diagnostic treatment to, you know, to investigate the injury.  That's where a further injury was found.  That's where that injury was treated with surgery, and so on and so forth, because I think the chain of causation through the treating physicians -- I mean, you know, it needs to go all the way through.

And that, obviously, Dr. Chalal doesn't agree, but insofar as the treating physicians are concerned, that is their anticipated testimony.

THE COURT:  Because I think part of my concern and, again, what I understood part of defense's concern is Mr. Liberti's analysis seems to be not that the object, the lid striking her shoulder, per se, caused the injury, but rather it

was the object striking her shoulder which caused her to lunge forward which caused her to brace herself, and it was the "bracing herself" that caused the injury.

Am I mischaracterizing what Mr. Liberti is saying?

MR. DIEPPA:  No, Your Honor.  You know, his report is his report.  But once again, it's -- if we're going to analyze rebuttal, they have their own biomechanic, and the biomechanic actually says almost step-by-step the exact opposite.

So if there's a genuine concern by the defense in terms of rebuttal, how can the defense really argue that when they have a biomechanic that has gone through the exact same steps in reverse and state that Mr. Liberti's opinion, which is contrary on the exact same topic, is not proper rebuttal.

THE COURT:  But I think the problem is that we seem -- again, I'll turn to Ms. Genovese to explain this better, but it seemed like part of what the defense is saying is that Mr. Liberti is now offering a different theory of causation than what has been, I guess, understood to be the argument on the plaintiff's argument on causation throughout the case.

In other words, as I took it, they're saying the argument or the understanding of theory throughout has been the causation was the actual striking of the object on the shoulder, which Dr. Courtney, who, again, Mr. Liberti doesn't refer to at all, you know, analyze it to say, "No, getting just struck on the shoulder couldn't have done this," and then what

Mr. Liberti is saying, "Well, it's the lunging forward and bracing, which then makes it equivalent to lifting the 100 pounds of force, and that's what caused it."

So it seems like what the defendant is saying is that Mr. Liberti is now injecting a new theory of causation, which I think the problem would be that while you're right and maybe addressing the broad topic of causation as is it the same idea, that you're not allowed to raise new arguments on rebuttal.

MR. DIEPPA: Yeah. And, Your Honor, I would say that it's not new because number one, they deposed Ms. Cole and Ms. Cole explained to them at length, over about a five-hour deposition, exactly how she moved and how she was injured.

THE COURT: Okay.

MR. DIEPPA: They have all the benefit of the medical records, which speak to causation, and Ms. Cole gave an account of her injury to the investigating security guard, who has been deposed, to Mr. Vanegas Gonzalez and to the ER in terms of her biomechanical movement.

So to say that they did not know that there was this lunging forward and that resulted in injury -- I mean, Ms. Cole basically said she got hit by three lids, lunged forward. It came out of nowhere, and had pain, severe pain and I went straight to the infirmary.

So the whole lunging-forward aspect of the injury is not a -- it's not any notion. I mean, it's been in all the

testimony. It's from all of their employees, which at this point, Your Honor, as I filed with the Court, plaintiffs and defendants have deposed each employee that was involved in this incident. They've spoken to Ms. Cole. They spoke to Mr. Cole's witness, who was an eyewitness; so they have the direction of the lids. They have the wind speed. They have her movement. It's not -- it's not new information.

THE COURT: What is the testimony about her lunging forward and bracing? I saw -- I think I saw reference in both Dr. Chalal's report and in Mr. Liberti's report that she braced herself against the table.

What is the testimony from her deposition about her lunging forward?

MR. DIEPPA: Your Honor, I don't have the deposition with me page and line, but I can tell you from my recollection of being there that -- and just to inform the Court of how this accident happened, Ms. Cole is sitting on an outdoor lido deck. There's a dining station similar to something that looks like this. Maybe a little bit lower, and some very high gust of winds were on the deck going on that day, and she was -- she was struck from behind.

THE COURT: Right.

MR. DIEPPA: And, obviously, being struck from behind, she moves forward. According to her, she's struck multiple times. She, you know, is surprised by it. She lunges forward,

and that's her account of what happened, which is why Dr. Chalal's is talking about it because he's reviewed her deposition.

THE COURT:  But what exactly was she -- did she testify she was bracing herself against? Because again, just the pictures from Mr. Liberti's expert report showed illustrations of someone sort of extending their arms out, but the picture of the table that I saw didn't seem to have a lip or anything at the far edge on which she would have jammed her hands or something.  So I wasn't quite sure what the theory is for, you know, was she bracing herself, like, the close edge of the table that which she was sitting, or was there -- did she extend her arms out?  That's why I was somewhat confused.

MR. DIEPPA:  My understanding is it was the table, Your Honor.  The exact part of the table I couldn't tell you without reviewing the transcript of the deposition.  But my understanding is her natural reaction was to brace herself against the table.  As she was struck, you know, physics would require her to move forward, and that is, you know, what happened and, you know, that was her testimony.

THE COURT:  Okay.  Hold on.  I just want to look through the report one second.

Ms. Genovese, why don't I hear from you.  Again, Mr. Dieppa is indicating that Mr. Liberti is a rebuttal witness.  So, you know, we're in the realm of trying to figure

out is he rebutting information on the same topic that defendant's experts are offering?

So can you explain to me how he doesn't fall within the scope of a proper rebuttal expert?

MS. GENOVESE:  Yes, Your Honor.

First, I want to just make a representation to the Court that I was unaware of these treating physicians that were being disclosed as 26(c) experts.  I don't believe the disclosure -- I may be misremembering this case; however, I don't believe there was any disclosure of these treating physicians.

Additionally, if we turn to Mr. Liberti's report, the very first paragraph says:  "The purpose of this report is to provide a biomechanical analysis of plaintiff, Eureka Cole's, injuries and to the extent required rebut any opinions."

THE COURT:  Can you move a little bit closer to the --

MS. GENOVESE:  Sorry.

THE COURT:  Just make sure that you speak into the microphone.

MS. GENOVESE:  So I think that this first sentence alone, the very opening paragraph clearly does not -- is not intended to solely rebut any of the experts, which is required by the Rules of Civil Procedure 26.  That alone, I think, just indicates how this is not intended to be a rebuttal report: "And to the extend required rebut any opinions."

Further, it was my understanding that Mr. Liberti was offered to rebut Dr. Courtney because he is being offered as a biomechanical engineer is my understanding.  I did not fully understand that he was to rebut Dr. Chalal as well, who is a medical doctor; however, to the extent it doesn't not rebut the reports -- I mean, we could go paragraph by paragraph.

I know plaintiff has highlighted some areas, but as Your Honor has mentioned and probably, you know, observed from defense's argument, it's our position that none of this has to do with anything that was mentioned and Dr. Chalal's diagnosis of a medical condition, Dr. Courtney's analysis that her biomechanical evaluation of the lid striking the plaintiff, which has been the theory throughout this entire case, as far as I'm understanding.

I have seen no record evidence that shows, excuse me, that the theory was, in fact, she braced her arm and that is what caused the impact.  This reactive kind of action being surprised being, you know, reactive to an event -- that is a new theory that the defense's experts did not have the opportunity to -- first of all, did not discuss in their reports an opinion, so it wouldn't be a rebuttal, but second --

THE COURT:  Well, actually, isn't that exactly what rebuttal is for?  Just "Hey, you're experts didn't consider this information in making their analysis."  Why isn't that proper rebuttal?

MS. GENOVESE: Well, certainly, Your Honor. Nothing in the rebuttal report points to any evidence of record that this happened. It is my understanding -- and I wasn't at the deposition. The other attorney did take the deposition. I have reviewed the transcript. It has been some time, but this -- I do not believe that Ms. Cole said that she was hit multiple times with objects. I do believe that her husband may have said that. I don't believe that was in her testimony at all.

She told all of her medical providers that she was struck by the lid. None of that is mentioned here. None of the force that Dr. Courtney had analyzed is mentioned by Mr. Liberti. It is solely a new theory of "Well, now it's her reactive movement with this lunging and bracing that caused this shoulder injury."

THE COURT: Okay. But what Mr. Dieppa is representing is that there was evidence in the record from depositions that she did lunge forward and brace herself. In fact, that is I think is even mentioned at least in Dr. Chalal's opinion. I'm looking at page -- the bottom of -- it's in his report with the notation page 4 of 20 in the PDF that was filed. It's page 26.

But at the bottom, he notes a statement to when, I guess, Ms. Cole was being evaluated (inaudible) by Dr. John Wilkerson on August 12, 2022. It says, "Eureka Cole is a 51-year-old female patient that presents today for evaluation

of her left shoulder.  She reports that on July 24th, 2022, she was a passenger on a Carnival cruise ship.  While she was having lunch, a large container struck her on her mid-back.  The impact pushed her forward, and she braced herself with her hand on the table."

So it seems like there was some information about -- and I don't know what she said in her deposition, but at least there seems to be some evidence in the record that was available to Dr. Chalal and presumably to Dr. Courtney as well that she had braced herself.  Why wouldn't then that be fair game for both of them to analyze such a possibility that that was the cause, and why wouldn't, if they fail to consider that, why can't the plaintiff point out that they failed to consider it?

MS. GENOVESE:  Sure.  Well, it was my understanding that is not what the plaintiff is claiming caused the accident, caused the injury.  If that's now different, that was my misunderstanding of it.

However, if this information was available, that would directly go to plaintiff's case in chief as to causation.  It is not that this theory is rebuttal to anything that the initial defense experts had considered.  This is a causation analysis based on the striking of the lid to her shoulder, which is now changed to causation, and that is something that the plaintiff has the burden of proving in their case in chief.

THE COURT:  What is -- what is Dr. Chalal's opinion -- what is he being -- what are the opinions that he's going to present in his testimony?

MS. GENOVESE:  The disclosure was filed with the Court. I actually do not believe that I have it here, but it is the diagnosis -- I may be missing things that were disclosed, but it is the diagnosis of the medical injury and causation and -- sorry -- damages as well.

THE COURT:  Okay.  So causation -- the nature of the injury damages as well as causation.  What -- I have to -- one thing that was confusing to me as I tried to look at both reports and again tried to determine whether Mr. Liberti offering testimony on the same area as Dr. Chalal, that I saw the parts of Dr. Chalal's report that, I guess, plaintiff highlighted that do say in various spots it's not within medical probability that these MRI findings were causally related by the July 25, 2022, accident, and it says things to that effect a couple of times.

I didn't see any explanation in Dr. Chalal -- how Dr. Chalal comes to that conclusion.  In other words, any analysis that explains to me this is how he gets to that conclusion.

Do you know what his explanation is or what his -- you know, what analysis he went through in order to each that conclusion?

MS. GENOVESE:  I do believe it's in his -- I do believe it's in his report.  Just above that, he does discuss the findings of the MRI in her left shoulder.  He did perform an examination of the plaintiff.  That's what this report is, the medical examination of plaintiff.  It is his opinion that the findings in the MRI are not based on this acute accident.

THE COURT:  I understand that.  I guess what I -- what I didn't quite understand is what bridges those two things.  I see him listing a whole bunch of facts of either this is what previous examiners have found and this is what I found -- this is what I saw, and then he gets to "I conclude this wasn't -- you know, what I saw was not caused by this injury."  I just didn't see the bridge that said, "This is how I get from point A to point B."

Do you understand what I'm saying?

Why, based on what I saw, this couldn't be caused by this injury because what?  You know, because -- I don't want to theorize because I'm not the expert, but, I guess, I'm struggling a little bit.

MS. GENOVESE:  Sure, Your Honor.  And, you know, frankly, as a nonmedical professional myself, I don't have the full answers.

THE COURT:  Sure.

MS. GENOVESE:  I do believe it would be fettered out in his deposition, which has been set.  I think possibly maybe

rescheduled based on conflicts, but it is my understanding that's why the defense has the biomechanical aspect as well as the medical aspect -- the medical aspect to specifically evaluate the findings and the prior medical records and determine whether these injuries were acute in nature, essentially, and then the biomechanical to show that the forces of what occurred and what transpired would not even be able to reach that -- those kinds of injuries.

THE COURT:  Let me ask you, Mr. Dieppa, one thing that -- and it has been brought up here, which is the point that causation is something for plaintiff to prove.  That is part of your burden; correct?

MR. DIEPPA:  Correct, Your Honor.

THE COURT:  So if -- I think the thing that I'm struggling with most is if plaintiff has to put forth the theory of causation in your case in chief, right, and that's your burden to do, how -- how does -- how is plaintiff going to do that?

Because what -- again, what I'm most concerned -- part of what I'm concerned about here is the idea that you don't put forth any, you know, any expert testimony as to why there is causation in the -- in your case in chief, then they bring on experts, and then it's only in your rebuttal with Mr. Liberti that you then say, "Well, no, this is our theory for how -- how there's causation."

So that, to me, strikes me as something problematic if on an issue that the plaintiff's burden.  So explain to me why that -- why I shouldn't be concerned about that, or how plaintiff does end up putting forth your theory of causation in your case in chief.

MR. DIEPPA:  Of course, Your Honor.

As I stated and as Ms. Genovese conceded, just like Dr. Chalal, an orthopedic surgeon or a medical doctor is permitted to give a causation of injury opinion so long as it's supported and it complies with Daubert and it meets those standards.

Ms. Genovese -- maybe she doesn't recall, but on October 11, 2023, we provided extensive Rule 26(c) disclosures as to not just Dr. Wilkerson but Dr. Venezuela Gonzalez, Dr. Martinez, the radiologist, the treating radiologist, all of whom were identified as testifying as to causation.

I have copies of this, what was sent to her office.  They know about it.  And that's always been our intention -- to establish causation as is appropriate through the treating physicians.

Now, Ms. Genovese may say that "Oh, well, you know, Dr. Chalal has a -- you know, has an (inaudible) opinion there but we're going to fill in our blanks and our biomechanic," but his opinion has to standalone -- doesn't it?  -- and it needs to be supported by its own merits.

THE COURT:  I'm sorry.  Who -- whose opinion?

MR. DIEPPA:  Dr. Chalal's.

THE COURT:  Chalal, okay.

MR. DIEPPA:  So assuming that they're going to introduce expert causation testimony from Dr. Chalal as -- and there's no dispute that he's a treating -- not a treating, but an orthopedic surgeon and he is going to be permitted to give causation testimony, then there is no reason why my treating physicians, who have similar or the same qualifications, my radiologist, who has already has been disclosed, and, of course, the first doctor would works for Carnival, who's a board-certified emergency doctor, who was the first person to lay hands on the injury, can't testify as to causation in this case, Your Honor.

So once again, this goes to the issue of is there anything new?  And, yes, I think Your Honor is correct in that it seems like Dr. Chalal just goes from point A to point B without -- I guess we can use the same -- without showing his work.  And that was an issue I raised with the Court before. But once again, we're entitled to rebut that to show that there's a gap in that analysis and really, you know, that's something that we probably would need to hash out with Daubert motions because it goes to whether or not Dr. Chalal's opinion, according to his report -- and the rule is the rule.  I don't have to depose Dr. Chalal and give him a chance to explain his

opinions if they aren't properly supported by -- or properly compliant with Rule 702.

But going back to the original issue is it proper rebuttal?  And, of course, it's proper rebuttal because it shows that Dr. Chalal missed something.  He didn't explain in his causation how this could happen.  I'm putting a biomechanic not to show my case in chief causation, which is going to be established by multiple treating physicians who are qualified to do that and who, I am sure, once they testify, will testify in accordance with Daubert, but to show yet another aspect in response to that, to deal with that issue.

THE COURT:  I guess part of what I'm finding a little hard to wrap my head around is you're saying you've got treating physicians to give, from a medical point of view, causation in your case in chief, and then the defendants have Chalal giving a medical opinion and Courtney giving a biomechanic engineering opinion, and then you're putting forth Mr. Liberti's, as a biomedical point of view -- or biomechanical point of view to rebut Chalal, but again not Courtney, or at least from his report, again, there's no mention of Dr. Courtney.

So recognizing you're not required to confine yourself to the same area of expertise in one place or another, it feels -- it feels -- it's hard for me to understanding how Liberti is meant to rebut Chalal but not Courtney when and how it's not

introducing some new idea.

MR. DIEPPA: Yeah. See, I'm not sure that there's a requirement that a rebuttal expert rebut all the experts, Your Honor.

THE COURT: Well, doesn't -- no, no, no. That's not what I'm saying. I'm saying that I find it curious that the -- the expert in -- the expert area in Mr. Liberti's area of expertise overlaps with Dr. Courtney's expertise and not -- and not Dr. Chalal's expertise, and yet based on his report, he appears to be offered to rebut the expert in the different area, not the expert that's in his area.

And that's -- and you're right, it's not like one has to rebut everybody, but it's that discrepancy that, I guess, I'm struggling with, which is why I'm concerned about the, you know, introduction of the new theory on rebut.

MR. DIEPPA: Your Honor, what I can say candidly to the Court is I should not anticipate what experts that defense was intending to disclose. And frankly, I sat down the defendant's corporate rep, and I asked him about, you know, their affirmative defense as to causation at length, and they did not disclose that they -- not that they had to, but they didn't disclose that they were going to challenge the case biomechanically.

So I guess the answer to that is I mean, I didn't know they were going to disclose a biomechanic.

THE COURT:  But then you got the disclosure and you had an opportunity to disclose the rebuttal, and that's what the rebuttal expert is for; right?

You get their expert disclosures, which you got -- and I can see Dr. Courtney's was December 20th.  I can't remember how the deadlines line up but --

MR. DIEPPA:  December 29th, I believe.

THE COURT:  Okay.  So that was within the period, and then you have the time to say, "Okay.  Well, here are our experts that are going to address yours," and Mr. Liberti doesn't make any mention about Dr. Courtney.

MR. DIEPPA:  No, Your Honor.  And the thing was -- and one other detail I would like to add is that there was a revised report from Dr. Chalal, which was sent out on December 29th as well.

THE COURT:  Okay.

MR. DIEPPA:  So once again, the intention was always to rebut Dr. Chalal and -- rebut Dr. Chalal, Your Honor, and that has been the intention, and that's what stated in Mr. Liberti's report, and the plaintiff is entitled to do that.

THE COURT:  Okay.  Folks, I just want to take just five minutes.  So let's stand in recess for five minutes, and I'll come back, and we'll enter a ruling then.

Okay.

MR. DIEPPA:  Okay.

(Off the record, after which the following proceedings were had:)

MR. DIEPPA:  Before you give your ruling, I would like to just argue the second issue, just to place it on the record.

THE COURT:  Okay.  Go ahead.  What's the second issue?

You can sit or stand -- either way.

MR. DIEPPA:  Concerning -- concerning the prejudice. And I just wanted to place on the record my argument that even if the Court were inclined -- and we place this in an abundance of caution -- to find that Mr. Liberti was not a proper rebuttal expert, the sum total of the prejudice suffered by the defense was a tardy disclosure of ten days.

At the time the disclosure was made, there were 44 days left in the discovery period.  And I will state for the record that since January 9, there have been no requests to depose Mr. Liberti, find his opinions, or request an extension of the discovery cutoff or any other such relief.

And I would state that under the governing law in the Eleventh Circuit, that in situations such as those, it does not warrant the striking of the expert, which is the only relief that has been requested by the defense in this case.  There has been no alternative relief requested.

Thank you, Judge.

THE COURT:  Okay.  Thank you, Mr. Dieppa.

Having considered the arguments both in the joint

status report and here as well as having reviewed the various expert reports for both Mr. Liberti, Dr. Chalal and Dr. Courtney, I'm going to deny the defendant's motion.

I do think that, you know, ultimately the standard for whether a witness is a proper rebuttal witness is whether they are addressing the same subject matter as the witness they're purporting to rebut.

Here, doctor -- what defendants have represented is that Mr. Liberti is only being offered as a rebuttal witness and that he's being offered to rebut Dr. Chalal.  And Dr. Chalal does address causation.  He was an opinion of causation within that plaintiff's injury could not have been caused -- I'm sorry.  I think I misspoke there.

Plaintiff has represented -- sorry.  Plaintiff has represented that Mr. Liberti is offered as a rebuttal witness only, and a rebuttal witness to Dr. Chalal; that Dr. Chalal's report does address an opinion on causation and the medical likelihood of the injury having been caused by the -- by the incident on the cruise ship.

Construing broadly the subject matter at issue, which the Court must do, I think that Mr. Liberti's opinion is addressing the same subject matter; and therefore, he is -- that weighs in favor of finding him a proper rebuttal expert.

I do find that -- have considered the fact that his -- his report doesn't specifically address Dr. Chalal more than --

more than vaguely, and as the defendant has pointed out, the opening of his report indicates that it is to offer an opinion and to rebut to the extent necessary, which does leave some concern that he's going outside the scope of rebuttal.

But I think that again, broadly construing the subject matter and considering Dr. Chalal's opinion, that Mr. Liberti is addressing the same subject matter.  And I also don't think, while I'm somewhat concerned about it, I don't think I can find his introducing new arguments or issues specifically if there is testimony and other evidence in the record about this bracing theory that it seems like Mr. Liberti is relying on, which then I think that's information that was available to defendant's experts on which they could have relied in forming their opinions, and to the extent that they did not or that there's an alternative explanation that those experts do not consider, I think that's fair game for Mr. Liberti to point out.

As I indicated before in my questioning, Dr. Chalal's report certainly mentions at least one statement by Ms. Cole to a medical examiner that she did brace herself on the table, and so that certainly appears to have been information that was available to the defendant as well as the plaintiff.

And so I think that is -- and there may -- neither party could quote specifically from Ms. Cole's deposition, but there may be other evidence in the record to support that

theory as well.

What I will say, though, is again, based on representations both in the joint status report and by plaintiff here today and from reviewing the report of Mr. Liberti himself, he only mentions Dr. Chalal.  He only mentions having reviewed Dr. Chalal's report.  He does not mention reviewing Dr. Courtney's report.  And so -- and based on the representations, he's being offered to rebut Dr. Chalal.

So based on those representations and based on what's in his report, I think his testimony, again, must be limited to, one, being offered only on rebuttal, not in case in chief as plaintiff has represented here today; and two, testimony should be limited to addressing whatever testimony Dr. Chalal offers at trial.

So I am denying the motion now.  That doesn't mean that defendant cannot possibly raise -- raise a motion at trial if you think that either there -- if there is some other ground for, you know -- for limiting or excluding what Mr. Liberti is -- is intending to testify to.  He is -- for now, to the extent that he's going to testify on rebuttal and is going to address the testimony of Dr. Chalal, then I think he's a properly disclosed rebuttal witness.

I do want to make sure that plaintiff should make Mr. Liberti available for deposition within the time that is remaining in the extended discovery period.  I don't know if --

I don't know if defendant wishes to depose him or not, but I do expect plaintiff to make him available, and if given the amount of time that's left, I would suggest that the two of you discuss potential dates for that deposition when we're done here today to make sure that you maximize the chance of getting it done.

Hold on one second.

Having made that finding, is there anything else that's either unclear or that either party needs me to further address?

Anything from the plaintiff?

MR. DIEPPA:  Your Honor, I'm starting a trial on Monday; so I'm going to need to reschedule Dr. Chalal's deposition, but I think I can work that out with defense counsel.  And, obviously, Mr. Liberti -- if defense counsel wishes to depose him, I will make him available.

THE COURT:  Okay.  Thank you for doing that, Mr. Dieppa.

And certainly, I think it's best for you-all to just speak afterwards and see if you can work out the scheduling.

Anything further from the defense, Ms. Genovese?

MS. GENOVESE:  Yeah, Your Honor.  I don't mean to make you restate everything that you just said, but just for clarification purposes, Mr. Liberti's testimony is limited only to rebuttal and limited only to rebuttal addressing Dr. Chalal.

Is that --

THE COURT:  That's correct.

MS. GENOVESE:  Okay.  Thank you.

THE COURT:  And I'll enter a written order memorializing what I have worded here today.

Then if there's nothing further, thank you both for your appearances here today.  I hope that you have a good rest of your day and a good weekend.

MS. GENOVESE:  Thank you, Your Honor.

MR. DIEPPA:  You as well.

C E R T I F I C A T E

- - -

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Southern District of Florida, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further, that I am not financially nor otherwise interested in the outcome of the action

Dated this 30th day of May, 2024.

/s/ Patricia Bailey-Entin

_____

PATRICIA BAILEY-ENTIN, RPR, FPR

## /

**/s** [1] - 33:23

## 0

**0:23-cv-60532-MD** [1] - 1:3

## 1

**1** [1] - 1:8
**100** [1] - 12:3
**1001** [1] - 1:15
**10:00** [1] - 1:6
**11** [1] - 22:13
**11:01** [1] - 1:6
**12** [1] - 17:24
**150** [1] - 1:15

## 2

**2** [1] - 1:5
**20** [1] - 17:21
**2022** [3] - 17:24, 18:1, 19:17
**2023** [1] - 22:13
**2024** [2] - 1:5, 33:18
**20th** [1] - 26:5
**23-cv-60532** [1] - 2:3
**24th** [1] - 18:1
**25** [1] - 19:17
**26** [2] - 15:23, 17:21
**26(c** [3] - 4:17, 15:8, 22:13
**299** [1] - 1:23
**29th** [2] - 26:7, 26:15
**2nd** [1] - 1:15

## 3

**30th** [1] - 33:18
**33131** [1] - 1:16
**33301** [1] - 1:23
**33401** [1] - 1:19
**37** [1] - 5:24

## 4

**4** [1] - 17:21
**44** [1] - 27:13

## 5

**51-year-old** [1] - 17:25
**515** [1] - 1:18

## 6

**650** [1] - 1:18

## 7

**702** [1] - 24:2

## 9

**9** [1] - 27:15

## A

**ability** [1] - 33:6
**able** [1] - 21:7
**abundance** [1] - 27:9
**accident** [4] - 13:17, 18:16, 19:17, 20:6
**accordance** [1] - 24:10
**according** [3] - 8:22, 13:24, 23:24
**account** [2] - 12:15, 14:1
**achieve** [1] - 4:21
**action** [3] - 16:17, 33:13, 33:16
**actual** [1] - 11:22
**acute** [2] - 20:6, 21:5
**add** [1] - 26:13
**addition** [2] - 4:18, 6:19
**additionally** [1] - 15:12
**address** [7] - 9:17, 26:10, 28:11, 28:17, 28:25, 30:20, 31:10
**addressing** [9] - 8:12, 8:14, 8:16, 12:7, 28:6, 28:22, 29:7, 30:13, 31:25
**afterwards** [1] - 31:20
**agree** [1] - 10:19
**ahead** [1] - 27:5
**allowed** [1] - 12:8
**almost** [2] - 9:8, 11:8
**alone** [2] - 15:21, 15:23
**alternative** [2] - 27:22, 29:15
**AM** [2] - 1:6
**amount** [1] - 31:2
**Amy** [1] - 2:21
**analysis** [13] - 5:10, 5:24, 8:4, 8:5, 10:24, 15:14, 16:11, 16:24, 18:23, 19:21, 19:24, 23:21
**analyze** [3] - 11:6, 11:24, 18:11
**analyzed** [1] - 17:12
**Andrew** [1] - 2:13
**answer** [1] - 25:24

**answers** [1] - 20:22
**anticipate** [1] - 25:17
**anticipated** [1] - 10:21
**APPEARANCES** [1] - 1:12
**appearances** [2] - 2:4, 32:7
**appropriate** [1] - 22:19
**area** [10] - 7:3, 7:5, 9:20, 9:21, 19:13, 24:23, 25:7, 25:11
**areas** [2] - 7:16, 16:7
**argue** [2] - 11:10, 27:4
**arguing** [1] - 4:24
**argument** [5] - 11:18, 11:19, 11:21, 16:9, 27:8
**arguments** [3] - 12:8, 27:25, 29:9
**arm** [1] - 16:16
**arms** [2] - 14:7, 14:13
**Ashley** [2] - 1:17, 2:9
**aspect** [5] - 12:24, 21:2, 21:3, 24:10
**assuming** [1] - 23:4
**attorney** [1] - 17:4
**August** [1] - 17:24
**available** [7] - 18:9, 18:19, 29:12, 29:22, 30:24, 31:2, 31:16
**Avenue** [1] - 1:15

## B

**background** [1] - 6:10
**BAILEY** [2] - 1:21, 33:25
**Bailey** [1] - 33:23
**BAILEY-ENTIN** [2] - 1:21, 33:25
**Bailey-Entin** [1] - 33:23
**based** [10] - 10:6, 18:23, 20:6, 20:16, 21:1, 25:9, 30:2, 30:7, 30:9
**bear** [1] - 9:25
**BEFORE** [1] - 1:10
**behind** [2] - 13:21, 13:23
**benefit** [1] - 12:14
**best** [2] - 31:19, 33:6
**better** [1] - 11:15
**biomechanic** [9] - 4:2, 9:10, 11:7, 11:11, 22:23, 24:6, 24:17, 25:25
**biomechanical** [8] - 7:15, 12:18, 15:14,

16:3, 16:12, 21:2, 21:6, 24:19
**biomechanically** [2] - 6:18, 25:23
**biomedical** [1] - 24:18
**bit** [3] - 13:19, 15:16, 20:19
**blanks** [1] - 22:23
**blow** [1] - 7:9
**board** [3] - 10:3, 10:4, 23:12
**board-certified** [1] - 23:12
**body** [1] - 4:25
**bottom** [2] - 17:20, 17:22
**Boulevard** [1] - 1:23
**brace** [4] - 11:2, 14:17, 17:18, 29:20
**braced** [4] - 13:10, 16:16, 18:4, 18:10
**bracing** [7] - 11:3, 12:2, 13:9, 14:5, 14:11, 17:14, 29:11
**bridge** [1] - 20:13
**bridges** [1] - 20:8
**brief** [1] - 3:22
**bring** [1] - 21:22
**broad** [1] - 12:7
**broadly** [2] - 28:20, 29:5
**brought** [1] - 21:10
**Broward** [1] - 1:23
**bruising** [1] - 7:5
**bunch** [1] - 20:9
**burden** [4] - 18:25, 21:12, 21:17, 22:2
**BY** [1] - 1:20

## C

**candidly** [1] - 25:16
**cannot** [1] - 30:16
**CARNIVAL** [1] - 1:7
**Carnival** [5] - 2:3, 2:10, 10:1, 18:2, 23:11
**CASE** [1] - 1:3
**case** [29] - 2:2, 3:25, 4:7, 4:15, 4:22, 4:23, 4:25, 5:15, 5:17, 6:3, 6:10, 6:17, 7:6, 8:16, 11:19, 15:9, 16:13, 18:20, 18:25, 21:16, 21:22, 22:5, 23:14, 24:7, 24:15, 25:22, 27:21, 30:11
**Case** [1] - 2:3
**causally** [4] - 6:12, 6:15, 8:24, 19:16

**causation** [42] - 4:1, 4:12, 4:13, 4:19, 6:20, 6:24, 7:13, 9:15, 10:6, 10:7, 10:16, 11:17, 11:19, 11:22, 12:5, 12:7, 12:15, 18:20, 18:22, 18:24, 19:7, 19:9, 19:10, 21:11, 21:16, 21:22, 21:25, 22:4, 22:9, 22:16, 22:19, 23:5, 23:8, 23:13, 24:6, 24:7, 24:15, 25:20, 28:11, 28:12, 28:17
**caused** [16] - 9:3, 9:22, 10:9, 10:25, 11:1, 11:2, 11:3, 12:3, 16:17, 17:14, 18:16, 18:17, 20:12, 20:16, 28:13, 28:18
**caution** [1] - 27:10
**certainly** [4] - 17:1, 29:19, 29:21, 31:19
**certified** [1] - 23:12
**certify** [2] - 33:5, 33:12
**chain** [1] - 10:16
**Chalal** [44] - 2:16, 2:18, 2:19, 2:21, 3:23, 7:12, 7:14, 7:18, 8:1, 8:9, 8:10, 8:21, 8:22, 9:9, 9:12, 10:19, 16:4, 18:9, 19:13, 19:19, 19:20, 22:8, 22:22, 23:3, 23:5, 23:17, 23:25, 24:5, 24:16, 24:19, 24:25, 26:14, 26:18, 28:2, 28:10, 28:11, 28:16, 28:25, 30:5, 30:8, 30:13, 30:21, 31:25
**Chalal's** [22] - 3:24, 4:10, 4:11, 6:6, 8:8, 8:21, 9:2, 9:4, 13:10, 14:2, 16:10, 17:19, 19:1, 19:14, 23:2, 23:23, 25:9, 28:16, 29:6, 29:18, 30:6, 31:13
**challenge** [1] - 25:22
**chance** [2] - 23:25, 31:5
**changed** [1] - 18:24
**chief** [10] - 5:15, 6:3, 18:20, 18:25, 21:16, 21:22, 22:5, 24:7, 24:15, 30:11
**Circuit** [2] - 5:2, 27:19

**circumstances** [1] - 4:13
**cited** [2] - 4:7, 4:25
**Civil** [1] - 15:23
**claiming** [1] - 18:16
**clarification** [1] - 31:24
**clarify** [1] - 3:9
**clear** [2] - 5:9, 6:17
**clearly** [1] - 15:21
**close** [1] - 14:11
**closer** [1] - 15:16
**coin** [1] - 4:24
**COLE** [1] - 1:4
**Cole** [14] - 2:2, 2:7, 6:11, 9:20, 12:10, 12:11, 12:15, 12:20, 13:4, 13:17, 17:6, 17:23, 17:24, 29:19
**Cole's** [3] - 13:5, 15:14, 29:24
**complaints** [2] - 7:3, 7:8
**completely** [1] - 7:8
**compliant** [1] - 24:2
**complies** [1] - 22:10
**conceded** [1] - 22:7
**concern** [4] - 10:22, 10:23, 11:9, 29:4
**concerned** [7] - 9:10, 10:20, 21:19, 21:20, 22:3, 25:14, 29:8
**concerning** [2] - 27:7
**conclude** [1] - 20:11
**conclusion** [3] - 19:20, 19:22, 19:25
**condition** [1] - 16:11
**confine** [1] - 24:22
**conflating** [1] - 5:10
**conflicts** [1] - 21:1
**confused** [1] - 14:13
**confusing** [1] - 19:11
**consider** [5] - 8:10, 16:23, 18:12, 18:13, 29:16
**considered** [4] - 4:3, 18:22, 27:25, 28:24
**considering** [1] - 29:6
**consistent** [1] - 7:9
**construing** [2] - 28:20, 29:5
**container** [1] - 18:3
**contradiction** [3] - 4:9, 4:10, 4:11
**contrary** [1] - 11:13
**copies** [1] - 22:17
**corporate** [1] - 25:19
**Corporation** [2] - 2:3, 2:10

**CORPORATION** [1] - 1:7
**correct** [7] - 5:25, 6:4, 21:12, 21:13, 23:16, 32:2, 33:5
**correctly** [1] - 2:17
**counsel** [4] - 4:14, 31:15, 33:12
**couple** [2] - 7:25, 19:18
**course** [3] - 22:6, 23:11, 24:4
**Court** [14] - 1:21, 1:22, 2:1, 4:4, 5:18, 13:2, 13:16, 15:7, 19:4, 23:19, 25:17, 27:9, 28:21, 33:8
**COURT** [48] - 1:1, 2:2, 2:8, 2:11, 2:19, 2:21, 3:2, 3:15, 3:18, 5:8, 5:12, 6:1, 6:22, 7:21, 7:23, 7:25, 9:13, 10:7, 10:22, 11:14, 12:13, 13:8, 13:22, 14:4, 14:21, 15:16, 15:18, 16:22, 17:16, 19:1, 19:9, 20:7, 20:23, 21:9, 21:14, 23:1, 23:3, 24:12, 25:5, 26:1, 26:8, 26:16, 26:21, 27:5, 27:24, 31:17, 32:2, 32:4
**Court's** [1] - 5:6
**Courthouse** [1] - 1:22
**Courtney** [14] - 2:21, 4:3, 8:2, 8:3, 11:23, 16:2, 17:12, 18:9, 24:16, 24:20, 24:21, 24:25, 26:11, 28:3
**Courtney's** [8] - 4:11, 7:18, 7:19, 8:7, 16:11, 25:8, 26:5, 30:7
**criticizing** [1] - 8:5
**cruise** [2] - 18:2, 28:19
**Cruise** [1] - 10:1
**curious** [1] - 25:6
**cutoff** [1] - 27:17

**D**

**damages** [2] - 19:8, 19:10
**date** [1] - 33:9
**dated** [1] - 33:18
**dates** [1] - 31:4
**Daubert** [3] - 22:10, 23:22, 24:10

**days** [2] - 27:12, 27:13
**deadlines** [1] - 26:6
**deal** [1] - 24:11
**December** [3] - 26:5, 26:7, 26:15
**deck** [2] - 13:17, 13:20
**defeat** [2] - 4:7, 9:4
**Defendant** [1] - 1:8
**defendant** [10] - 2:9, 2:22, 2:24, 3:6, 9:16, 12:4, 29:1, 29:22, 30:16, 31:1
**DEFENDANT** [1] - 1:17
**defendant's** [6] - 2:16, 5:16, 15:2, 25:18, 28:3, 29:13
**defendants** [3] - 13:3, 24:15, 28:8
**defense** [15] - 4:14, 7:7, 9:9, 11:9, 11:10, 11:16, 18:22, 21:2, 25:17, 25:20, 27:12, 27:21, 31:14, 31:15, 31:21
**defense's** [3] - 10:23, 16:9, 16:19
**demonstrate** [1] - 5:5
**denied** [1] - 7:19
**deny** [1] - 28:3
**denying** [1] - 30:15
**depose** [4] - 23:25, 27:15, 31:1, 31:16
**deposed** [5] - 10:2, 10:4, 12:10, 12:17, 13:3
**deposition** [13] - 12:12, 13:12, 13:14, 14:3, 14:16, 17:4, 18:7, 20:25, 29:24, 30:24, 31:4, 31:14
**depositions** [1] - 17:17
**detail** [1] - 26:13
**determine** [2] - 19:12, 21:5
**diagnosed** [2] - 7:5, 10:12
**diagnosis** [3] - 16:10, 19:6, 19:7
**diagnostic** [1] - 10:13
**DIEPPA** [33] - 2:6, 3:12, 3:17, 3:20, 5:11, 5:25, 6:4, 7:1, 7:22, 7:24, 8:15, 9:24, 10:10, 11:5, 12:9, 12:14, 13:14, 13:23, 14:14, 21:13, 22:6, 23:2, 23:4, 25:2, 25:16, 26:7,

26:12, 26:17, 26:25, 27:3, 27:7, 31:12, 32:10
**Dieppa** [10] - 1:14, 2:6, 2:8, 3:4, 3:9, 14:24, 17:16, 21:9, 27:24, 31:18
**differ** [1] - 8:15
**different** [6] - 4:24, 5:9, 8:25, 11:17, 18:17, 25:10
**digital** [1] - 3:18
**dining** [1] - 13:18
**directed** [2] - 8:20
**direction** [1] - 13:6
**directly** [2] - 8:14, 18:20
**disclose** [5] - 25:18, 25:21, 25:22, 25:25, 26:2
**disclosed** [14] - 2:13, 3:3, 3:4, 3:7, 3:24, 4:3, 5:17, 5:22, 6:5, 10:5, 15:8, 19:6, 23:10, 30:22
**disclosing** [1] - 3:5
**disclosure** [6] - 15:9, 15:10, 19:4, 26:1, 27:12, 27:13
**disclosures** [2] - 22:13, 26:4
**discovery** [5] - 2:12, 2:14, 27:14, 27:17, 30:25
**DISCOVERY** [1] - 1:10
**discrepancy** [1] - 25:13
**discuss** [3] - 16:20, 20:2, 31:4
**dispute** [3] - 2:12, 8:19, 23:6
**disregard** [1] - 5:6
**District** [3] - 1:22, 33:8
**DISTRICT** [2] - 1:1, 1:2
**DIVISION** [1] - 1:2
**doctor** [6] - 7:4, 16:5, 22:8, 23:11, 23:12, 28:8
**doctors** [1] - 9:19
**documents** [2] - 9:7, 9:8
**done** [3] - 11:25, 31:4, 31:6
**down** [1] - 25:18
**Dr** [85] - 2:16, 2:21, 3:23, 3:24, 4:10, 4:11, 4:18, 6:6, 6:11, 7:12, 7:14, 7:18, 7:19, 8:1, 8:2, 8:3, 8:7, 8:8, 8:9, 8:10,

8:21, 8:22, 9:2, 9:4, 9:9, 9:12, 10:1, 10:3, 10:19, 11:23, 13:10, 14:2, 16:2, 16:4, 16:10, 16:11, 17:12, 17:19, 17:23, 18:9, 19:1, 19:13, 19:14, 19:19, 19:20, 22:8, 22:14, 22:22, 23:2, 23:5, 23:17, 23:23, 23:25, 24:5, 24:21, 25:8, 25:9, 26:5, 26:11, 26:14, 26:18, 28:2, 28:10, 28:11, 28:16, 28:25, 29:6, 29:18, 30:5, 30:6, 30:7, 30:8, 30:13, 30:21, 31:13, 31:25
**Drive** [1] - 1:18

**E**

**early** [1] - 3:25
**East** [1] - 1:23
**edge** [2] - 14:9, 14:11
**effect** [1] - 19:18
**either** [7] - 5:13, 8:14, 20:9, 27:6, 30:17, 31:9
**electronic** [1] - 33:7
**Eleventh** [2] - 5:2, 27:19
**emergency** [1] - 23:12
**employed** [1] - 33:13
**employee** [2] - 10:1, 13:3
**employees** [1] - 13:1
**end** [1] - 22:4
**engineer** [1] - 16:3
**engineering** [1] - 24:17
**enter** [2] - 26:23, 32:4
**Entin** [1] - 33:23
**ENTIN** [2] - 1:21, 33:25
**entire** [1] - 16:13
**entitled** [2] - 23:20, 26:20
**equivalent** [1] - 12:2
**ER** [2] - 7:4, 12:17
**Esquire** [2] - 1:14, 1:17
**essentially** [2] - 9:8, 21:6
**establish** [1] - 22:19
**established** [1] - 24:8
**Eureka** [4] - 2:2, 2:7, 15:14, 17:24
**EUREKA** [1] - 1:4
**evaluate** [1] - 21:4

**evaluated** [1] - 17:23
**evaluation** [2] - 16:12, 17:25
**event** [1] - 16:18
**evidence** [6] - 16:15, 17:2, 17:17, 18:8, 29:10, 29:25
**exact** [4] - 11:8, 11:11, 11:13, 14:15
**exactly** [3] - 12:12, 14:4, 16:22
**examination** [2] - 20:4, 20:5
**examiner** [1] - 29:20
**examiners** [1] - 20:10
**excluding** [1] - 30:18
**excuse** [1] - 16:15
**exhibits** [1] - 7:17
**expect** [1] - 31:2
**expert** [41] - 2:13, 2:15, 2:25, 3:1, 3:3, 3:7, 3:8, 3:10, 3:11, 3:14, 3:21, 4:17, 5:2, 5:4, 5:13, 5:14, 5:19, 5:20, 5:22, 6:2, 6:17, 6:22, 7:15, 8:7, 14:6, 15:4, 20:18, 21:21, 23:5, 25:3, 25:7, 25:10, 25:11, 26:3, 26:4, 27:11, 27:20, 28:2, 28:23
**expertise** [4] - 24:23, 25:8, 25:9
**experts** [18] - 2:16, 3:6, 4:23, 5:16, 8:13, 8:14, 15:2, 15:8, 15:22, 16:19, 16:23, 18:22, 21:23, 25:3, 25:17, 26:10, 29:13, 29:15
**explain** [7] - 8:1, 8:12, 11:15, 15:3, 22:2, 23:25, 24:5
**explained** [1] - 12:11
**explains** [1] - 19:21
**explanation** [5] - 6:23, 9:18, 19:19, 19:23, 29:15
**explore** [1] - 3:4
**extend** [2] - 14:13, 15:25
**extended** [1] - 30:25
**extending** [1] - 14:7
**extension** [1] - 27:16
**extensive** [1] - 22:13
**extent** [6] - 9:3, 15:15, 16:5, 29:3, 29:14, 30:19
**extreme** [1] - 5:2
**eyewitness** [1] - 13:5

**F**

**fact** [5] - 8:6, 9:7, 16:16, 17:18, 28:24
**factors** [1] - 10:6
**facts** [1] - 20:9
**fail** [1] - 18:12
**failed** [1] - 18:13
**fair** [2] - 18:10, 29:16
**fall** [1] - 15:3
**far** [3] - 9:24, 14:9, 16:13
**favor** [1] - 28:23
**February** [1] - 1:5
**Federal** [1] - 1:22
**female** [1] - 17:25
**fettered** [1] - 20:24
**figure** [1] - 14:25
**filed** [4] - 2:15, 13:2, 17:21, 19:4
**fill** [1] - 22:23
**financially** [1] - 33:15
**findings** [4] - 19:16, 20:3, 20:6, 21:4
**first** [9] - 5:11, 7:25, 10:2, 15:6, 15:13, 15:20, 16:20, 23:11, 23:12
**five** [4] - 4:16, 12:11, 26:21, 26:22
**five-hour** [1] - 12:11
**Flagler** [1] - 1:18
**FLORIDA** [1] - 1:2
**Florida** [6] - 1:4, 1:14, 1:16, 1:19, 1:23, 33:8
**folks** [1] - 26:21
**following** [1] - 27:1
**FOR** [2] - 1:14, 1:17
**force** [2] - 12:3, 17:12
**forces** [1] - 21:6
**foregoing** [1] - 33:5
**forming** [1] - 29:13
**FORT** [1] - 1:2
**fort** [1] - 1:23
**Fort** [1] - 1:4
**forth** [5] - 10:15, 21:15, 21:21, 22:4, 24:17
**forward** [12] - 11:2, 12:1, 12:20, 12:21, 12:24, 13:9, 13:13, 13:24, 13:25, 14:19, 17:18, 18:4
**four** [2] - 4:16, 8:25
**FPR** [2] - 1:21, 33:25
**frankly** [2] - 20:21, 25:18
**full** [1] - 20:22

**fully** [1] - 16:3

**G**

**game** [2] - 18:11, 29:16
**gap** [1] - 23:21
**gather** [1] - 2:14
**Genovese** [12] - 1:17, 2:9, 2:11, 2:17, 2:22, 9:17, 11:15, 14:23, 22:7, 22:12, 22:21, 31:21
**GENOVESE** [16] - 2:9, 2:18, 2:20, 2:24, 15:5, 15:17, 15:20, 17:1, 18:15, 19:4, 20:1, 20:20, 20:24, 31:22, 32:3, 32:9
**genuine** [1] - 11:9
**given** [1] - 31:2
**Gonzalez** [5] - 6:12, 10:1, 10:3, 12:17, 22:14
**governing** [1] - 27:18
**GrayRobinson** [1] - 1:17
**ground** [1] - 30:17
**guard** [1] - 12:16
**guess** [10] - 9:14, 11:18, 17:23, 19:14, 20:7, 20:18, 23:18, 24:12, 25:13, 25:24
**gust** [1] - 13:19

**H**

**hand** [1] - 18:5
**hands** [2] - 14:9, 23:13
**hard** [2] - 24:13, 24:24
**harmlessness** [1] - 5:24
**hash** [1] - 23:22
**head** [1] - 24:13
**hear** [1] - 14:23
**hearing** [3] - 2:12, 4:4, 33:14
**HEARING** [1] - 1:10
**herself** [10] - 11:2, 11:3, 13:11, 14:5, 14:11, 14:17, 17:18, 18:4, 18:10, 29:20
**high** [1] - 13:19
**highlighted** [3] - 7:17, 16:7, 19:15
**himself** [1] - 30:5
**hired** [1] - 9:9
**hit** [2] - 12:21, 17:6
**hold** [6] - 3:15, 5:8,

5:12, 14:21, 31:7
**Honor** [31] - 2:6, 3:12, 3:20, 4:25, 5:1, 6:4, 6:10, 7:1, 7:16, 8:15, 9:25, 11:5, 12:9, 13:2, 13:14, 14:15, 15:5, 16:8, 17:1, 20:20, 21:13, 22:6, 23:14, 23:16, 25:4, 25:16, 26:12, 26:18, 31:12, 31:22, 32:9
**HONORABLE** [1] - 1:10
**hope** [1] - 32:7
**hospital** [1] - 6:13
**hour** [1] - 12:11
**husband** [1] - 17:7

**I**

**idea** [3] - 12:7, 21:20, 25:1
**identified** [2] - 7:7, 22:16
**illustrations** [1] - 14:6
**impact** [2] - 16:17, 18:4
**important** [1] - 4:6
**improper** [2] - 3:1, 3:7
**inaudible** [2] - 17:23, 22:22
**incident** [3] - 4:12, 13:4, 28:19
**inclined** [1] - 27:9
**includes** [1] - 9:25
**indicate** [2] - 6:14, 8:6
**indicated** [1] - 29:18
**indicates** [2] - 15:24, 29:2
**indicating** [1] - 14:24
**infirmary** [1] - 12:23
**inform** [1] - 13:16
**information** [7] - 13:7, 15:1, 16:24, 18:6, 18:19, 29:12, 29:21
**initial** [2] - 3:1, 18:22
**injecting** [1] - 12:5
**injured** [1] - 12:12
**injuries** [4] - 6:12, 15:15, 21:5, 21:8
**injury** [29] - 6:14, 6:20, 8:17, 8:23, 9:2, 9:6, 9:21, 9:22, 10:9, 10:11, 10:12, 10:13, 10:14, 10:15, 10:25, 11:3, 12:16, 12:20, 12:24, 17:15, 18:17, 19:7, 19:10, 20:12, 20:17, 22:9, 23:13, 28:12, 28:18

**insofar** [2] - 10:5, 10:20
**intended** [5] - 4:21, 9:1, 9:11, 15:22, 15:24
**intending** [3] - 6:8, 25:18, 30:19
**intention** [3] - 22:18, 26:17, 26:19
**intentional** [1] - 5:7
**interested** [1] - 33:15
**introduce** [1] - 23:5
**introducing** [2] - 25:1, 29:9
**introduction** [1] - 25:15
**investigate** [1] - 10:13
**investigating** [1] - 12:16
**involved** [1] - 13:3
**issue** [14] - 4:5, 4:15, 8:16, 8:17, 9:10, 9:16, 22:2, 23:15, 23:19, 24:3, 24:11, 27:4, 27:5, 28:20
**issues** [1] - 29:9
**items** [1] - 8:8

**J**

**jammed** [1] - 14:9
**January** [1] - 27:15
**JARED** [1] - 1:10
**John** [1] - 17:23
**joint** [3] - 2:14, 27:25, 30:3
**Judge** [1] - 27:23
**JUDGE** [1] - 1:11
**July** [2] - 18:1, 19:17
**justification** [1] - 5:23

**K**

**kind** [1] - 16:17
**kinds** [1] - 21:8
**knows** [1] - 5:1

**L**

**large** [2] - 4:25, 18:3
**largely** [1] - 3:23
**last** [1] - 4:4
**late** [1] - 5:22
**LAUDERDALE** [1] - 1:2
**Lauderdale** [2] - 1:4, 1:23
**law** [3] - 5:1, 6:17, 27:18
**lay** [1] - 23:13

**least** [4] - 17:19, 18:7, 24:20, 29:19
**leave** [1] - 29:3
**left** [4] - 18:1, 20:3, 27:14, 31:3
**Legal** [1] - 1:14
**length** [2] - 12:11, 25:20
**liability** [1] - 4:23
**Liberti** [38] - 2:13, 2:15, 3:3, 3:10, 3:12, 3:21, 4:9, 6:7, 6:16, 8:6, 8:12, 9:1, 9:8, 9:11, 11:4, 11:17, 11:23, 12:1, 12:5, 14:24, 16:1, 17:13, 19:12, 21:23, 24:24, 26:10, 27:10, 27:16, 28:2, 28:9, 28:15, 29:6, 29:11, 29:16, 30:5, 30:18, 30:24, 31:15
**Liberti's** [13] - 4:6, 8:1, 9:11, 10:24, 11:12, 13:10, 14:6, 15:12, 24:18, 25:7, 26:19, 28:21, 31:24
**lid** [4] - 10:24, 16:12, 17:11, 18:23
**lido** [1] - 13:17
**lids** [2] - 12:21, 13:6
**lifting** [1] - 12:2
**ligament** [1] - 7:10
**likelihood** [1] - 28:18
**likewise** [1] - 6:13
**limited** [4] - 30:10, 30:13, 31:24, 31:25
**limiting** [1] - 30:18
**line** [2] - 13:15, 26:6
**Lines** [1] - 10:1
**lip** [1] - 14:8
**listing** [1] - 20:9
**location** [1] - 7:2
**look** [4] - 7:16, 9:7, 14:21, 19:11
**looking** [1] - 17:20
**looks** [1] - 13:18
**lower** [1] - 13:19
**lunch** [1] - 18:3
**lunge** [2] - 11:1, 17:18
**lunged** [1] - 12:21
**lunges** [1] - 13:25
**lunging** [6] - 12:1, 12:20, 12:24, 13:8, 13:13, 17:14
**lunging-forward** [1] - 12:24

### M

**MAGISTRATE** [1] - 1:11
**main** [1] - 7:13
**manner** [2] - 6:5, 8:23
**Martinez** [1] - 22:15
**masquerading** [1] - 5:20
**matter** [9] - 4:20, 7:20, 9:5, 28:6, 28:20, 28:22, 29:6, 29:7, 33:10
**maximize** [1] - 31:5
**mean** [9] - 5:14, 8:15, 10:17, 12:20, 12:25, 16:6, 25:24, 30:15, 31:22
**meant** [1] - 24:25
**medical** [15] - 12:14, 16:5, 16:11, 17:10, 19:7, 19:16, 20:5, 21:3, 21:4, 22:8, 24:14, 24:16, 28:17, 29:20
**medically** [1] - 6:19
**meets** [1] - 22:10
**memorializing** [1] - 32:5
**mention** [5] - 8:4, 8:9, 24:21, 26:11, 30:7
**mentioned** [5] - 16:8, 16:10, 17:11, 17:12, 17:19
**mentions** [3] - 29:19, 30:5, 30:6
**merits** [1] - 22:25
**Miami** [1] - 1:16
**Michael** [1] - 2:13
**microphone** [2] - 3:16, 15:19
**mid** [1] - 18:3
**mid-back** [1] - 18:3
**mind** [1] - 9:25
**minutes** [2] - 26:22
**mischaracterizing** [1] - 11:4
**misremembering** [1] - 15:9
**missed** [2] - 8:10, 24:5
**missing** [1] - 19:6
**misspoke** [1] - 28:13
**misunderstanding** [1] - 18:18
**Monday** [1] - 31:13
**morning** [3] - 2:6, 2:8, 2:11
**most** [2] - 21:15, 21:19
**mostly** [1] - 4:11

**motion** [4] - 3:2, 28:3, 30:15, 30:16
**motions** [1] - 23:23
**move** [2] - 14:19, 15:16
**moved** [1] - 12:12
**movement** [3] - 12:18, 13:7, 17:14
**moves** [1] - 13:24
**moving** [2] - 3:6, 5:4
**MR** [33] - 2:6, 3:12, 3:17, 3:20, 5:11, 5:25, 6:4, 7:1, 7:22, 7:24, 8:15, 9:24, 10:10, 11:5, 12:9, 12:14, 13:14, 13:23, 14:14, 21:13, 22:6, 23:2, 23:4, 25:2, 25:16, 26:7, 26:12, 26:17, 26:25, 27:3, 27:7, 31:12, 32:10
**MRI** [4] - 7:6, 19:16, 20:3, 20:6
**MS** [16] - 2:9, 2:18, 2:20, 2:24, 15:5, 15:17, 15:20, 17:1, 18:15, 19:4, 20:1, 20:20, 20:24, 31:22, 32:3, 32:9
**multiple** [3] - 13:24, 17:7, 24:8
**must** [2] - 28:21, 30:10

### N

**natural** [1] - 14:17
**nature** [3] - 7:24, 19:9, 21:5
**necessary** [1] - 29:3
**need** [2] - 23:22, 31:13
**needs** [3] - 10:17, 22:24, 31:9
**new** [10] - 12:5, 12:8, 12:10, 13:7, 16:19, 17:13, 23:16, 25:1, 25:15, 29:9
**Nicole** [1] - 1:17
**NO** [1] - 1:3
**non** [2] - 4:16, 6:22
**non-expert** [1] - 6:22
**non-retained** [1] - 4:16
**none** [3] - 16:9, 17:11
**nonmedical** [1] - 20:21
**notation** [1] - 17:21
**notes** [1] - 17:22
**nothing** [2] - 17:1, 32:6

**notion** [1] - 12:25
**November** [1] - 3:25
**nowhere** [1] - 12:22
**number** [1] - 12:10
**Number** [1] - 2:3

### O

**object** [7] - 7:2, 9:20, 9:22, 10:7, 10:24, 11:1, 11:22
**objects** [1] - 17:7
**observed** [1] - 16:8
**obviously** [4] - 4:25, 10:19, 13:23, 31:15
**occurred** [2] - 6:21, 21:7
**October** [1] - 22:13
**OF** [1] - 1:2
**offer** [1] - 29:2
**offered** [15] - 3:10, 3:11, 3:14, 3:21, 5:15, 6:2, 6:9, 16:2, 25:10, 28:9, 28:10, 28:15, 30:8, 30:11
**offering** [3] - 11:17, 15:2, 19:13
**offers** [1] - 30:14
**office** [1] - 22:17
**Official** [1] - 1:21
**official** [1] - 33:7
**once** [5] - 11:6, 23:15, 23:20, 24:9, 26:17
**one** [13] - 3:15, 5:11, 10:4, 12:10, 14:22, 19:10, 21:9, 24:23, 25:12, 26:13, 29:19, 30:11, 31:7
**opening** [2] - 15:21, 29:2
**opinion** [25] - 2:25, 4:6, 4:10, 4:11, 4:12, 8:21, 8:23, 9:4, 11:12, 16:21, 17:19, 19:1, 20:5, 22:9, 22:22, 22:24, 23:1, 23:23, 24:16, 24:17, 28:11, 28:17, 28:21, 29:2, 29:6
**opinions** [9] - 3:24, 4:1, 4:8, 15:15, 15:25, 19:2, 24:1, 27:16, 29:14
**opportunity** [3] - 3:13, 16:20, 26:2
**opposing** [1] - 7:20
**opposite** [1] - 11:8
**Order** [1] - 2:1
**order** [2] - 19:24, 32:4
**orders** [1] - 5:6

**ore** [1] - 3:2
**original** [1] - 24:3
**orthopedic** [3] - 7:12, 22:8, 23:7
**otherwise** [3] - 3:7, 8:9, 33:15
**outcome** [1] - 33:15
**outdoor** [1] - 13:17
**outside** [1] - 29:4
**overlaps** [1] - 25:8
**own** [3] - 6:11, 11:7, 22:25

### P

**page** [4] - 13:15, 17:20, 17:21
**pages** [1] - 33:6
**Pages** [1] - 1:8
**pain** [7] - 7:2, 7:5, 9:20, 10:8, 10:11, 12:22
**Palm** [1] - 1:19
**Papason** [2] - 4:7, 4:22
**paragraph** [4] - 15:13, 15:21, 16:6
**part** [9] - 9:15, 10:22, 10:23, 11:16, 14:15, 21:12, 21:19, 24:12
**parties** [3] - 2:4, 2:15, 33:13
**parts** [1] - 19:14
**party** [2] - 29:24, 31:9
**passenger** [1] - 18:2
**patient** [1] - 17:25
**PATRICIA** [2] - 1:21, 33:25
**Patricia** [1] - 33:23
**PDF** [1] - 17:21
**per** [1] - 10:25
**perform** [1] - 20:3
**period** [3] - 26:8, 27:14, 30:25
**permitted** [3] - 6:20, 22:9, 23:7
**person** [1] - 23:12
**phonetic** [1] - 4:7
**physician** [1] - 6:11
**physician's** [1] - 7:11
**physicians** [13] - 4:17, 6:13, 6:22, 9:14, 9:25, 10:17, 10:20, 15:7, 15:11, 22:20, 23:9, 24:8, 24:14
**physics** [1] - 14:18
**picture** [1] - 14:7
**pictures** [1] - 14:6
**place** [4] - 24:23, 27:4, 27:8, 27:9

**Plaintiff** [1] - 1:5
**plaintiff** [25] - 2:5, 2:7, 3:11, 15:14, 16:7, 16:12, 18:13, 18:16, 18:25, 19:14, 20:4, 20:5, 21:11, 21:15, 21:17, 22:4, 26:20, 28:14, 29:22, 30:4, 30:12, 30:23, 31:2, 31:11
**PLAINTIFF** [1] - 1:14
**plaintiff's** [5] - 2:13, 11:19, 18:20, 22:2, 28:12
**plaintiffs** [1] - 13:2
**point** [14] - 2:23, 7:6, 8:16, 13:2, 18:13, 20:13, 20:14, 21:10, 23:17, 24:14, 24:18, 24:19, 29:16
**pointed** [1] - 29:1
**pointing** [1] - 8:4
**points** [1] - 17:2
**position** [1] - 16:9
**possibility** [1] - 18:11
**possibly** [2] - 20:25, 30:16
**potential** [1] - 31:4
**pounds** [1] - 12:3
**preexisting** [1] - 7:8
**prejudice** [3] - 5:5, 27:7, 27:11
**prepared** [1] - 6:7
**present** [1] - 19:3
**presents** [1] - 17:25
**presumably** [1] - 18:9
**previous** [1] - 20:10
**previously** [1] - 33:9
**probability** [1] - 19:16
**problem** [3] - 3:20, 11:14, 12:6
**problematic** [1] - 22:1
**Procedure** [1] - 15:23
**proceedings** [2] - 27:1, 33:9
**products** [1] - 4:23
**professional** [1] - 20:21
**pronounce** [1] - 2:16
**proper** [9] - 7:14, 11:13, 15:4, 16:25, 24:3, 24:4, 27:10, 28:5, 28:23
**properly** [3] - 24:1, 30:21
**prospective** [1] - 7:11
**prove** [1] - 21:11
**provide** [1] - 15:14
**provided** [2] - 22:13, 33:7

**providers** [1] - 17:10
**proving** [1] - 18:25
**purporting** [1] - 28:7
**purpose** [2] - 5:7, 15:13
**purposes** [1] - 31:24
**pushed** [1] - 18:4
**put** [2] - 21:15, 21:20
**putting** [3] - 22:4, 24:6, 24:17

**Q**

**qualifications** [1] - 23:9
**qualified** [1] - 24:8
**questioning** [1] - 29:18
**quite** [2] - 14:10, 20:8
**quote** [1] - 29:24

**R**

**radiologist** [3] - 22:15, 23:10
**raise** [4] - 9:16, 12:8, 30:16
**raised** [1] - 23:19
**rather** [1] - 10:25
**Raymond** [2] - 1:14, 2:6
**reach** [1] - 21:8
**reaction** [1] - 14:17
**reactive** [3] - 16:17, 16:18, 17:14
**really** [5] - 7:1, 9:5, 9:10, 11:10, 23:21
**realm** [1] - 14:25
**reason** [2] - 6:9, 23:8
**rebut** [24] - 3:24, 4:8, 5:16, 6:8, 9:12, 15:15, 15:22, 15:25, 16:2, 16:4, 16:5, 23:20, 24:19, 24:25, 25:3, 25:10, 25:13, 25:15, 26:18, 28:7, 28:10, 29:3, 30:8
**rebuts** [1] - 8:1
**rebuttal** [50] - 2:25, 3:1, 3:5, 3:7, 3:8, 3:10, 3:14, 3:21, 4:22, 5:13, 5:14, 5:18, 5:20, 6:2, 6:3, 7:14, 7:24, 8:20, 9:1, 9:3, 11:7, 11:10, 11:13, 12:8, 14:24, 15:4, 15:24, 16:21, 16:23, 16:25, 17:2, 18:21, 21:23, 24:4, 25:3, 26:2, 26:3,

27:11, 28:5, 28:9, 28:15, 28:16, 28:23, 29:4, 30:11, 30:20, 30:22, 31:25
**rebutting** [3] - 5:19, 8:13, 15:1
**received** [1] - 4:16
**recess** [1] - 26:22
**recognizing** [1] - 24:22
**recollection** [1] - 13:15
**record** [13] - 3:18, 3:19, 7:7, 16:15, 17:2, 17:17, 18:8, 27:1, 27:4, 27:8, 27:14, 29:10, 29:25
**recorder** [1] - 3:19
**recording** [1] - 33:7
**records** [3] - 6:14, 12:15, 21:4
**refer** [1] - 11:24
**reference** [2] - 8:3, 13:9
**referenced** [1] - 8:21
**referred** [1] - 6:23
**refers** [1] - 6:6
**regarding** [1] - 2:12
**related** [5] - 6:12, 6:15, 8:24, 19:17, 33:13
**relatively** [1] - 3:25
**relied** [1] - 29:13
**relief** [4] - 2:22, 27:17, 27:20, 27:22
**relying** [1] - 29:11
**remaining** [1] - 30:25
**remedy** [1] - 5:3
**remember** [1] - 26:5
**Renato** [1] - 1:14
**rep** [1] - 25:19
**report** [51] - 2:14, 2:15, 2:25, 3:13, 3:22, 4:21, 6:6, 6:7, 7:18, 7:19, 8:1, 8:3, 8:7, 8:8, 8:20, 8:22, 8:25, 9:2, 9:11, 11:5, 11:6, 13:10, 14:6, 14:22, 15:12, 15:13, 15:24, 17:2, 17:20, 19:14, 20:2, 20:4, 23:24, 24:20, 25:9, 26:14, 26:20, 28:1, 28:17, 28:25, 29:2, 29:19, 30:3, 30:4, 30:6, 30:7, 30:10
**Reporter** [1] - 1:21
**reports** [7] - 4:17, 7:17, 16:6, 16:21, 18:1, 19:12, 28:2

**representation** [1] - 15:6
**representations** [3] - 30:3, 30:8, 30:9
**represented** [4] - 28:8, 28:14, 28:15, 30:12
**representing** [1] - 17:16
**request** [1] - 27:16
**requested** [2] - 27:21, 27:22
**requests** [1] - 27:15
**require** [1] - 14:19
**required** [5] - 5:5, 15:15, 15:22, 15:25, 24:22
**requirement** [1] - 25:3
**reschedule** [1] - 31:13
**rescheduled** [1] - 21:1
**response** [1] - 24:11
**rest** [1] - 32:7
**restate** [1] - 31:23
**resulted** [1] - 12:20
**resulting** [1] - 7:9
**retained** [3] - 3:23, 4:16, 6:7
**reverse** [2] - 7:12, 11:12
**reviewed** [9] - 2:14, 8:6, 8:9, 9:7, 9:9, 14:2, 17:5, 28:1, 30:6
**reviewing** [6] - 3:13, 8:2, 9:2, 14:16, 30:4, 30:7
**revised** [1] - 26:14
**RPR** [2] - 1:21, 33:25
**rule** [2] - 23:24
**Rule** [4] - 4:17, 5:24, 22:13, 24:2
**Rules** [1] - 15:23
**rules** [1] - 5:6
**ruling** [2] - 26:23, 27:3

**S**

**sat** [1] - 25:18
**saw** [7] - 13:9, 14:8, 19:13, 20:11, 20:12, 20:16
**scheduling** [2] - 5:6, 31:20
**scope** [2] - 15:4, 29:4
**se** [1] - 10:25
**second** [6] - 3:15, 14:22, 16:21, 27:4, 27:5, 31:7
**security** [1] - 12:16
**see** [8] - 3:24, 8:3, 19:19, 20:9, 20:13,

25:2, 26:5, 31:20
**seeking** [2] - 2:23, 2:24
**seeks** [2] - 4:7, 9:4
**seem** [3] - 9:16, 11:14, 14:8
**sent** [2] - 22:17, 26:14
**sentence** [1] - 15:20
**set** [1] - 20:25
**severe** [2] - 5:5, 12:22
**ship** [3] - 7:3, 18:2, 28:19
**ship's** [2] - 6:11, 7:4
**shoulder** [15] - 6:14, 7:9, 8:17, 9:6, 9:23, 10:8, 10:9, 10:25, 11:1, 11:23, 11:25, 17:15, 18:1, 18:23, 20:3
**show** [4] - 21:6, 23:20, 24:7, 24:10
**showed** [1] - 14:6
**showing** [1] - 23:18
**shows** [3] - 7:8, 16:15, 24:5
**side** [1] - 5:4
**sides** [1] - 4:24
**similar** [2] - 13:18, 23:9
**sit** [1] - 27:6
**sitting** [2] - 13:17, 14:12
**situations** [1] - 27:19
**soap** [1] - 4:21
**sole** [1] - 4:8
**solely** [6] - 3:13, 5:14, 5:15, 6:2, 15:22, 17:13
**someone** [1] - 14:7
**somewhat** [2] - 14:13, 29:8
**sorry** [6] - 7:23, 15:17, 19:8, 23:1, 28:13, 28:14
**sort** [1] - 14:7
**sound** [1] - 33:7
**Southeast** [1] - 1:15
**Southern** [1] - 33:8
**SOUTHERN** [1] - 1:2
**specialty** [1] - 6:18
**specifically** [7] - 6:6, 7:17, 7:18, 21:3, 28:25, 29:9, 29:24
**speed** [1] - 13:6
**spoken** [1] - 13:4
**spots** [1] - 19:15
**stand** [2] - 26:22, 27:6
**standalone** [1] - 22:24
**standard** [2] - 9:5, 28:4

**standards** [1] - 22:11
**start** [1] - 3:9
**starting** [2] - 2:5, 31:12
**state** [3] - 11:12, 27:14, 27:18
**statement** [2] - 17:22, 29:19
**states** [1] - 9:12
**States** [1] - 1:22
**STATES** [2] - 1:1, 1:11
**station** [1] - 13:18
**status** [3] - 2:14, 28:1, 30:3
**STENOGRAPHICAL LY** [1] - 1:20
**step** [2] - 11:8
**step-by-step** [1] - 11:8
**steps** [1] - 11:11
**straight** [1] - 12:23
**strain** [1] - 7:5
**STRAUSS** [1] - 1:10
**strike** [4] - 2:24, 3:3, 3:6, 5:4
**strikes** [1] - 22:1
**striking** [10] - 5:2, 9:20, 9:22, 10:9, 10:25, 11:1, 11:22, 16:12, 18:23, 27:20
**struck** [9] - 7:2, 10:8, 11:25, 13:21, 13:23, 13:24, 14:18, 17:11, 18:3
**struggling** [3] - 20:19, 21:15, 25:14
**subject** [9] - 3:22, 4:20, 7:20, 9:5, 28:6, 28:20, 28:22, 29:5, 29:7
**subsequent** [1] - 7:6
**subsequently** [1] - 4:2
**substantial** [1] - 5:23
**suffered** [1] - 27:11
**suggest** [2] - 9:21, 31:3
**Suite** [2] - 1:15, 1:18
**sum** [1] - 27:11
**support** [1] - 29:25
**supported** [3] - 22:10, 22:25, 24:1
**surgeon** [4] - 4:18, 7:13, 22:8, 23:7
**surgery** [1] - 10:15
**surprise** [1] - 4:14
**surprised** [2] - 13:25, 16:18

## T

**table** [8] - 13:11, 14:8,

14:12, 14:14, 14:15, 14:18, 18:5, 29:20
**talks** [2] - 4:22, 6:18
**tardy** [1] - 27:12
**tear** [1] - 7:9
**ten** [1] - 27:12
**tenus** [1] - 3:2
**terms** [4] - 4:20, 11:9, 12:17
**testify** [7] - 6:3, 14:4, 23:13, 24:9, 30:19, 30:20
**testifying** [4] - 4:9, 4:18, 6:25, 22:16
**testimony** [19] - 6:19, 10:5, 10:21, 13:1, 13:8, 13:12, 14:20, 17:8, 19:3, 19:13, 21:21, 23:5, 23:8, 29:10, 30:10, 30:12, 30:13, 30:21, 31:24
**THE** [50] - 1:10, 1:14, 1:17, 2:2, 2:8, 2:11, 2:19, 2:21, 3:2, 3:15, 3:18, 5:8, 5:12, 6:1, 6:22, 7:21, 7:23, 7:25, 9:13, 10:7, 10:22, 11:14, 12:13, 13:8, 13:22, 14:4, 14:21, 15:16, 15:18, 16:22, 17:16, 19:1, 19:9, 20:7, 20:23, 21:9, 21:14, 23:1, 23:3, 24:12, 25:5, 26:1, 26:8, 26:16, 26:21, 27:5, 27:24, 31:17, 32:2, 32:4
**theorize** [1] - 20:18
**theory** [19] - 6:24, 7:1, 7:13, 9:22, 11:17, 11:21, 12:5, 14:10, 16:13, 16:16, 16:19, 17:13, 18:21, 21:16, 21:24, 22:4, 25:15, 29:11, 30:1
**therefore** [1] - 28:22
**they've** [1] - 13:4
**three** [2] - 8:25, 12:21
**throughout** [3] - 11:19, 11:21, 16:13
**timely** [1] - 5:17
**today** [6] - 17:25, 30:4, 30:12, 31:5, 32:5, 32:7
**took** [1] - 11:20
**topic** [5] - 4:8, 4:19, 11:13, 12:7, 15:1
**total** [1] - 27:11
**touches** [2] - 3:22, 6:16

**tracks** [1] - 5:9
**TRANSCRIBED** [1] - 1:20
**transcript** [3] - 14:16, 17:5, 33:6
**transpired** [1] - 21:7
**treated** [3] - 6:11, 10:2, 10:15
**treating** [18] - 4:17, 6:13, 6:22, 7:11, 9:14, 9:19, 9:24, 10:16, 10:20, 15:7, 15:10, 22:15, 22:19, 23:6, 23:8, 24:8, 24:14
**treatment** [1] - 10:13
**trial** [4] - 8:23, 30:14, 30:16, 31:12
**tried** [2] - 19:11, 19:12
**true** [1] - 33:5
**trying** [1] - 14:25
**turn** [2] - 11:15, 15:12
**two** [6] - 4:23, 5:9, 5:10, 20:8, 30:12, 31:3

## U

**U.S** [2] - 1:22, 33:8
**ultimately** [1] - 28:4
**unaware** [1] - 15:7
**unclear** [1] - 31:9
**under** [4] - 4:7, 4:13, 5:24, 27:18
**understood** [2] - 10:23, 11:18
**United** [1] - 1:22
**UNITED** [2] - 1:1, 1:11
**untimely** [1] - 3:7
**up** [3] - 21:10, 22:4, 26:6

## V

**vaguely** [1] - 29:1
**Vanegas** [4] - 6:11, 10:1, 10:3, 12:17
**various** [2] - 19:15, 28:1
**Venezuela** [1] - 22:14
**view** [3] - 24:14, 24:18, 24:19
**viewpoints** [1] - 7:20
**vs** [1] - 1:6

## W

**warrant** [1] - 27:20
**weekend** [1] - 32:8
**weighs** [1] - 28:23

**West** [1] - 1:19
**whatsoever** [1] - 8:3
**whole** [2] - 12:24, 20:9
**Wilkerson** [3] - 4:18, 17:24, 22:14
**willful** [1] - 5:5
**wind** [1] - 13:6
**winds** [1] - 13:20
**wishes** [2] - 31:1, 31:16
**witness** [10] - 3:3, 13:5, 14:25, 28:5, 28:6, 28:9, 28:15, 28:16, 30:22
**worded** [1] - 32:5
**words** [2] - 11:20, 19:20
**works** [1] - 23:11
**wrap** [1] - 24:13
**written** [1] - 32:4

## Y

**you-all** [1] - 31:19
**yourself** [1] - 24:22