**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**
Case No.: 23-cv-60532-MD

Eureka Cole
     Plaintiff(s),
vs.
Carnival Corporation
     Defendant(s).

_____/

**PLAINTIFF'S UPDATED**
**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff Eureka Cole, pursuant to this Court's Orders [ECF Nos. 19 and 70], hereby files her Proposed Findings of Fact and Conclusions of Law as follows:

**I.**     Background

1.     The instant action is one for personal injury arising under maritime law. In her Second Amended Complaint [D.E.,22] Plaintiff alleges that she was injured on July 24, 2022, while onboard the Defendant's cruise ship, the Carnival *Conquest*; when food container lids were picked up by winds on the deck of the ship and struck her repeatedly.

2.     Plaintiff has alleged two theories of recovery in her Second Amended Complaint; Count I, for direct negligence as to the Defendant, and Count II seeking recovery for vicarious liability for the negligence of the Defendant's employees.

3.     This matter was tried before the Court on May 29-31, 2024.

**II.**     Proposed Findings of Fact

     a.     Liability of the Defendant

4.     As to the question of whether the Defendant was negligent, the Court finds as follows:

5. Plaintiff was a fare paying passenger onboard the Carnival Conquest at the time of the incident.

6. According to Carnival's employees, Plaintiff Eureka Cole, and her husband Lucien Cole who were present at the time of the incident, there had been very high winds blowing across the deck of the ship at the time Plaintiff was injured. The winds were strong enough where it was difficult for a person to walk on the ship's deck. *See Dep. Shruti Bhatia at 31:19-24; Dep. Eureka Cole at 46:20-47:5; Dep. Lucien Cole at 9:4-10:6.*

7. On this matter the Court heard testimony from the following witnesses at trial which established that there were high winds on the ship's lido deck at the time of the subject incident:

   *a.* Lucien Cole – Mr. Cole estimated that the winds were blowing between 25-30 mph at the time of Ms. Cole's injury.

   *b.* Eureka Cole – Ms. Cole likewise estimated that the winds were blowing between 25-30 mph at the time she was injured.

   *c.* Shruti Bhatia – Carnival's employee who was present at the time of the subject incident testified that the winds were quite high at the time of the incident and had picked up earlier in the day.

8. Carnival was aware that prior to the subject incident, the lido deck where the Plaintiff was injured had been subject to high winds while passengers were dining. *See Dep. Shruti Bhatia at 47:3-14.*

9. On this matter the Court heard testimony from the following witnesses which established that Carnival had actual and/or constructive notice of the incident.

a. <u>Lucien Cole</u> – Mr. Cole testified that at or near the time of the subject incident Carnival's employees were present on the lido deck and would have also experienced the high winds.

b. <u>Eureka Cole</u> – Likewise, Ms. Cole testified that at or near the time of the subject incident Carnival's employees were present on the lido deck and would have also experienced the high winds.

c. <u>Carnival employees and corporate representative</u> -  Prior to the subject incident Carnival was on notice that high winds across the Lido Deck could pose a hazard to its guests and had trained its employees to post warning signs, secure items, and/or close the Lido Deck in the event of high winds and inclement weather. *See Dep. Shruti Bhatia at 18:1-25; 20:6-10; 21:1-19; 42:21-43:4; 44:5-45:9; 65:1-12; Dep. of Carnival Corp. Rep. at 79:5-81:9; Dep. Vikram Thapa at 22:23 – 23:10.*

10.     Regarding the trial testimony of Carnival's Corporate Representative, Monique Borcegue, the Court finds that her testimony concerning the wind speeds and procedures for safely operating the Carnival Conquest are inadmissible, as the testimony is not based on her personal knowledge and she was not qualified to offer such expert opinions. See Fed. R. Evid. 602*; see also Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, Ecumenical Order*, 702 F.3d 1279, 1295 (11th Cir. 2012); *Banta Props. v. Arch Specialty Ins. Co.*, No. 10-61485-CIV, 2011 U.S. Dist. LEXIS 139963, at *3-5 (S.D. Fla. Nov. 23, 2011). Nor did Carnival introduce any other documentary evidence which would have substantiated Ms. Borcegue's testimony concerning the wind speed at the time of the incident or the proper

procedures to be followed by the captain of the Carnival *Conquest* when faced with inclement weather conditions.

11.     The employee who failed to secure the containers and allowed them to strike the Plaintiff was an employee of the Defendant. *See Dep. Carnival Corp. Rep. at 70:10-72:24.*

12.     Carnival had actual notice of the dangerous condition when its employee placed unsecured containers on the Lido Deck during high winds as its employee was present and was engaged in stacking and unstacking the containers prior to and subsequent to the subject incident, and thus it is more likely than not that Carnival's employee failed to secure these items and allowed them to strike the Plaintiff. *See Dep. Lucien Cole at 27:3-30:23; Dep. Eureka Cole at 46:20-47:5; 105:9-108:11.*

13.     The Court also finds that Carnival also failed to provide any warnings to the Plaintiff as to the potential for high winds which could cause items to become airborne on the Lido Deck. *See Dep. Lucien Cole at 29:16-20.*

    b.  <u>Causation and damages</u>

14.     As to the question of whether Defendant's negligence was the legal cause of injury or damage to the Plaintiff and the extent of those damages, the Court finds as follows.

15.     The Court finds that the medical history of the Plaintiff subsequent to her injury was consistent with the injuries claimed. The Plaintiff was treated on the same day of her injury by Carnival's ship physician Dr. Vanegas Gonzalez, who testified her injuries were causally related and consistent with being struck by a container. *Dep. Dr. Vanegas Gonzalez at 24:6-9.* The Plaintiff then disembarked and received treatment for the injury to her shoulder at Florida Westside Hospital the following day on July 25, 2022. On July 27, 2022, Plaintiff underwent additional treatment including an MRI which revealed tears to the labrum and supraspinatus tendon.

16.     There is no evidence that Plaintiff suffered a prior injury to her left shoulder before the date of the incident. This fact is conceded by the Defendant's medical expert Dr. Joseph Chalal. *See Dep. Dr. Chalal at 11:14-20.* The lack of any prior injuries to the Plaintiff's left shoulder is also corroborated by the Plaintiff's treating physician and surgeon Dr. John P. Wilkerson. *See Dep. Dr. Wilkerson at 64:17-65:4.*

17.     The Court also finds that Dr. Chalal did not review any radiological imaging predating the subject incident which would support his opinion that the Plaintiff's injuries were preexisting. *See Dep. Dr. Chalal at 12:8-11.*

18.     Defendant's medical expert Dr. Joseph Chalal, also concedes that Plaintiff was injured as a result of the subject incident and that a significant amount of her medical treatment and expense was causally related to the subject incident. *See Dep. Dr. Chalal at 8:16-10:2.*

19.     Dr. Chalal has also conceded that his opinions are based solely on his training and experience and does not offer any other facts data or evidence to support his opinions regarding causation and the reasonable cost of the Plaintiff's medical care. *See Dep. Dr. Chalal at 49:5-14.*

20.     Nonetheless, Dr. Wilkerson who in addition to being a board-certified orthopedic surgeon with specialized fellowship training in biomechanics has opined based on his review of the data, his care and treatment of the patient, and his training and experience, that all of Plaintiff's medical treatment and injuries are related to the subject incident. *See Dep. Dr. Wilkerson at 43:5-16.*

21.     Dr. Wilkerson's causation testimony as to the Plaintiff's injuries is also supported by the testimony of the Plaintiff's biomechanical engineering expert Michael Andrew Liberti, B.S.

22.     The Court also finds that the testimony of defense expert Amy Courtney, Ph.D. is of limited usefulness. Ms. Courtney's opinions on causation have been stricken or limited in

numerous cases, including by the federal district court in *Okey v. United States*, No. 2:20-CV-00119, 2022 U.S. Dist. LEXIS 15973, at *5 (W.D. La. Jan. 27, 2022).

23.     Thus, the Court finds that Plaintiff has met her burden of proof as to causation of her injuries and the reasonable cost of medical treatment.

**III.**     Proposed Conclusions of Law

24.     A cruise operator such as Carnival owes its passengers a duty of reasonable care which includes a duty to warn passengers of dangers of which the carrier knows or should know, but which may not be apparent to a reasonable passenger. *See Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1357 (S.D. Fla. 2013); *Poole, v. Carnival Corp.*, No. 14-0237-CIV, 2015 U.S. Dist. LEXIS 45927, 2015 WL 1566415, at *5 (S.D. Fla. Apr. 8, 2015). However, "[w]here a cruise ship operator created the unsafe or foreseeably hazardous condition, a plaintiff need not prove notice in order to show negligence." *See Long v. Celebrity Cruises, Inc.*, 982 F. Supp. 2d 1313, 1316 (S.D. Fla. Aug.1, 2013). Even in the absence of notice to the cruise operator, it may still be held liable for the negligent acts of its employees and crew. *Yusko v. NCL (Bah.), Ltd*., 4 F.4th 1164, 1170 (11th Cir. 2021).

25.     After reviewing the evidence and considering the testimony, this Court finds that the greater weight of the evidence establishes that Carnival's employees were aware of the high winds on the deck but proceeded to place the unsecured containers in the vicinity of the passengers. Furthermore, Carnival's employees were aware that high winds could cause injuries to passengers and had specific procedures and protocols in place to address these risks and warn passengers, and thus had taken corrective action to address the hazard in the past.

26.     A Plaintiff in a claim for negligence against a cruise line subject to maritime law can establish that the cruise line operator had actual notice of a dangerous condition with

"[e]vidence that a ship owner has taken corrective action[,]" to address the hazard." *See Anders v. Carnival Corp.*, No. 23-21367-CIV-ALTONAGA/Damian, 2023 U.S. Dist. LEXIS 112642, at *15-16 (S.D. Fla. June 29, 2023) (following *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020); *Bunch v. Carnival Corp.*, 825 F. App'x 713, 718 (11th Cir. 2020)); see also *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1288-89 (11th Cir. 2015).

27.     Given the circumstances and testimony concerning the actions of Carnival's employees, the Court finds that Carnival failed to act reasonably and thus was negligent.

28.     As to the causation of the Plaintiff's injuries, the Court finds that neither the testimony of Dr. Chalal nor biomechanic Amy Courtney meet the standard for admissibility and reliability for expert testimony under the Federal Rules of Evidence. Even experienced experts "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* at 1261 (quoting Fed. R. Evid. 702 advisory committee note (2000 amends.)). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146. *Mama Jo's, Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 876 (11th Cir. 2020).

29.     In addition to Dr. Courtney's testimony having been previously limited in other cases, the Court finds that her methodology was not based on accepted scientific principles, as she was unable to quantify the forces experienced by the Plaintiff at the time of her injury and thus under such circumstances her biomechanical expert testimony lacks reliability under *Daubert. See Snider-Hancox v. NCL Bahamas Ltd.*, No. 17-20942-CIV-MARTINEZ/LOUIS, 2019 U.S. Dist. LEXIS 240743, at *12 (S.D. Fla. Feb. 7, 2019) ("[biomechanic's] opinion [was] too vague to assist the jury in understanding the energy forces behind Plaintiff's slip and fall. . .because he does not

quantify the energy required to result in Plaintiff's injuries or explain why those forces were not present here."); *see also Knepfle v. J&P Cycles, LLC*, No. 8:18-cv-543-T-KKM-CPT, 2021 U.S. Dist. LEXIS 87722, at *15-25 (M.D. Fla. May 7, 2021) *aff'd Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1289-95 (11th Cir. 2022) (affirming exclusion of biomechanic expert's testimony under *Daubert*).

30.     In addition to the testimony of Dr. Gonzalez, Dr. Wilkerson and Mr. Liberti, the Court finds that the timing of Plaintiff's medical treatment coupled with the absence of any evidence of prior medical treatment or preexisting injuries establishes that that Plaintiff's medical treatment was reasonable, necessary, and causally related.

31.     As to the amount of Plaintiff's medical bills the Court finds that the Plaintiff has met her burden of establishing the reasonableness and amount of her bills under maritime and Florida law. *See Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1311-12 (11th Cir. 2020); *see also Walerowicz v. Armand-Hosang*, 248 So. 3d 140, 143-45 (Fla. 4th DCA 2018).

32.     Finally, the Court finds that there is no evidence comparative negligence which would operate to reduce the Plaintiff's award.

33.     Accordingly the Court enters judgment for the Plaintiff as follows:

a.   Medical Expenses Past and Future - $141,264.11.

b.   Pain, Suffering, Loss of Enjoyment of Life Past and Future - $282,528.00

The Clerk is instructed to allow execution to issue forthwith on this judgment.

**DONE and ORDERED** in Chambers in Miami, Florida, this _____ day of _____, 2024

_____
MELISSA DAMIAN
UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2024, a true copy of the foregoing was sent via Electronic Mail to:

GrayRobinson, P.A.
Ashley Genoese
Michael J. Drahos
W. Cooper Jarnagin
515 North Flagler Drive, Ste. 650
West Palm Beach, Florida 33401
Tel: (561) 268-5727
Fax: (561) 268-5747
michael.drahos@gray-robinson.com
cooper.jarnagin@gray-robinson.com
ashley.genoese@gray-robinson.com
Lilia.Parker@gray-robinson.com

By:

FLORIDA LEGAL, LLC
Attorneys for Plaintiff
150 Southeast 2nd Avenue
Suite 1001
Miami, Florida 33131
(t) (305) 901-2209
(f) (786) 870-4030

*/s/ Raymond R. Dieppa*
Raymond R. Dieppa, Esq.
Florida Bar No. 27690
E-Mail: ray.dieppa@floridalegal.law