**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-cv-60532-DAMIAN/Strauss**

EUREKA COLE,

       Plaintiff,

v.

CARNIVAL CORPORATION,

       Defendant.

_____/

## DEFENDANT'S POST-TRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant, CARNIVAL CORPORATION, by and through undersigned counsel, hereby files its Post-Trial Proposed Findings of Fact and Conclusions of Law as follows:

### I.    PROCEDURAL BACKGROUND

1. This is a maritime personal injury action wherein Plaintiff, Eureka Cole, claims to have sustained an injury to her left shoulder after a plastic container lid struck her while she was sitting on the outer lido deck of the Carnival *Conquest* on July 24, 2022. ECF No. 15.

2. Plaintiff filed her First Amended Complaint on March 23, 2023. ECF No. 5. Therein, Plaintiff alleged a crewmember "negligently dropped a container while walking across the ship's lido deck." *Id.* at ¶ 16. Carnival filed a motion to dismiss, which the Court granted. ECF Nos. 6 and 14.

3. On May 10, 2023, Plaintiff filed the operative Second Amended Complaint against Carnival under two counts. *Id.*

4. Within Count I, Plaintiff alleges a theory of direct negligence against Carnival as the shipowner. She claims Carnival breached a duty to warn and maintain the vessel because it "allowed or directed to be placed a large unsecured, heavy storage container containing dishes on a platform or table in the vicinity of the Plaintiff while the ship was underway on the ship's outdoor lido deck, in a manner which was dangerous and would result in foreseeable harm to the Plaintiff. Subsequently, as a direct and foreseeable result of the dangerous condition created by [Carnival], the ship's movement and winds on the open deck caused these containers to fall and cause injury to Plaintiff when it struck her shoulder." *Id.* at ¶¶ 20 -21.

5. Within Count II, she alleges vicarious liability against Carnival for the acts of its crewmembers for (1) placing unsecured containers in the vicinity of passengers in significant winds; (2) failing to follow Carnival's rules for safe and proper securing of containers on the ship's lido deck; and (3) failing to remedy the dangerous condition of unsecured containers in the ship's lido deck. *Id.* at ¶¶ 28 -30.

6. On May 24, 2023, Carnival filed its Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint. ECF No. 18. Carnival later withdrew certain affirmative defenses. ECF No. 62.

7. This Court held a bench trial on May 29, 30, and 31, 2024.

8.     On the first day of trial, May 29, 2024, Plaintiff called her husband to testify live in her case-in-chief; and Defendant called its orthopedic expert witness Dr. Joseph Chalal. *See* **Exhibit 1** (Bench Trial Day 1 Transcript).

9.     On May 30, 2024, Plaintiff testified live in her case in chief; played designations of Defendant's 30(b)(6) witness; played designations of Shruti Bhatia, the Carnival employee that assisted her following the incident; played designations of Alexandra Ong, the onboard nurse who treated her following the incident; and played designations of Dr. Juan Vanegas Gonzalez, the onboard doctor who treated her following the incident. *See* **Exhibit 2** (Bench Trial Day 2 Transcript); ECF No. 93-1 (Designations of 30(b)(6) witness); ECF No. 93-3 (Designations of S. Bhatia); ECF No 93-7 (Designations of Dr. Juan Vanegas Gonzalez).

10.     On May 31, 2024, Plaintiff played designations of her treating physician Dr. John P. Wilkerson and rested her case-in-chief; Defendant opened its case and presented its corporate representative for live testimony; played designations of its security officer Vikram Thapa; and presented live expert testimony from its biomechanical engineering expert Dr. Amy Courtney; and Plaintiff presented rebuttal expert testimony from her proposed biomechanical engineering expert Andy Liberti. *See* **Exhibit 3** (Bench Trial Day 3 Transcript); ECF No. 93-4 (Designations of Dr. Wilkerson); ECF No. 93-7 (Designations of Vikram Thapa).

## II.     APPLICABLE LEGAL PRINCIPLES

### a.  General Maritime Law

Claims arising from alleged tort actions aboard ships sailing in navigable waters are governed by general maritime law. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989).

That a passenger becomes injured does not give rise to a presumption that an unreasonable danger existed. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006). Rather, there must be some failure to exercise due care before liability can be imposed, as it is well established that Carnival is not liable to passengers as an insurer. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984) ("A carrier by sea, however, is not liable to passengers as an insurer, but only for its negligence.").

A cruise ship operator owes it passengers "the duty of exercising reasonable care under the circumstances of each case." *Torres v. Carnival Corp.*, 635 F. App'x. 595, 600-01 (11th Cir. 2015) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)).

To establish negligence, Plaintiff has the burden to prove: (1) Carnival had a duty to protect Plaintiff from a particular hazard; (2) Carnival breached that duty; (3) Carnival's breach actually and proximately caused Plaintiff's injury; and (4) Plaintiff suffered actual harm. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

b. Notice

Plaintiff must prove Carnival knew or should have known there was a non-obvious risk-creating condition to her. *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020). Under this standard, plaintiffs must show, "as a prerequisite to imposing liability, that the carrier ... had actual or constructive notice of the risk-creating condition, at least where ... the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322; *see also Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015) ("[T]he maritime standard of reasonable care usually requires that the cruise ship operator have actual or constructive knowledge of the risk-creating condition."); *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020) ("[A] cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it.").

Without evidence of notice, Plaintiff cannot prove Carnival owed her a duty. *Sutton v. Royal Caribbean Cruises Ltd.*, 774 Fed.Appx 508, 511 (11th Cir. 2019) (affirming summary judgment where plaintiff identified no prior incidents, accident reports, passenger reviews or complaints, or any other documents evidencing any actual or potential safety issues involving lighting machine); *Cohen v. Carnival Corp.*, 945 F.Supp.2d. 1351, 1355 (S.D. Fla. 2013) (finding no evidence of notice where plaintiff cannot offer "any accident reports, passenger comment reviews or forms, or reports from safety inspections.")

Plaintiffs can show constructive notice in two ways. "First, a plaintiff can establish constructive notice by showing that a 'defective condition existed for a sufficient period of time to invite corrective measures.' Second, a plaintiff can show evidence of 'substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Tesoriero*, 965 F.3d at 1178–79 (quoting *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019)).

"Knowledge that the condition exists is not sufficient, the defendant must also know that the condition is dangerous." *Malley v. Royal Caribbean Cruises, Ltd.*, 713 Fed.Appx. 905, 908 (11th Cir. 2017) (citing *Chaparro*, 693 F.3d at 1337).

      c. Notice is Required and Plaintiff Cannot Claim Carnival "Created" the <u>Dangerous Condition.</u>

The Eleventh Circuit unambiguously "rejected the possibility that [a cruise] operator could be liable in the absence of actual or constructive notice." *See Pizzino v. NCL (Bahamas) Ltd.*, 709 F. App'x 563, 567 (11th Cir. 2017) (discussing *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1357 (11th Cir. 1990)). The Eleventh Circuit's *Yusko v. NCL (Bahamas), Ltd.* opinion soon followed which re-affirmed the notice requirement under a direct liability theory where a passenger seeks to hold a shipowner liable for maintaining a dangerous premises. 4 F.4th 1164, 1170 (11th Cir. 2021).

      d. <u>Open and Obvious</u>

Carnival had a duty to warn only of conditions that are not open and obvious to passengers. *Carroll*, 955 F.3d at 1267 ("The open and obvious nature of a dangerous

condition negates liability for failure to warn."). This is because, as a matter of law, Carnival can rely on its passengers to use their ordinary senses to protect themselves. *See Luby v. Carnival Cruise Lines, Inc.,* 633 F. Supp. 40, 42 (S.D. Fla. 1986) ("[D]efendant is entitled to expect, as a matter of law, that plaintiff would perceive that which would be obvious to her upon the ordinary uses of her senses.").

The absence of a duty to warn does not preclude a negligence maintenance claim. The Eleventh Circuit has adopted the Restatement (Third) of Torts, providing that the "open and obvious nature of a dangerous condition [i]s a factor to be considered in a comparative fault analysis – not as a bar to liability for negligently maintaining a premises." *Carroll*, 955 F.3d at 1268. As *Carroll* explained, a cruise ship operator "may still be liable for maintaining a dangerous condition even if the danger was obvious." *Id.* at 1267. However, whether a dangerous condition is open and obvious can mitigate – or even eliminate – damages when evaluating a plaintiff's comparative fault. *See id.* at 1268-69.

e. <u>Vicarious Liability</u>

Under a theory of vicarious liability, the duty and conduct of a Defendant shipowner, are not relevant. *Smith v. Carnival Corp. & PLC*, No. 22-CV-22853, 2022 WL 16791783, at *4 (S.D. Fla. Nov. 8, 2022) (citing *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169 (11th Cir. 2021) ("[T]he scope of a shipowner's duty has nothing to do with vicarious liability which is not based on the shipowner's conduct.")). Under the theory of vicarious liability "an otherwise non-faulty employer [can] be held liable for the negligent acts of [an] employee acting within the scope of employment."

*Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022) (internal quotation marks omitted). To prove negligence, "a plaintiff must show that (1) the tortfeasor had a duty to protect the plaintiff from a particular injury, (2) the tortfeasor breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Yusko*, 4 F.4th at 1167-1168.

        f.   <u>Proximate Cause</u>

A plaintiff must prove the defendant's breach of duty proximately caused the claimed injuries. *Lipkin v. Norwegian Cruise Line, Ltd.*, 93 F. Supp. 3d 1311, 1324 (S.D. Fla. 2015) is instructive. The *Lipkin* plaintiff alleged failure to warn, but did not offer evidence supporting that, "had the [cruise line] adequately discharged its duty to warn of the dangers of wheelchairs on walkways, Plaintiff would not have stepped onto the walkway behind the unknown elderly woman pushing the wheelchair." Without evidence to support that the cruise line's actions or omission were an actual and proximate cause of the plaintiff's injuries, a negligence claim cannot survive.

*Lucas v. Royal Caribbean Cruises, Ltd.*, No. 19-20914-CIV-Scola, 2020 WL 3507634 (S.D. Fla. June 1, 2020) also addressed the proximate cause issue. The plaintiff was injured after colliding with a backward skater on an ice rink. She alleged the cruise line was negligent for failing to warn of the dangers associated with backward skating and failing to prevent the skater from traveling backward.

Following a bench trial, the court found there was no duty to warn or prevent backward skating because the dangers are open and obvious. But assuming *arguendo*

there was a duty to warn, intervene, or admonish backward skating, "no credible evidence was presented to show that, had [the cruise line's] staff previously warned the backwards skater, he would not have resumed skating backwards, regardless, after being admonished not to." *Id.* at \*13; *see also* Order Denying Motion for New Trial, 2020 WL 5215407 (S.D. Fla. Sept. 1, 2020) ("[E]ven if there should have been such a policy [to prevent backwards skating], Lucas provided no facts to support her conclusory theory that warning the male skater not to skate backward would have stopped him from thereafter skating backward for the rest of the skate session…Without the [backward] skater's testimony, it is nearly impossible for Lucas to show proximate cause.").

g. Medical Causation

Non-readily observable injuries require medical testimony to prove causation. *Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332, 1338 (11th Cir. 2023); *Morhardt v. Carnival Corp.*, 304 F. Supp. 3d 1290, 1298 (S.D. Fla. Dec. 4, 2017) ("[The plaintiff's] failure to timely disclose a medical expert who can provide medical causation testimony to establish proximate cause is fatal to his claim…. Expert testimony is required to establish causation for conditions not readily observable or susceptible to evaluation by lay persons."); *Rivera v. Royal Caribbean Cruises, Ltd.*, 2016 WL 7176644, at \*3 (S.D. Fla. Dec. 8, 2016) ("Establishing medical causation requires the testimony of an expert."); *Drury v. Cardiac Pacemakers, Inc.*, 2003 WL 23319650, at \*3 (M.D. Fla. June 3, 2003) ("In a negligence case, in order to establish causation, expert testimony is necessary."); *Scott v. United States*, 127 F. Supp. 422,

424 (N.D. Fla. 1955) ("[I]t has been consistently held that whether there was a causal connection between an accident ... [and a sustained injury] ... is a question with respect to which only medical experts with training, skill, and experience could ... express an intelligent opinion.").

        h.  Failure to Mitigate Damages

Failure to mitigate damages is a valid defense in admiralty cases. *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1286 (11th Cir. 2000); *Jennings v. Carnival Corp.*, No. 22-CV-20205, 2022 WL 1913249, at *3 (S.D. Fla. May 17, 2022), *report and recommendation adopted*, No. 1:22-CV-20205, 2022 WL 1908949 (S.D. Fla. June 3, 2022) (same).

        i.  Reasonable Past Medical Expenses

The appropriate measure of past medical expense damages in a maritime tort cause is the amount determined to be reasonable by the jury "upon its consideration of all relevant evidence, including the amount billed, the amount paid, and any expert testimony and other relevant evidence the party may offer." *Higgs v. Costa Crociere, S.p.A.*, 969 F.3d 1295, 1317 (11th Cir. 2020).

## III.   PROPOSED FINDINGS OF FACT

1.     Ms. Eureka Cole was a fare-paying passenger who boarded the Carnival *Conquest* vessel in Miami, Florida for a vacation cruise on July 22, 2022. **Ex. 2** at 15:4 – 9.

2.      On July 24, 2022, Ms. Cole and her husband Lucien Cole reboarded the *Conquest* at around 3 p.m. after spending the day at a port stop in Nassau, Bahamas. **Ex. 2** at 2 – 13.

3.      After reboarding the ship, Ms. Cole and her husband went to Lido Deck 9 on the *Conquest* with her husband. **Ex. 2** at 19:5 – 13.

4.      The Lido Deck contains pools, hot tubs, and dining venues. **Ex. 3** at 33:5 – 17.

5.      Mr. Cole testified the weather was windy on the Lido Deck for the three hours prior to Ms. Cole's incident. **Ex. 1** at 57:23 – 58:2.

6.      During that time, Mr. Cole was able to play dominoes on the Lido Deck. **Ex. 1** at 94:6 – 22.

7.      Around 6 p.m., Ms. Cole picked up chicken and salad to eat, and joined her husband to sit at a table on the Lido Deck. **Ex. 2** at 24:3 – 6.

8.      Positioned behind Mc. Cole's table was a permanently affixed service cart used by crewmembers for storage of dining supplies and plastic containers. **Ex. 3** at 34:5 – 12.

9.      Carnival's food operations department is responsible for the plastic containers. **Ex. 3** at 37:11-13.

10.      Carnival's onboard dining operation does not maintain written policies and procedures regarding securing its dining supplies. **Ex. 3** at 37:7 – 10.

11.      If extreme weather conditions are present, the food operations department follows the directive of the bridge or captain. The bridge or captain would

send a notification to all department heads on the *Conquest* if areas needed to be shut down due to weather. It is at the discretion of the captains and the officers on the bridge whether areas of the ship are shut down due to weather. They take into consideration wind force, wind direction, the ship's speed and the ship's course. Generally around 35 knots or so is considered to be an extreme weather situation, at which point they would consider those factors and whether or not an outer deck needed to be closed. **Ex. 3** at 37:11 – 39:19.

12.     On the day of the incident, the wind speed was 14 knots at 5:00 p.m. and 23 knots at 6:00 p.m. **Ex. 3** at 42:1 – 6.

13.     Carnival had never previously had an issue before with the subject plastic container lids striking any passengers. **Ex. 3** at 46:7 – 21.

14.     There have been no prior incidents involving items hitting guests in the Lido Deck area onboard the *Conquest* in the five-year period preceding Ms. Cole's incident. **Ex. 3** at 46:7 – 21.

15.     After sitting down, as she began eating, Ms. Cole felt a hit to her back left shoulder. **Ex. 2** at 26:17 – 23.

16.     Mr. Cole, who was sitting across from her at the table, claims he observed the wind pick up two plastic container lids stacked on top of each other that struck Plaintiff's left shoulder, and then another plastic container lid struck her a separate time. **Ex. 1** at 63:6 – 12.

17.     In the five hours Mr. Cole was present on the Lido Deck, he never observed any else being stuck with a container lid. **Ex. 1** at 105:16 – 20.

18. Following the incident, Ms. Cole was escorted by Assistant Maitre'd Shruti Bhatia to the ship's medical center. ECF No. 93-3 at 37:3 - 10.

19. A physical examination was performed that revealed no redness, no swelling, no wound, no abrasion, and Ms. Cole had full range of motion in both shoulders. **Trial Exhibit – Joint 2** (Shipboard Medical Records) at pgs. 1 and 3.

20. Ms. Cole underwent an x-ray of her left shoulder that showed no signs of dislocation or fracture. *Id*. at pg. 3.

21. Ms. Cole was diagnosed with a muscle strain by shipboard physician Dr. Juan Caesar Vanegas Gonzalez and was provided with ibuprofen. *Id*. at pg. 4.

22. Upon leaving the medical center, Ms. Cole was escorted by Security Officer Vikram Thapa back to Lido Deck 9, where she pointed out the plastic lid that had struck her. ECF No. 93-7 at 20:10 - 16.

23. Mr. Thapa obtained the plastic lid and weighed it using a scale within the security office, and it weighed approximately 87 grams. ECF No. 93-7 at 29:14 – 30:2. Mr. Thapa documented this with a photograph. *Id*. at 36:11 – 37:7.

24. Ms. Cole disembarked the ship as scheduled the following day in Miami, Florida, on July 25, 2022. **Ex. 2** at 35:7 – 12.

25. The same day, Ms. Cole presented to Florida Westside Hospital in Plantation, Florida. **Trial Exhibit – Joint 7** (Medical Record Dated July 25, 2022).

26. There, Ms. Cole complained of pain in her left upper back. *Id*. at pg. 2. No swelling, bruising, or ecchymosis was noted on examination. *Id*. Ms. Cole did not have any complaints of numbness or weakness in the left shoulder. *Id*.

27. The examination was noted to be unremarkable and benign, and Ms. Cole was discharged the same day with ibuprofen. *Id.* at pg. 6.

28. A few days later, Ms. Cole presented to a CitiMed facility and underwent an MRI of her left shoulder. **Ex. 2** at 35:25 – 36:4; *see also* **Trial Exhibit – Plaintiff 3** (Composite of Medical Records from CitiMed dated July 27, August 3, and August 10, 2022).

29. Ms. Cole had her initial appointment with orthopedic surgeon Dr. John P. Wilkerson on August 12, 2022. **Trial Exhibit – Plaintiff 3** (Medical Record Dated August 12, 2022). Dr. Wilkerson's review of an MRI scan showed a glenoid labrum tear and rotator cuff tear. *Id.* at pg. 2. Dr. Wilkerson recommended surgery that day and Ms. Cole elected to proceed. *Id.*

30. Ms. Cole thereafter underwent a left shoulder arthroscopy with Dr. Wilkerson on September 15, 2022. **Trial Exhibit – Joint 6** (Dr. Wilkerson Operative Report).

31. Ms. Cole was discharged from Dr. Wilkerson's care and placed at maximum medical improvement for her left shoulder on January 6, 2023. **Trial Exhibit – Plaintiff 3** (Medical Record Dated January 6, 2023).

32. The Court finds that both Dr. Wilkerson and Dr. Chalal are qualified to opine on medical causation of Plaintiff's injuries, but finds the opinions of Dr. Chalal to be more persuasive.

33. Dr. Chalal is board certified in orthopedic surgery and specializes in sports medicine, and arthroscopic knee and shoulder surgery. **Ex. 1** at 111:1 – 25.

34.     Dr. Chalal performed a medical examination of Ms. Cole on September 19, 2023. **Ex. 1** at 156:7 – 12.

35.     Dr. Chalal reviewed Ms. Cole's medical records and diagnostic imaging of her left shoulder. **Ex. 1** at 114:22 – 115:5.

36.     Dr. Chalal opined that the findings within the July 27, 2022 left shoulder MRI were degenerative in nature, predated Plaintiff's claimed incident, and therefore were unrelated to Plaintiff's incident. **Ex. 1** at 135:20 – 136:1.

37.     Dr. Chalal opined it is not within medical probability that these MRI findings were causally related to Ms. Cole's claimed incident. **Ex. 1** at 140:7 – 15.

38.     Dr. Chalal reviewed the operative report and intraoperative photographs pertaining to Ms. Cole's left shoulder arthroscopy. **Ex. 1** at 141:11 – 142:21.

39.     Dr. Chalal opined that the surgery Ms. Cole underwent was not causally related to the incident. **Ex. 1** at 142:23 – 143:16.

40.     Dr. Chalal reviewed Plaintiff's past medical expenses related to her left shoulder arthroscopy with Dr. Wilkerson.

41.     Dr. Chalal opined that the charges submitted by CitiMed and Miami Surgical Center were excessive, unreasonable, and not customary.

42.     The Court finds the expert testimony from Carnival's biomechanical engineer expert Dr. Amy Courtney compelling.

43.     Dr. Courtney earned a bachelor's degree in engineering mechanics from Michigan State University and a Master of Science degree in Engineering Sciences

from Harvard University. She earned a Ph.D. in Medical Engineering and Medical Physics from a joint program with Harvard University and the Massachusetts Institute of Technology. This degree program included specialized medical training at Harvard Medical School, including coursework and clinic training. She also held an appointment as an Assistant Professor teaching physics at the United States Military Academy at West Point. **Ex. 3** at 75:2 – 79:5.

44. Dr. Courtney reviewed testimony, Ms. Cole's medical records, photographs, and other case materials. She also obtained measurements of an exemplar of the subject container lid from the *Conquest* cruise ship. **Ex. 3** at 80:15 – 85:17.

45. Dr. Courtney opines the subject incident did not involve a biomechanical mechanism consistent with an acute rotator cuff injury. The incident did not occur in the correct direction, location of the body, or in the magnitude to result in an acute rotator cuff injury. **Ex. 3** at 95:19 – 25. Additionally, the rotator cuff pathology identified by Ms. Cole's treating medical providers is not consistent with an acute rotator cuff injury; rather the purported findings are consistent with a biomechanical mechanism of repetitive loading over time combined with age-related degeneration. **Ex. 3** at 98:8 – 99:4.

46. Regarding Ms. Cole's proffered expert Andrew Liberti, the Court finds that he is unqualified to provide biomechanical causation opinions. Further, the Court finds Mr. Liberti's opinions unhelpful. Ms. Cole never claimed during trial that she physically braced the table during her incident. Mr. Liberti's opinions were based

on this assumption, and he admitted during examination that his opinions would be different if Ms. Cole's arm never braced the table as he claimed. **Ex. 3** at 175:4 – 9.

## IV.    PROPOSED CONCLUSIONS OF LAW

47.    Claims arising from alleged tort actions aboard ships sailing in navigable waters are governed by general maritime law. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989).

48.    A cruise ship operator owes it passengers "the duty of exercising reasonable care under the circumstances of each case." *Torres v. Carnival Corp.*, 635 F. App'x. 595, 600-01 (11th Cir. 2015) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)).

49.    That a passenger becomes injured does not give rise to a presumption that an unreasonable danger existed. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006). Rather, there must be some failure to exercise due care before liability can be imposed, as it is well established that Carnival is not liable to passengers as an insurer. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984) ("A carrier by sea, however, is not liable to passengers as an insurer, but only for its negligence.").

50.    To establish negligence, Plaintiff has the burden to prove: (1) Carnival had a duty to protect Plaintiff from a particular hazard; (2) Carnival breached that duty; (3) Carnival's breach actually and proximately caused Plaintiff's injury; and (4) Plaintiff suffered actual harm. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

51.     To establish Carnival owed her a duty directly as the shipowner in Count I, Plaintiff must prove Carnival knew or should have known there was a non-obvious risk-creating condition to her. *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020).

52.     Under this standard, plaintiffs must show, "as a prerequisite to imposing liability, that the carrier ... had actual or constructive notice of the risk-creating condition, at least where ... the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322; *see also Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015) ("[T]he maritime standard of reasonable care usually requires that the cruise ship operator have actual or constructive knowledge of the risk-creating condition."); Tesoriero v. Carnival Corp., 965 F.3d 1170, 1178 (11th Cir. 2020) ("[A] cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it.").

53.     "Knowledge that the condition exists is not sufficient, the defendant must also know that the condition is dangerous." *Malley v. Royal Caribbean Cruises, Ltd.*, 713 Fed.Appx. 905, 908 (11th Cir. 2017) (citing *Chaparro*, 693 F.3d at 1337).

54.     With regards to Count II, under a theory of vicarious liability, the duty and conduct of a Defendant shipowner, are not relevant. *Smith v. Carnival Corp. & PLC*, No. 22-CV-22853, 2022 WL 16791783, at *4 (S.D. Fla. Nov. 8, 2022) (citing *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169 (11th Cir. 2021) ("[T]he scope of a

shipowner's duty has nothing to do with vicarious liability which is not based on the shipowner's conduct.")).

55.     Under the theory of vicarious liability "an otherwise non-faulty employer [can] be held liable for the negligent acts of [an] employee acting within the scope of employment." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022) (internal quotation marks omitted). To prove negligence, "a plaintiff must show that (1) the tortfeasor had a duty to protect the plaintiff from a particular injury, (2) the tortfeasor breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Yusko*, at 1167-1168.

56.     With regards to Count I and II, the Court finds Ms. Cole fails to establish by the greater weight of the evidence that the negligence of Carnival and/or it's employees caused her incident.

57.     There was no evidence presented that Carnival knew or should have known that the storage of plastic container lids in the Lido Deck ever presented a safety concern.

58.     In fact, Carnival presented testimony that no passenger had ever been struck by an item on the Lido Deck in the five-year period preceding Ms. Cole's incident.

59.     Ms. Cole also did not present any evidence, through industry standards or expert testimony, the placement of the plastic container lids on the service station was improper.

60.     Ms. Cole argued that the windy conditions the day of the incident should have prompted action by Carnival, either through a warning or by closing down the Lido Deck. Carnival presented evidence regarding its policy for closing down open decks, and that the bridge or captain maintains the authority to do so. This decision is based on a number of factors, including wind speed. The Court finds this policy reasonable – especially given that no other passenger had reported being injured in the five years beforehand due to being struck by items on the Lido Deck. Further, no evidence presented indicated any extreme weather conditions warranting any further action by Carnival on the day of the incident. Mr. and Ms. Cole both remained present on the Lido Deck in the three hours prior to Ms. Cole's incident. During that time, Mr. Cole was able to play dominoes on the Lido Deck and observed no other passengers being struck by plastic container lids. The Court finds this testimony does not indicate extreme weather conditions that should have prompted Carnival to take additional precautions.

61.     Additionally, given Ms. Cole's presence on the Lido Deck for the three hours prior to her incident, the Court finds Carnival owed her no duty to warn of windy conditions that she testified she was well aware of. *Carroll*, 955 F.3d at 1267 ("The open and obvious nature of a dangerous condition negates liability for failure to warn.").

62.     The Court therefore finds that Ms. Cole has failed to prove that Carnival and/or its employees breached a duty of reasonable care to her.

63.     Further, even if the Court were to find that a duty of care was breached, the Court additionally finds that Ms. Cole has not proven by a greater weight of the evidence that the incident caused her left rotator cuff tear that she underwent surgery for.

64.     The evidence at trial does not indicate that a biomechanical mechanism was present that would have caused an acute rotator cuff injury. Dr. Courtney addressed that Ms. Cole's incident did not involve a mechanism in the correct direction, location of the body, or magnitude of load to have caused a rotator cuff tear.

65.     Dr. Chalal also testified that Ms. Cole's medical presentation following the incident did not support her claim that a traumatic injury was suffered to her left shoulder. Based on his review of the MRI and medical records, Dr. Chalal opined that the left rotator cuff tear was pre-existing and was caused by degeneration over time rather than an acute incident.

66.     While Ms. Cole did present testimony from her treating physician Dr. Wilkerson to support causation, the Court affords it little weight. Dr. Wilkerson is an independent contractor for CitiMed. CitiMed enters into letters of protection with patients, and CitiMed is paid once a claim or lawsuit resolves. ECF No. 93-4 at 50:1-16. Dr. Wilkerson describes CitiMed's practice as treating "folks with traumatic injuries from either a motor vehicle accident or a fall down the stairs or tripping" or slipping. *Id.* at 48:5-17. Dr. Wilkerson's understanding of the incident and how Ms. Cole's body reacted following the incident was unclear and at times purely speculative. Dr. Wilkerson was also financially incentivized to tie the injury to the

incident, as he admitted he would not have continued treating the left rotator cuff tear if he did not think it was related to the incident. *Id.* at 61:4 – 63:1.

67.    As such, the Court finds that the greater weight of the evidence does not support Ms. Cole's contention that her left rotator cuff was injured by the plastic container lid striking her.

Based on the foregoing Findings of Fact and Conclusion of Law, it is hereby **ORDERED** as follows:

(1) Carnival breached no duty of care to Plaintiff.

(2) Carnival is entitled to judgment in its favor.

(3) Plaintiff will take nothing in this action.

(4) Carnival is entitled to its costs pursuant to Federal Rule of Civil Procedure 54, which are to be determined upon Carnival's motion.

(5) Final judgment will be entered in favor of Carnival in a separate judgment.

**DONE and ORDERED** in Chambers in Miami, Florida, this _____ day of _____, 2024.

_____
MELISSA DAMIAN
UNITED STATES DISTRICT JUDGE

Respectfully submitted,

GrayRobinson, P.A.
515 North Flagler Drive, Ste. 650
West Palm Beach, Florida 33401
Tel: (561) 268-5727
Fax: (561) 268-5747

By: */s/ Cooper Jarnagin*
Michael J. Drahos
Florida Bar No. 0617059
michael.drahos@gray-robinson.com
W. Cooper Jarnagin
Florida Bar No. 117767
cooper.jarnagin@gray-robinson.com
Ashley Genoese
Florida Bar No. 1019357
ashley.genoese@gray-robinson.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

*/s/ Cooper Jarnagin*

**SERVICE LIST**
**CASE NO. 23-cv-60532-MD**

Raymond Renato Dieppa
FLORIDA LEGAL
12550 Biscayne Blvd., Suite 209
North Miami, FL 33181
Telephone: (305) 901-2209
Facsimile: (786) 870-4030
*ray.dieppa@floridalegal.law*

*Attorney for Plaintiff*