**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 23-60532-CIV-DAMIAN**

**EUREKA COLE**,

       Plaintiff,

v.

**CARNIVAL CORPORATION**,

       Defendant.

_____/

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

**THIS CAUSE** is before the Court following a bench trial held over the course of three days from May 29, 2024 to May 31, 2024.

THE COURT has carefully considered the testimony and credibility of the witnesses, the evidence admitted at trial, arguments of counsel, the Joint Pretrial Stipulation [ECF No. 79], each party's proposed findings and conclusions [ECF Nos. 78, 80], and each party's post-trial submissions [ECF No. 121, 122], and sets forth the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.[1]

## I.    INTRODUCTION AND RELEVANT PROCEDURAL BACKGROUND

In this maritime personal injury action, Plaintiff, Eureka Cole ("Ms. Cole" or "Plaintiff"), alleges she sustained an injury on July 24, 2022, while aboard Defendant, Carnival Corporation's ("Carnival"), cruise ship, the *Conquest*. *See* Second Amended Complaint ("SAC") [ECF No. 15] at ¶¶ 20–21. Ms. Cole alleges that while she was sitting at

---

[1] To the extent that any findings of fact may constitute conclusions of law, they are adopted as such and vice versa.

a table on the outer lido deck, high winds caused plastic storage container lids stacked behind her to lift up and strike her from behind causing injury to her left shoulder. *Id.*

Ms. Cole filed a Complaint against Carnival on March 20, 2023. [ECF No. 1]. On May 10, 2023, Ms. Cole filed a Second Amended Complaint, the operative pleading, alleging two theories of liability. [ECF No. 15]. In Count I of the Second Amended Complaint, Ms. Cole alleges Carnival was negligent because it "allowed or directed to be placed a large unsecured, heavy storage container containing dishes on a platform or table in the vicinity of Plaintiff while the ship was underway on the ship's outdoor lido deck, in a manner which was dangerous and would result in foreseeable harm to the Plaintiff." SAC at ¶¶ 20–21. As a result of the alleged dangerous condition caused by Carnival, Ms. Cole alleges "the ship's movement and winds on the open deck caused these containers to fall and cause injury to Plaintiff when it struck her shoulder." *Id.*

In Count II, Ms. Cole asserts a claim of vicarious liability against Carnival for the acts of its employees, crew members, workers, and restaurant staff for allegedly (1) placing unsecured containers in the vicinity of passengers on the lido deck while the ship was in movement under strong winds; (2) failing to follow Carnival's rules, regulations, and protocol for the safe and proper securing of the plastic containers on the ship's lido deck; and (3) failing to remedy the dangerous condition of unsecured containers on the ship's lido deck. *Id.* at ¶¶ 28–30.

Ms. Cole alleges she sustained permanent and continuing injuries, including pain and suffering, mental anguish, disfigurement, disability, medical expenses, loss of earnings, and loss of enjoyment of life. *Id.* ¶ 7–8.

Carnival filed an Answer and Affirmative Defenses and denies all liability as to both counts in the Second Amended Complaint and asserts several affirmative defenses. [ECF No. 18]. Carnival later withdrew certain affirmative defenses. [ECF No. 62]. Carnival sought summary judgment as to both the direct negligence and vicarious liability claims [ECF No. 72], and this Court denied the Motion, finding that Ms. Cole had sustained her burden of presenting sufficient evidence to demonstrate genuine issues of material fact regarding both claims. *See* ECF No. 87. The case proceeded to a bench trial.

This Court's findings of fact and conclusions of law following the bench trial are set forth below.

## II.     FINDINGS OF FACT[2]

### A. The July 24, 2022 Incident.

On July 22, 2022, Ms. Cole and her husband, Lucien Cole, went on a vacation cruise aboard the Carnival *Conquest* to celebrate a friend's birthday.[3] On July 24, 2022, Ms. Cole and her husband spent the day at a port stop in Nassau, Bahamas. After reboarding the ship that afternoon, Ms. Cole and her husband went to the ship's lido deck.

At around 6 p.m., Ms. Cole went to the indoor restaurant on the lido deck and prepared a plate of food, which she brought out to the outdoor deck. She sat at a table on the

---

[2] This Court had the opportunity to observe and hear all of the witnesses' testimonies and has weighed each witness's testimony, their memory, their manner while testifying, any interest the witness may have in the outcome of the case, any bias or prejudice the witness may have, as well as any other evidence that contradicts the witness's testimony in light of all the evidence. This Court also considered whether there is evidence that a witness testified falsely about an important fact. *See* 11th Circuit Pattern Civil Jury Instruction 3.4.

[3] Citations to the trial transcript are as follows: ECF No. 117 is the transcript from May 29, 2024 (Day 1); ECF No. 118 is the transcript from May 30, 2024 (Day 2); and ECF No. 119 is the transcript from May 31, 2024 (Day 3).

deck with her husband, who sat across from her at the table.  Directly behind Ms. Cole's seat was a permanently affixed service cart used by Carnival crewmembers for storage of dining supplies and large plastic containers. In addition to the large plastic containers, there were also plastic lids for the containers, which were stacked up on top of each other. The lids were not strapped down or otherwise secured. No evidence was presented that there were any signs restricting passengers from sitting in the area where Ms. Cole and her husband were sitting nor warning passengers regarding any risks attendant to sitting near the service cart. Both Mr. and Ms. Cole testified that there were employees in the area at the time of the incident.

After she began eating, Ms. Cole felt something hit her back. Mr. Cole, who was sitting across from her, observed two plastic container lids stacked on top of each other fly off the service cart in a gust of wind and strike Ms. Cole's left shoulder, following which another plastic container lid flew up and struck her a separate time. He testified that when Ms. Cole was first hit, she leaned forward and then she was struck again. Mr. Cole was the only person who testified who actually saw the incident occur, and his testimony concerning the incident is unrebutted.

Ms. Cole described the incident as a "boom," like a cannon ball hitting her shoulder. She testified that she was eating with her right hand and dropped everything and braced herself upwards to the table with her left hand. Ms. Cole testified that she was in extreme pain after the incident and that she had to hold her arm up when walking to the infirmary after the incident. The passenger injury statement corroborates Ms. Cole's description of the incident. The passenger injury statement indicates she stated that she was eating on the lido deck when the wind picked up some stacked containers and hit her in the back on her left shoulder. She

4

described feeling hard pain on her left shoulder and that she could not have done anything to avoid the accident because the container lids came out of nowhere.

### B. The Conditions On The Lido Deck On The Date Of The Incident.

According to Mr. and Ms. Cole and Carnival's employees who testified, all of whom were present in the vicinity at the time of the incident, there had been very high winds blowing across the deck of the ship at the time of Ms. Cole's incident. The winds were strong enough that it was difficult for a person to walk on the deck.

Mr. Cole testified that he estimated that the winds were blowing between 29 to 30 miles per hour at the time of the incident. Ms. Cole similarly testified that the winds were blowing between 25 to 30 miles per hour at the time. Shruti Bhatia,[4] a Carnival employee who oversaw the dining area on the date of the incident, testified that the winds were "quite" high at the time and had picked up earlier in the day. This Court finds the testimony of these witnesses regarding the windy conditions on the lido deck on the date of the incident credible.

Carnival's corporate representative, Monica Borcegue, testified, over Ms. Cole's objection, regarding the wind speeds registered on the ship's navigational deck logs. According to Ms. Borcegue's testimony, the ship's deck logs indicate winds speeds were 14 knots at 5 p.m. and 23 knots at 6 p.m. on the date of Ms. Cole's incident.[5] Ms. Borcegue also testified that she consulted with the current Staff Captain of the *Conquest* regarding when the decision to begin closing areas of the ship due to weather conditions is made. According to

---

[4] By agreement of the parties, the testimony of Ms. Bhatia was presented by video deposition taken on August 29, 2023.

[5] Plaintiff filed a Motion for Reconsideration of this Court's denial of Plaintiff's Motion to Strike and Objections to the testimony of Carnival's Corporate Representative, which, for reasons set forth below, is due to be denied as moot.

Ms. Borcegue, that decision is dependent on a variety of factors, but the bridge normally begins considering closing areas at wind speeds of 35 knots.[6] On the date of the incident, no decision had been made to close the area of the ship where the incident involving Ms. Cole occurred.

### C. Plaintiff's Medical Treatment.

Following the incident, Ms. Cole was escorted by Carnival employee Shruti Bhatia to the ship's medical center. The onboard medical notes indicate that Ms. Cole complained of left shoulder pain and stated that she was sitting on the lido deck when the wind picked up a plastic container and hit her left shoulder. Dr. Juan Esteban Vanegas Gonzalez, the shipboard physician, performed a physical examination. The physical examination notes revealed no redness, no swelling, no wound, no abrasion, and that Ms. Cole had full range of motion in both shoulders. Ms. Cole underwent an x-ray of her left shoulder that showed no signs of dislocation, fracture, or rotator cuff impingement or tear. Dr. Vanegas Gonzalez diagnosed Ms. Cole with a muscle strain and prescribed Ibuprofen. The medical notes indicate that Ms. Cole was discharged from the ship's medical center walking in good condition.

Ms. Cole was escorted by Security Officer Vikram Thapa from the medical center back to the lido deck, where she pointed out the plastic lid that had struck her. Mr. Thapa took the plastic lid and weighed it using a scale in the security office and determined that it weighed approximately 87 grams.

The following day, July 25, 2022, Ms. Cole disembarked the ship as scheduled in Miami, Florida. That same day, Ms. Cole visited Florida Westside Hospital in Plantation,

---

[6]     One knot equals approximately 1.15 miles per hour. *See* https://oceanservice.noaa.gov/facts/nautical-mile-knot.html.

Florida. There, Ms. Cole complained of pain in her left upper back. Notes from her visit indicate no swelling, bruising, or ecchymosis (bruising discoloration) was noted on examination and that Ms. Cole did not have any complaints of numbness or weakness in the left shoulder. The examination notes indicate Ms. Cole's state was unremarkable and benign, and Ms. Cole was discharged the same day and prescribed Ibuprofen.

A few days later, Ms. Cole went to a CitiMed facility and underwent an MRI of her left shoulder. Ms. Cole then had her initial appointment with an orthopedic surgeon, Dr. John Wilkerson, on August 12, 2022. Dr. Wilkerson's review of Ms. Cole's MRI scan indicated a glenoid labrum tear and rotator cuff tear. Dr. Wilkerson recommended surgery, and Ms. Cole elected to proceed. Dr. Wilkerson performed a left shoulder arthroscopy on Ms. Cole on September 15, 2022. Ms. Cole was discharged from Dr. Wilkerson's care and placed at maximum medical improvement for her left shoulder on January 6, 2023.

Ms. Cole testified that she still experiences pain in her shoulder and that, as a result, she is no longer able to work and is unable to engage in activities, like lifting grocery bags or bowling. Although Ms. Cole initially testified that she had never had a shoulder injury before, she acknowledged on cross-examination that prior to the incident in this case, she had been in a car accident and she did visit a doctor complaining of neck and back pain. Ms. Cole also acknowledged during cross-examination that although she testified that the pain at the time of the incident was "excruciating", the ship's doctor noted that she had a full range of motion when she visited with him immediately after the incident.

### D. *Expert Witness Testimony Presented At The Bench Trial.*

#### 1. **Dr. John Wilkerson**[7]

Ms. Cole offered the testimony of Dr. John Wilkerson as her treating physician and an expert in orthopedics. Dr. Wilkerson is a board-certified orthopedic surgeon with over twenty years of experience. The Court finds that he is qualified in education, training, and experience to testify as an expert in the field of orthopedics.

Dr. Wilkerson performed a physical examination of Ms. Cole in August 2022. The evidence at trial established that Dr. Wilkerson treated Ms. Cole pursuant to a letter of protection.[8] In that regard, Dr. Wilkerson acknowledged that if he determined that her injury was not related to the ship-board incident, he would not have continued treating her.

Based on his review of an MRI scan of Ms. Cole's left shoulder, Dr. Wilkerson determined that she had a glenoid labrum tear and rotator cuff tear in her left shoulder, and he performed a left shoulder arthroscopy on her. Dr. Wilkerson opined that Ms. Cole's shoulder injury is consistent with her being struck in the back and leaning forward and bracing herself against the table. Dr. Wilkerson testified that he did not perform any type of biomechanical analysis related to the cause of Ms. Cole's injuries.

---

[7] By agreement of the parties, the testimony of Dr. Wilkerson was presented by video deposition taken on February 21, 2024.

[8] "A letter of protection is a document sent by an attorney on a client's behalf to a health-care provider when the client needs medical treatment but does not have insurance. Generally, the letter states that the client is involved in a court case and seeks an agreement from the medical provider to treat the client in exchange for deferred payment of the provider's bill from the proceeds of [a] settlement or award; and typically, if the client does not obtain a favorable recovery, the client is still liable to pay the provider's bills." *Johnson v. Carnival Corp.*, No. 19-CV-23167, 2021 WL 1379209, at *3 (S.D. Fla. Apr. 12, 2021) (Bloom, J.) (quoting Caroline C. Pace, *Tort Recovery for Medicare Beneficiaries: Procedures, Pitfalls and Potential Values*, 49 Hous. Law. 24, 27 (2012)).

When asked whether Ms. Cole's labrum tear was degenerative and pre-existed the incident, Dr. Wilkerson testified there is "probably some combination of some degenerative aspects to her shoulder" such as some "focal cartilage loss," but he opined that the "detached labrum was from trauma." Dr. Wilkerson was unaware of whether Ms. Cole had experienced any prior accidents or injuries.

### 2. Dr. Joseph Chalal

Carnival offered Dr. Joseph Chalal, a board-certified orthopedic surgeon who specializes in sports medicine and arthroscopic knee and shoulder surgery, as an expert in orthopedics. Like Dr. Wilkerson, the Court finds that Dr. Chalal is qualified in education, training, and experience to opine in the field of orthopedics.

Dr. Chalal performed a medical examination of Ms. Cole in September 2023. He also reviewed Ms. Cole's medical records and diagnostic imaging of her left shoulder. Based on his review of Ms. Cole's medical records, Dr. Chalal pointed out that following the incident, the ship's medical records indicate that Ms. Cole had no limited range of motion, indicating she had not experienced a rotator cuff dislocation or a labral tear. He also pointed out that Ms. Cole indicated that her pain level at the time was a 1 out of 10. Dr. Chalal also noted that the ship's physician's notes indicate that Ms. Cole was complaining of pain in her trapezius area and not in her actual shoulder. Similarly, Dr. Chalal observed that review of notes from Ms. Cole's initial visits to CitiMed also reflect that her presentation was not consistent with an acute rotator cuff tear.

Dr. Chalal opined that the findings within Ms. Cole's July 27, 2022 left shoulder MRI reflect pathology that was degenerative in nature and reflect no indication of any acute findings. According to Dr. Chalal, it is not within medical probability that the injuries shown

9

in the MRI were causally related to Ms. Cole's incident aboard the *Conquest*. Dr. Chalal also reviewed the operative report and intraoperative photographs pertaining to Ms. Cole's left shoulder arthroscopy performed by Dr. Wilkerson and opined that the surgery Ms. Cole underwent, to the extent it was necessary, was not causally related to the incident. Rather, Dr. Chalal explained that, in his opinion, the damage to Ms. Cole's shoulder pre-dated the cruise ship incident and was the result of degenerative issues. He also opined that being struck by the container lids on the ship did not cause Ms. Cole's shoulder injuries or necessitate her shoulder surgery.

### 3. Dr. Amy Courtney

Carnival also offered Dr. Amy Courtney, a biomechanical engineer with expertise in the field of injury biomechanics, including musculoskeletal injury, as an expert in biomechanics. This Court finds that Dr. Courtney is qualified to testify as a biomechanics expert. Dr. Courtney reviewed testimony, Ms. Cole's medical records, photographs, and other case materials. She also obtained measurements of an exemplar of the subject container lid from the *Conquest*. Dr. Courtney opined that the subject incident did not involve a biomechanical mechanism consistent with an acute rotator cuff injury. She testified that the incident did not occur in the correct direction, location of the body, or in the requisite magnitude to result in an acute rotator cuff injury. That is, in Dr. Courtney's opinion, the force from the lids hitting Ms. Cole was not enough to push her in a significant enough manner to cause a rotator cuff tear. Additionally, Dr. Courtney opined that the rotator cuff pathology identified by Ms. Cole's treating medical providers is not consistent with an acute rotator cuff injury; rather the purported findings are consistent with a biomechanical mechanism of repetitive loading over time combined with age-related degeneration.

### 4. Michael Andrew Liberti[9]

Ms. Cole offered Michael Andrew Liberti, who holds a bachelor's degree in aeronautical and astronautical engineering, to testify regarding the impact force in connection with Ms. Cole's incident and biomechanical analysis of Ms. Cole's injury. This Court found Mr. Liberti qualified to testify on the limited subject matter regarding the impact force in connection with Ms. Cole's incident but not regarding how a particular force can cause an injury to the human body as Mr. Liberti is not qualified to give any medical opinions or diagnoses. Mr. Liberti conducted tests and analyses based on the size and weight of the container lid and the estimated wind speeds. According to Mr. Liberti, after Ms. Cole was struck from behind with the plastic lid, the impact caused her to jolt forward and to extend her arms to brace herself. He opined that the impact of the force created when her body stopped its forward motion onto the table was approximately 98.7 pounds. As noted above, Mr. Liberti was not qualified to opine regarding whether such force could have caused Ms. Cole's medical injury.

## III.    APPLICABLE LEGAL PRINCIPLES[10]

As indicated above, Ms. Cole asserts two claims against Carnival, both claims sounding in negligence based on an incident occurring aboard a ship in navigable waters.

### A. General Maritime Law.

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019)

---

[9] The testimony of Mr. Liberti was presented live via Zoom remote conferencing.

[10] Had this been a jury trial, the Court would have instructed the jury that the following legal principles apply to Plaintiff's claims in the Second Amended Complaint.

11

(citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320–21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)).[11] "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336).

"A cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796–97 (11th Cir. 2019) (quoting *Keefe*, 867 F.2d at 1322); *see also Looney v. Metro. R.R. Co.*, 200 U.S. 480, 486 (1906) ("A defect cannot be inferred from the mere fact of an injury. There must be some proof of the negligence."); *Miller v. NCL (Bah.) Ltd.*, No. 15-cv-22254, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers." (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959))), *aff'd*, 679 F. App'x 981 (11th Cir. 2017). Rather, "[u]nder maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015). "In other words, a cruise ship operator's duty is to shield passengers from known

---

[11] The United States Court of Appeals for the Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio*, 785 F. App'x at 797.

### B. Actual Or Constructive Notice.

A cruise ship operator owes its passengers "the duty of exercising reasonable care under the circumstances of each case." *Torres v. Carnival Corp.*, 635 F. App'x 595, 600–01 (11th Cir. 2015) (quoting *Kermarec*, 358 U.S. at 632). This standard of care "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. To establish the owner of a ship in navigable waters breached its duty of care, a plaintiff must show: "(1) a dangerous condition existed; [and] (2) the vessel's operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that [d]efendant had constructive notice of the dangerous condition for an interval of time sufficient to allow the vessel's operator to implement corrective measures." *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-cv-22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013) (citations omitted); *see also Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019).

"Actual notice exists when the shipowner knows of the unsafe condition." *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (citing *Keefe*, 867 F.2d at 1322). "To show notice, it is not enough to demonstrate merely that the defendant negligently created or maintained its premises." *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1303 (11th Cir. 2020) (citing *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358–59 (11th Cir.

13

1990)). "Rather, the plaintiff must establish that a cruise line in fact knew or should have known that a particular hazard existed." *Id.*

A plaintiff can show constructive notice in two ways. "First, a plaintiff can establish constructive notice by showing that a 'defective condition existed for a sufficient period of time to invite corrective measures.' Second, a plaintiff can show evidence of 'substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Tesoriero*, 965 F.3d at 1178–79 (quoting *Guevara*, 920 F.3d at 720). "Knowledge that the condition exists is not sufficient, the defendant must also know that the condition is dangerous." *Malley v. Royal Caribbean Cruises, Ltd.*, 713 F. App'x 905, 908 (11th Cir. 2017) (citing *Chaparro*, 693 F.3d at 1337).

### C. *Open And Obvious.*

Even when a cruise ship operator has knowledge of a dangerous condition, "[u]nder federal admiralty law, a cruise ship has no duty to warn of known dangers that are open and obvious." *Krug v. Celebrity Cruises, Inc.*, 745 F. App'x 863, 866 (11th Cir. 2018) (citing *Keefe*, 867 F.2d at 1322); *see also Chaparro*, 693 F.3d at 1336. "The analysis used to determine [a] [d]efendant's duty in maritime law is intertwined with the analysis of whether a dangerous condition, in fact, existed." *Miller*, 2016 WL 4809347, at *4. "A dangerous condition is one that is not apparent and obvious to a passenger." *Id.* (citing *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2009)). As the Eleventh Circuit has explained, "[a]n open and obvious condition is one that should be obvious by the ordinary use of one's senses." *Krug*, 745 F. App'x at 866 (citing *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345–46 (S.D. Fla. 2015)); *see also Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015) (noting that open and obvious conditions are "discernable through common

14

sense and the ordinary use of eyesight"). "[Courts] evaluate whether a danger would be open and obvious from an objectively reasonable person's point of view and do not focus on the plaintiff's subjective perspective." *Krug*, 745 F. App'x at 866 (citing *Lugo*, 154 F. Supp. 3d at 1345-46). "The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Miller*, 2016 WL 4809347, at \*4.

The absence of a duty to warn (because the dangerous condition was open and obvious), however, is not "a total bar to recovery." *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1309 (S.D. Fla. 2011). The open and obvious nature of a risk does not preclude a negligent maintenance claim. Instead, the Eleventh Circuit has adopted the Restatement (Third) of Torts, providing that the "open and obvious nature of a dangerous condition [i]s a factor to be considered in a comparative fault analysis — not as a bar to liability for negligently maintaining premises." *Carroll*, 955 F.3d at 1268. As explained in *Carroll*, a cruise ship operator "may still be liable for maintaining a dangerous condition even if the danger was obvious." *Id.* at 1267 (deciding issue as one of first impression). However, whether a dangerous condition is open and obvious can mitigate – or even eliminate – damages when evaluating a plaintiff's comparative fault. *See id.* at 1268–69.

### D.  *Vicarious Liability.*

Under the theory of vicarious liability "an otherwise non-faulty employer [can] be held liable for the negligent acts of [an] employee acting within the scope of employment." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022) (internal quotation marks omitted). As discussed above, to prove negligence, "a plaintiff must show that (1) the tortfeasor had a duty to protect the plaintiff from a particular injury, (2) the tortfeasor breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered

15

actual harm." *Yusko v. NCL (Bahamas), Ltd.*, 4 F. 4th 1164, (11th Cir. 2021). In *Yusko*, the Eleventh Circuit clarified the law governing the standards applicable to vicarious liability negligence claims against cruise ships. Specifically, the Eleventh Circuit expressly held for the first time "that when a passenger makes a maritime negligence claim against a shipowner based on an employee's negligence under a theory of vicarious liability, the passenger need *not* establish that the shipowner had actual or constructive *notice* of a risk-creating condition." *Id.* at 1170 (emphasis added).

### E.  Proximate Cause Or Medical Causation.

A plaintiff must prove the cruise line's breach of duty proximately caused the claimed injuries. Without evidence to support an allegation that the cruise line's actions or omissions were an actual and proximate cause of the plaintiff's injuries, a negligence claim cannot survive. *Gould v. Carnival Corporation*, No. 19-cv-20289, 2021 WL 4189588, at *20 (S.D. Fla. Sept. 15, 2021).

Non-readily observable injuries require medical testimony to prove causation. *Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332, 1338 (11th Cir. 2023); *Morhardt v. Carnival Corp.*, 304 F. Supp. 3d 1290, 1298 (S.D. Fla. Dec. 4, 2017) ("[The plaintiff's] failure to timely disclose a medical expert who can provide medical causation testimony to establish proximate cause is fatal to his claim . . . . Expert testimony is required to establish causation for conditions not readily observable or susceptible to evaluation by lay persons."); *Rivera v. Royal Caribbean Cruises, Ltd.*, 2016 WL 7176644, at *3 (S.D. Fla. Dec. 8, 2016) ("Establishing medical causation requires the testimony of an expert."); *Drury v. Cardiac Pacemakers, Inc.*, 2003 WL 23319650, at *3 (M.D. Fla. June 3, 2003) ("In a negligence case, in order to establish causation, expert testimony is necessary."); *Scott v. United States*, 127 F. Supp. 422, 424 (N.D.

Fla. 1955) ("[I]t has been consistently held that whether there was a causal connection between an accident . . . [and a sustained injury] . . . is a question with respect to which only medical experts with training, skill, and experience could ... express an intelligent opinion.").

As the plaintiff, Ms. Cole bears the burden of proving Carnival's negligence and vicarious liability by a preponderance of the evidence. Carnival, however, carries the burden of demonstrating its affirmative defense that the alleged dangerous condition was open and obvious.

With the above principles in mind, this Court has reached the following conclusions based on the facts and evidence presented at trial.

### IV.    CONCLUSIONS OF LAW

#### A.  Count I – Negligence As To Carnival.

The first issue for this Court's determination is whether Carnival had a duty to warn Ms. Cole of an allegedly dangerous condition.

##### 1.   The Dangerous Condition.

The evidence in this case demonstrates that a dangerous condition existed on the lido deck when Ms. Cole was injured. Specifically, the windy conditions on the lido deck coupled with the storage of the plastic container lids stacked directly behind Ms. Cole's chair and without any restraints of any kind presented a dangerous condition. *See, e.g.*, *Burton v. Carnival Corp.*, No. 23-cv-24604, 2024 WL 3829964, at *6 (S.D. Fla. Aug. 15, 2024) (finding plaintiff "sufficiently alleges a combination of circumstances created a dangerous condition" and "[t]aken together, [p]laintiff plausibly alleges the strong current coupled with insufficient instruction and snorkel equipment caused decedent's death"); *Hornsby v. Carnival Corp.*, 2023 WL 8934518, at *20 (S.D. Fla. Dec. 27, 2023) ("Plaintiff contends that a dangerous condition

17

was created by a crewmember spraying water onto the stage area coupled with another crewmember instructing T.K. to run across that stage area shortly afterward.").

Here, while Ms. Cole and Carnival may disagree regarding how windy it was on the lido deck at the time of the incident, Mr. and Ms. Cole and Carnival's employee, Ms. Bhatia, all testified that it was very windy. In addition, Mr. Cole's testimony that he observed a Carnival crewmember stacking and unstacking the subject plastic containers in a cart or workstation directly behind where Ms. Cole was seated was unrebutted. According to Mr. Cole's testimony, the plastic containers and lids were stacked up high and it was very windy at the time of the incident. And Mr. Cole further testified that the Carnival crewmember was approximately five feet away facing them when the wind suddenly picked up the lids and struck Ms. Cole's back. Ms. Cole also testified that after she was struck in the back, she observed at least three plastic lids on the ground. Carnival has not offered evidence that the lids were not stacked on the cart behind where Ms. Cole was seated at the time of the incident nor that the lids were restrained in any way so that they would not be carried in the wind, and this Court finds the testimony of Ms. Cole and Mr. Cole on this point credible.

Carnival contends there has never been a safety concern regarding the storage of plastic container lids on the lido deck. Carnival's corporate representative, Monica Borcegue, testified that no passenger had ever been struck by an item on the lido deck in the five-year period prior to Ms. Cole's incident. Simply because other individuals have not been struck by similar items on the lido deck during similar weather conditions to those presented here does not establish that a dangerous condition did not exist. *Cf. Easterwood v. Carnival Corp.*, No. 19-cv-22932, 2021 WL 1152398, at *11 (S.D. Fla. Mar. 26, 2021) (Bloom, J.) (finding "simply because other individuals were fortunate not to fall in the spot where Baker and [p]laintiff

18

each fell within an hour of one another does not establish that a dangerous condition did not exist").

This Court finds that Ms. Cole has demonstrated by a preponderance of the evidence that a dangerous condition was present – that is, the combination of high winds and the stacked plastic container lids without any restraints on the lido deck in the area where Ms. Cole was sitting at the time of the incident. The Court next considers whether the evidence presented at trial supports a finding that Carnival had actual or constructive notice of the dangerous condition.

### 2. *Carnival Did Not Have Notice Of The Dangerous Condition.*

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. As noted above, liability for a cruise ship operator often "'hinges on whether it knew or should have known' about the dangerous condition." *Guevara*, 920 F.3d at 720 (quoting *Keefe*, 867 F.2d at 1322). Importantly, knowledge that a condition exists is not sufficient to establish notice, a plaintiff must also show that the defendant knows that the condition is dangerous. *See Malley*, 713 F. App'x at 908 (citing *Chaparro*, 693 F.3d at 1337).

### <u>Actual Notice</u>

"Actual notice exists when the shipowner knows of the unsafe condition." *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (citing *Keefe*, 867 F.2d at 1322).

Here, the greater weight of the evidence establishes that Carnival or its employees knew that it was very windy on the lido deck at the time of Ms. Cole's incident. Carnival's employee, Ms. Bhatia, testified, consistent with Mr. and Ms. Cole, that the winds were very

high on the lido deck at the time. The greater weight of the evidence also establishes that Carnival or its employees knew that the plastic container lids were stacked on the service cart without any type of restraint. Mr. Cole testified that at least one Carnival employee was actually stacking the container lids at issue at or around the time of those very windy conditions. And Ms. Cole presented evidence that Carnival knew that high winds may cause dangerous conditions on the ship's deck given that Carnival trains employees regarding protocols for windy conditions.

However, Ms. Cole did not offer any evidence that Carnival had actual notice of the dangerous condition she encountered (*i.e.*, the stacked plastic lid containers during windy conditions on the lido deck). Knowing that the circumstances existed is not enough. Carnival must have known that those circumstances were dangerous. Even when, as here, the evidence established that Carnival or its employees created the condition, that does not establish liability if they did not know that the condition was dangerous.

There was no evidence presented at trial that Carnival or its employees were aware that stacking the plastic container lids created a dangerous condition, even in high winds. Absent such evidence, Ms. Cole did not establish by a preponderance of the evidence that Carnival had actual notice of the dangerous condition when its employee stacked the plastic container lids on the service cart during windy conditions on the lido deck.

In reaching this conclusion, this Court has not overlooked evidence presented by Ms. Cole that Carnival crew members were required to and had been trained to secure items in the outer dining area on the lido deck in the event of high winds. Having such procedures and protocols in place suggests that Carnival had taken corrective measures to address hazards associated with high winds. *See Carroll*, 955 F.3d at 1265; *Guevara*, 920 F.3d at 720–22

20

(holding that a warning sign alerting passengers to "watch [their] step" was sufficient to create an issue of material fact on whether the cruise ship had notice of the dangerous nature of the step down); *Sorrels*, 796 F.3d at 1288 (holding that a ship employee's testimony that the ship would sometimes post a warning sign on the pool deck after it rained was enough to create an issue of material fact on whether there was notice that the deck could be slippery when wet). However, the evidence presented at trial regarding the training and protocols for such conditions was vague and did not indicate whether the storage containers and lids at issue in this case and under the conditions presented fell within those protocols. To the contrary, Carnival presented evidence that the ship department responsible for maintaining the plastic storage containers at issue had no written policies or procedures regarding securing dining supplies on the outdoor decks of the ship, and Carnival presented evidence that the protocols the ship does have do not apply to the circumstances presented.

Thus, Plaintiff did not present evidence on which this Court could conclude by a preponderance of the evidence that Carnival was on actual notice of the dangerous condition identified in this case. This Court, therefore, addresses whether Carnival was on constructive notice. *See Holland*, 50 F. 4th at 1095 (citing *Keefe*, 867 F.2d at 1322) (requiring a finding of either actual or constructive notice, but not both).

### Constructive Notice

Constructive notice can be shown in two ways. First, a plaintiff can establish constructive notice by showing that a "defective condition existed for a sufficient period of time to invite corrective measures." *Guevara*, 920 F.3d at 720 (quoting *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)). Second, a plaintiff can show evidence of "substantially similar incidents in which conditions substantially similar to the occurrence in

question must have caused the prior accident." *Id.* (quotation marks and citation omitted). On the other hand, the fact that the cruise line runs the ship is not enough—constructive notice of a risk cannot be imputed merely because a shipowner "created or maintained" the premises. *Everett*, 912 F.2d at 1358–59.

Here, Ms. Cole did not present evidence of substantially similar incidents involving these types of plastic lids (or any other similar objects) striking passengers in windy conditions, and Carnival's representative testified that there is no record of any such incidents occurring. Ms. Cole's sole argument that Carnival had constructive notice relies on her husband's observations of an employee stacking the lids and standing there when the lids were picked up by the wind and struck Ms. Cole. For Ms. Cole to prevail on this theory, the Court would need to conclude that the lids were flying around in the wind "for a sufficient period of time to invite corrective measures." *Guevara*, 920 F.3d at 720. A defect, however, must be reasonably detectable for it to "invite" corrective measures, and it is not apparent how the dangerous condition here issued any such invitation. The evidence establishes that it was windy for a good amount of time such that the employee should have known it was windy, and the evidence establishes that the employee knew the lids were stacked up without any restraints. There is no evidence, however, that the employee knew for any amount of time that that combination was dangerous or even risky before the incident involving Ms. Cole actually occurred.

"To show notice, it is not enough to demonstrate merely that the defendant negligently created or maintained its premises." *Higgs*, 969 F.3d at 1303 (citing *Everett*, 912 F.2d at 1358–59). "Rather, the plaintiff must establish that a cruise line in fact knew or should have known that a particular hazard existed." *Id.* Ms. Cole has not established by a preponderance of the

evidence that Carnival or its employees knew or should have known that the particular hazard existed.

Thus, Ms. Cole has failed to establish by a preponderance of the evidence that Carnival had actual or constructive notice of the dangerous condition presented. The Court's inquiry may end here. Nevertheless, this Court had the opportunity to and did consider Ms. Cole's evidence regarding the remaining elements of her negligence claims and addresses them here for the sake of thoroughness.

### 3. Whether The Dangerous Condition Was Open And Obvious.

Carnival also argues that it had no duty to warn of the purportedly dangerous condition created by the stacking of the container lids without restraints in windy conditions because the danger was open and obvious. This Court finds that Carnival did not carry its burden on this defense.

As explained above, "[u]nder federal admiralty law, a cruise ship has no duty to warn of known dangers that are open and obvious." *Krug v. Celebrity Cruises, Inc.*, 745 F. App'x 863, 866 (11th Cir. 2018) (citing *Keefe*, 867 F.2d at 1322). "A dangerous condition is one that is not apparent and obvious to a passenger." *Miller*, 2016 WL 4809347, at *4 (citing *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2009)). The Eleventh Circuit has explained that "[a]n open and obvious condition is one that should be obvious by the ordinary use of one's senses." *Krug*, 745 F. App'x at 866 (citing *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345–46 (S.D. Fla. 2015)); *see also Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015) (noting that open and obvious conditions are "discernable through common sense and the ordinary use of eyesight"). "[Courts] evaluate whether a danger would be open and obvious from an objectively reasonable person's point of view and

do not focus on the plaintiff's subjective perspective." *Krug*, 745 F. App'x at 866 (citing *Lugo*, 154 F. Supp. 3d at 1345-46).

Carnival argues that if there was a risk-creating condition, that condition was open and obvious because Ms. Cole was aware of the windy conditions on the lido deck at the time of her incident, and, therefore, Carnival did not breach a duty of reasonable care. However, as explained above, it was not the windy conditions alone that created the dangerous condition. Rather, it was the combination of the windy conditions and the stacking of the lids without any restraints that created the dangerous condition. *See, e.g.*, *Burton v. Carnival Corp.*, No. 23-cv-24604, 2024 WL 3829964, at *6 (S.D. Fla. Aug. 15, 2024) (finding plaintiff "sufficiently alleges a combination of circumstances created a dangerous condition" and "[t]aken together, [p]laintiff plausibly alleges the strong current coupled with insufficient instruction and snorkel equipment caused decedent's death"); *Hornsby v. Carnival Corp.*, 2023 WL 8934518, at *20 (S.D. Fla. Dec. 27, 2023) ("Plaintiff contends that a dangerous condition was created by a crewmember spraying water onto the stage area coupled with another crewmember instructing T.K. to run across that stage area shortly afterward.").

Therefore, even though both Mr. and Ms. Cole testified that it was very windy on the deck, there is no evidence that Ms. Cole, who had her back to the stacked lids, was aware they were stacked so high and without restraints or that they could be picked up in a gust of wind. And, although Mr. Cole testified that he saw the Carnival employee stacking the lids high before the incident, there is no evidence that Mr. Cole did or should have appreciated that the lids were not tied down or restrained in any way nor that they could be picked up in a gust of wind as they were. As such, not only was Carnival not on notice of the dangerous

24

condition, but there is also a lack of evidence that the dangerous condition was open and obvious to Ms. Cole.

If Carnival had a duty to warn, it would not have been relieved of that duty based on the open and obvious nature of the dangerous condition.[12] "[A] cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero*, 965 F.3d at 1178.

In any event, this Court finds that Ms. Cole failed to demonstrate that Carnival had actual or constructive notice of the dangerous condition presented by the stacked lids in the very windy conditions on the lido deck, and, therefore, Ms. Cole did not establish that Carnival had a duty to warn of the dangerous condition. As such, Carnival is not liable for its failure to do so.

### B. Count II - Vicarious Liability.

In Count II of the Second Amended Complaint, Ms. Cole alleges a claim of vicarious liability against Carnival for the acts of its employees, crew members, workers, and restaurant staff. As explained above, under a theory of vicarious liability "an otherwise non-faulty employer [can] be held liable for the negligent acts of [an] employee acting within the scope of employment." *Holland*, 50 F.4th at 1094 (internal quotation marks omitted). As the Eleventh Circuit held in *Yusko*, "when a passenger makes a maritime negligence claim against a shipowner based on an employee's negligence under a theory of vicarious liability, the passenger need not establish that the shipowner had actual or constructive notice of a risk-creating condition." *Id.* at 1170. However, the Eleventh Circuit's holding does not permit

---

[12] The evidence presented at trial establishes that Carnival neither eliminated the risk nor warned of it.

plaintiffs to reframe their negligent failure to warn and failure to maintain claims as a vicarious liability claim in an obvious attempt to work around the notice requirement. *See Green v. Carnival Corp.*, 614 F. Supp. 3d 1257, 1266 (S.D. Fla. 2022) (citing *Britt v. Carnival Corp.*, 580 F. Supp. 3d 1211, 1216 (S.D. Fla. 2021); *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1298 (S.D. Fla. 2021)).

Ms. Cole alleges that Carnival's employees were negligent for allegedly (1) stacking unsecured containers and lids in the vicinity of passengers on the lido deck while the ship was underway and there were significant winds; (2) failing to follow Carnival's rules, regulations, and protocol for the safe and proper securing and stowing of cargo, including the plastic containers on the ship's lido deck; and (3) failing to remedy the dangerous condition of unsecured containers on the ship's lido deck. Compl. at ¶¶ 28–30.

As noted above, it is undisputed that a Carnival crew member was responsible for the placement and stacking of the plastic containers and lids on the service cart during windy conditions on the lido deck at or near the time of Ms. Cole's incident. Mr. Cole testified that he observed a Carnival employee stacking the lids immediately prior to the incident, and Carnival does not dispute that point. According to Ms. Bhatia's testimony, Carnival crew members were required to and had been trained to secure items in the outer dining area on the lido deck in the event of high winds, although, as also discussed above, no evidence was presented that there was a protocol in place that required the employee to remove the lids or secure them under the circumstances presented.

After reviewing the evidence and considering the testimony, this Court finds that Ms. Cole established by a preponderance of the evidence that Carnival breached its duty of reasonable care based on the conduct of its employees because the greater weight of the

evidence establishes that a Carnival employee created the dangerous condition by stacking the container lids in very windy conditions without securing them and in the immediate vicinity of where Ms. Cole was sitting

The issue, then, is whether that breach caused Ms. Cole's injury.

### C. Causation.

This Court finds that Ms. Cole did not prove by a preponderance of the evidence that Carnival's alleged negligence caused her specific injury (*i.e.*, a left rotator cuff tear) necessitating the shoulder surgery she underwent.

As indicated above, the Court finds that both Dr. Wilkerson and Dr. Chalal are qualified to opine on medical causation and with respect to Ms. Cole's injuries.

Dr. Chalal testified that Ms. Cole's medical presentation following the incident did not support her claim that she suffered a traumatic injury to her left shoulder. Based on his review of the MRI and medical records, Dr. Chalal opined that the left rotator cuff tear was pre-existing and was caused by degeneration over time rather than an acute incident. Dr. Chalal's testimony was based on and consistent with all of the evidence presented at trial. This Court finds Dr. Chalal's testimony credible and very persuasive. This Court also finds Dr. Courtney's testimony that Ms. Cole's incident did not involve a biomechanical mechanism in the correct direction, location of the body, or magnitude of load to have caused a rotator cuff tear to be credible.

While Ms. Cole did present testimony from her treating physician, Dr. Wilkerson, to support causation, this Court finds that Dr. Wilkerson's testimony was not consistent with the greater weight of the evidence presented at trial, including the medical records from Ms. Cole's visit with the ship's medical center and with Florida Westside Hospital. While Dr.

Wilkerson acknowledged that Ms. Cole had some degenerative preexisting conditions in the shoulder, he did not explain the inconsistencies between the medical notes immediately following the incident and his findings of a traumatic injury to the left shoulder.

The Court is cognizant of the fact that Dr. Wilkerson's treatment was given pursuant to a letter of protection, which may provide some financial incentive to link the incident with the injury. *See Johnson v. Carnival Corp.*, No. 19-CV-23167, 2021 WL 1379209, at *3 (S.D. Fla. Apr. 12, 2021). That being said, this Court does not find Dr. Wilkerson's testimony was not credible. Rather, his testimony failed to address the evidence presented in the case pointing to a finding that Ms. Cole's injury was not the result of the incident on the ship and that the shoulder surgery, if needed, was not necessitated by the shipboard incident.

Therefore, this Court finds that Ms. Cole did not establish by a preponderance of the evidence that the shipboard incident involving the plastic lids hitting her shoulder caused the injuries complained of in this case nor the need for the shoulder surgery performed by Dr. Wilkerson.

## V.    CONCLUSION

In sum, this Court finds, based on the greater weight of the evidence, that Ms. Cole failed to demonstrate that Carnival had notice of the dangerous condition presented in this case, and, therefore, Carnival is not liable based on a theory of direct negligence. Further, the greater weight of the evidence preponderates against Ms. Cole's contention that the plastic container lids striking her caused a shoulder injury that necessitated the surgery she underwent, and, therefore, Ms. Cole failed to prove proximate cause or medical causation as required for either her direct negligence or vicarious liability claim.

Based on the foregoing Findings of Fact and Conclusions of Law, this Court finds, based on the greater weight of the evidence, that Ms. Cole failed to prove that Carnival is liable for her shoulder injury, and therefore, finds in favor of Carnival on Counts I and II of the Second Amended Complaint.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant, Carnival Corporation, is entitled to judgment in its favor as to Counts I and II of the Second Amended Complaint.

2. Plaintiff, Eureka Cole, will take nothing in this action.

3. Carnival is entitled to its reasonable taxable costs pursuant to Federal Rule of Civil Procedure 54, which are to be determined upon the filing of an application consistent with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida.

4. Final judgment will be entered in favor of Carnival by separate order.

5. The Clerk of Court is directed to **CLOSE** this case.

6. Any pending motions, including Plaintiff's Motion for Reconsideration of Court's Denial of Plaintiff's Motion to Strike and Objections to the Testimony of Carnival Corporation's Corporate Representative [**ECF No. 106**], are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 3rd day of January, 2025.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**